IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

TREVER GUILBEAU, INDIVIDUALLY          §
AND ON BEHALF OF ALL OTHERS            §
SIMILARLY SITUATED; AND                §
CHRISTOPHER O'MARA,                     §
INDIVIDUALLY AND ON BEHALF OF          §
ALL OTHERS SIMILARLY SITUATED,         §
                                        §
        *Plaintiffs,*                   §          SA-21-CV-00142-JKP
                                        §
vs.                                     §
                                        §
SCHLUMBERGER TECHNOLOGY                 §
CORPORATION,                            §
                                        §
        *Defendant.*                    §


**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Jason K. Pulliam:**

This Report and Recommendation and Order concerns Plaintiffs' Opposed Motion for

Notice Under *Swales* [#62], Defendant's Motion for Summary Judgment With Respect to the

Claims of Trever Guilbeau [#73], and Defendant's Opposed Motion to Defer Notice Pending

Resolution of Threshold Issues [#74].  All non-dispositive pretrial matters in this case have been

referred to the undersigned pursuant to Western District of Texas Local Rule CV-72 and

Appendix C [#4].  The District Court has also referred Defendant's motion for summary

judgment for a report and recommendation [#75].  The undersigned therefore has authority to

enter a recommendation on Defendant's motion for summary judgment pursuant to 28 U.S.C. §

636(b)(1)(B) and an Order on Plaintiffs' motion for notice and Defendant's motion to defer

notice pursuant to 28 U.S.C. § 636(b)(1)(A).  For the reasons set forth below, it is recommended

1

that Defendant's motion for summary judgment be **denied**.  The undersigned will also **deny** Defendant's motion to defer notice and **grant in part** Plaintiff's motion for notice, issuing notice for the identified class of "directional drilling employees" but declining to issue notice for the class of "measuring while drilling employees."

## I.  Background

This case arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251–262.  Plaintiffs Trever Guilbeau and Christopher O'Mara bring this action on behalf of themselves and all others similarly situated against their former employer, Defendant Schlumberger Technology Corporation ("Schlumberger"), an oilfield services company, seeking unpaid overtime compensation.  Guilbeau worked for Schlumberger as a directional drilling employee ("DD") in connection with Schlumberger's oilfield drilling operations, meaning he provided oilfield drilling services to Schlumberger and was generally responsible for executing non-vertical well-drilling projects.  (Second Am. Compl. [#50], at ¶ 31; Salomon Dep. [#62-1], at 47:1–48:10.)  O'Mara worked as a measuring while drilling employee ("MWD"), an engineering position involving collecting, monitoring, and reporting data collected from various tools and sensors on directional drilling rigs regarding drilling operations.  (Second Am. Compl. [#50], at ¶ 32; Salomon Dep. [#62-1], at 38:21-42:16; O'Mara Dep. [#62-3], at 118:23–120:3, 160:3–161:18.)

Plaintiffs contend that they regularly worked over 40 hours per workweek (12-hour shifts up to seven days a week) and were not paid the overtime compensation they are due.  (*See* Salomon Dep. [#62-1], at 76:4–77:4, 140:6–18.)  Schlumberger takes the position that Plaintiffs were not entitled to overtime compensation because they were exempt from the overtime-pay provisions of the FLSA under the highly compensated employee exemption ("HCE exemption")

2

and other white-collar exemptions.  (Answer [#54], at ¶¶ 11–17.)  Plaintiffs contend they were misclassified as exempt employees and Schlumberger's compensation structure violates the FLSA.

Plaintiffs filed a motion requesting issuance of notice of this putative collective action to two separate classes of employees of Schlumberger (DD employees and MWD employees) under the standards set forth in *Swales v. KLLM Transportation Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021).  The parties have engaged in the limited discovery they agree is permissible and appropriate under *Swales*, and Plaintiffs believe each class of employees is in all material respects similarly situated and therefore entitled to notice of this suit.

Schlumberger opposes the motion, arguing that notice should not issue to either class of employees because *Swales* requires a decision on the merits on the application of the HCE exemption prior to the issuance of notice.  Schlumberger's response to the motion briefs the Court why it believes Plaintiffs are exempt employees who were paid a guaranteed salary and received overall compensation qualifying them for the HCE exemption.[1]  Schlumberger also argues that, regardless of the exemption issue, Plaintiffs have not satisfied their burden to demonstrate that the identified classes are similarly situated such that collective treatment would advance the purposes of the FLSA.

---

[1] Schlumberger raised some version of this same argument in two early motions to dismiss.  The first motion to dismiss challenged the Original Complaint, which was filed in Guilbeau's name only and alleged that Guilbeau was paid a day rate.  In response to the motion, Guilbeau filed a First Amended Complaint alleging he was paid partially on a salary basis and partially on a day rate, and the District Court mooted the motion to dismiss.  Schlumberger's second motion to dismiss challenged the amended pleading, arguing that Guilbeau's First Amended Complaint still failed to state a claim under the FLSA.  The District Court denied the motion, concluding that Plaintiffs' pleading did not conclusively establish that the affirmative defense of the HCE exemption or other exemptions barred their claims.  (Order [#27].)  Following the denial of the motion, Plaintiffs moved to file the Second Amended Complaint currently before the Court, and the undersigned granted the motion.  (Order [#49].)

The undersigned held a hearing on Plaintiff's motion for notice on March 1, 2023, at which counsel for Plaintiffs and Schlumberger appeared via videoconference.  At the hearing, the undersigned questioned Schlumberger as to why it had not elected to file an early motion for summary judgment on the exemption issue, rather than asking the Court to address this merits issue in the context of its opposition to Plaintiffs' motion for notice.  At the close of the hearing, the undersigned orally ordered the parties to confer and for Schlumberger to file an advisory within seven days informing the Court if it intended to file an early summary judgment motion or the parties could agree to tolling the statute of limitations of the putative class members pending the resolution of the exemption issue.

The parties did not file any supplemental advisory or motion indicating they had reached a consensus on the alternative approach discussed at the hearing within the seven days ordered by the Court.  However, Schlumberger ultimately filed a motion for summary judgment on March 30, 2023, seeking summary judgment on all claims asserted by Plaintiff Trever Guilbeau on behalf of himself and all other DDs.  The motion argues that Guilbeau was an exempt employee under the HCE exemption and therefore not entitled to overtime compensation.  That same day, Schlumberger filed a separate motion asking the Court to defer the issuance of notice to either class of Plaintiffs (DDs and MWDs) pending the resolution of the summary judgment motion.  After seeking various extensions of time to respond to the motions, the parties have filed their responses and replies [#66, #69, #78, #79, #82, #83].  All three motions are now ripe for review.  The undersigned first addresses the motion for summary judgment, then the motions related to notice.

## II.  Motion for Summary Judgment

Schlumberger seeks summary judgment on all claims asserted by Guilbeau on behalf of himself and all other DDs.  Schlumberger argues that Guilbeau was an exempt employee under the HCE exemption and therefore was not entitled to overtime compensation.  The parties' dispute centers on the "salary basis" component of the HCE exemption, outlined *infra*.  The Court should deny the motion because Schlumberger has not proven as a matter of law that Guilbeau was paid on a "salary basis," as required to be exempt under the HCE exemption or any other white-collar exemption.

### A.      Legal Framework on the HCE Exemption

The FSLA exempts individuals from overtime compensation if they are "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  Through that statute, Congress has authorized the Secretary of Labor to promulgate regulations exempting these individuals from overtime.  *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 290 (5th Cir. 2021) (en banc), *affirmed*, --U.S.--, 143 S. Ct. 677 (2023).  "Under that authority, the Secretary has exempted 'highly compensated' as well as more modestly paid 'executive,' 'administrative,' and 'professional' employees."  *Id.* (citing 29 C.F.R. §§ 541.601, 541.100, 541.200, 541.300).

To be exempt under any of these exemptions, the employee must satisfy three conditions: (1) the employee must meet certain criteria concerning the performance of executive, administrative, and professional duties; (2) the employee must meet certain minimum income thresholds; and (3) the employee must be paid on a "salary basis."  *Id.* at 290–91.  While "the duties criteria and income thresholds vary from exemption to exemption, the regulations apply the same salary-basis requirement to all four exemptions."  *Id.*

To qualify for the HCE exemption specifically, an employee must (1) satisfy the threshold for annual compensation, (2) perform primary duties of office or non-manual work, and (3) customarily and regularly perform any one or more of the exempt duties or responsibilities of an executive or administrative employee. *Hobbs v. EVO Inc.*, 7 F.4th 241, 248 (5th Cir. 2021). The compensation requirements under the HCE exemption, set forth at 29 C.F.R. § 541.601, have gone through multiple changes over the past few years, the most recent of which went into effect on January 1, 2020, and requires annual total compensation of at least $107,432 to qualify a worker as exempt. 29 C.F.R. § 601(a)(1); *see also* Overtime Eligibility for White Collar Employees, 84 Fed. Reg. 51,230, 51,249–50, 51,307 (Sept. 27, 2019). This element of the exemption, however, is not contested in this case, and Guilbeau's salary met the compensation standards both in the relevant period ($100,000) and would meet the newest standard. Additionally, the parties are not contesting that Guilbeau satisfied the duties components of the HCE exemption. Their dispute centers on the "salary basis" requirement.

As to "salary basis," the HCE exemption explains that, as of January 1, 2020, "total annual compensation" must include compensation on a "salary basis" of a rate of not less than $684 per week. 29 C.F.R. § 541.601(b)(1). Because Guilbeau worked only until August 19, 2019, the weekly threshold governing his claims is the prior rate of $455 per week. 29 C.F.R. § 541.602 defines "salary basis" for purposes of all the white-collar exemptions, including the HCE exemption. This section provides:

> An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a).  In other words, an employee is only paid on a "salary basis" for purpose of the exemption if the employee receives "the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."  *Id.* § 541.602(a)(1).

29 C.F.R. § 541.604 addresses scenarios involving additional compensation beyond the minimum guaranteed salary ("minimum guarantees plus extras").  Subsection (a) explains that an employer "may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement," so long as the employment arrangement "also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis."  *Id.* § 541.604(a).  The regulation provides examples of this "additional compensation," such as "a one percent commission on sales," "a percentage of the sales or profits of the employer," or "additional compensation based on hours worked for work beyond the normal workweek."  *Id.*  Furthermore, the regulation states that this additional compensation "may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off."  *Id.*

Subsection (b) explains that an employer may calculate earnings "on an hourly, daily or a shift basis, without losing the exemption or violating the salary basis requirement" so long as the following conditions are met:

> the employment arrangement *also includes a guarantee of at least the minimum weekly required amount paid on a salary basis* regardless of the number of hours, days or shifts worked, and a *reasonable relationship* exists between the guaranteed amount and the amount actually earned.

*Id.* § 641.604(b) (emphasis added).  Furthermore,

> The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis.  It does not apply, for example, to an exempt store manager paid a guaranteed salary per week that exceeds the current salary level who also receives a commission of one-half percent of all sales in the store or five percent of the store's

profits, which in some weeks may total as much as, or even more than, the
guaranteed salary.

*Id.*

The HCE exemption is an affirmative defense to liability under the FLSA.  *Corning
Glass Works v. Brennan*, 417 U.S. 188, 196 (1974).  Schlumberger therefore bears the burden to
prove that Guilbeau was exempt from receiving overtime wages by a preponderance of the
evidence, including that he was paid on a salary basis under the governing regulations.  29
U.S.C. § 213(a); *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020).

**B.    Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure
only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together
with the affidavits, if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such
that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the
district court of the basis for its motion, and identifying those portions of [the record] which it
believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at
323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish
the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th
Cir. 1995). The non-movant must respond to the motion by setting forth particular facts
indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d

8

170, 174 (5th Cir. 2000).   The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

## C.    Summary Judgment Record

The summary judgment record contains evidence establishing the following undisputed facts regarding Guilbeau's compensation and employment with Schlumberger.  Schlumberger employed Guilbeau from 2011 through approximately 2014.  (Guilbeau Dep. [#73-1], at 17:23–18:4.)  Guilbeau returned to work for Schlumberger in November 2017, and his employment with Schlumberger ended on August 15, 2019.  (*Id.* at 5:19–6:9, 18:8–14.)  Guilbeau worked as a DD.  (*Id.* at 18:8–11, 20:22–24.)

During the relevant time period (2017 to 2019), Guilbeau was paid pursuant to a "hybrid" pay practice that consisted of two primary parts.  (*Id.* at 37:17–42:4, 38:18–19; Salomon Dep. [#73-2], at 14:20–23, 64:8–11.)  The first part of Guilbeau's pay structure was a biweekly salary. (Guilbeau Dep. [#73-1], at 33:14–35:20, 37:17–21; Maxwell Decl. [#73-3], at ¶¶ 4, 7, and 9.) Guilbeau's annual salary during the relevant time period was $47,476.00.  (Guilbeau Dep. [#73-1], at 20:25–21:5; Maxwell Decl. [#73-3], at ¶ 13.)   This equates to a biweekly salary of approximately $1,826.00, or a weekly salary of approximately $913.00.  (Guilbeau Dep. [#73-1], at 20:25–21:5.)

Guilbeau received the same biweekly salary regardless of whether he worked or not.  (*Id.* at 33:14–35:20, 37:17–42:4; Maxwell Decl. [#73-3], at ¶ 10.)  During the pay period of February

3, 2019, through February 16, 2019, for example, Guilbeau worked two days in the first week and every day the second week.  (Maxwell Decl. [#73-3], at ¶ 5–6.)  Guilbeau received the same biweekly salary of $1,826.00.  (*Id.* at ¶ 4.)   In the pay period of February 17, 2019, through March 2, 2019, Guilbeau worked every day of both weeks within the pay period. (*Id.* at ¶¶ 8–9.) Guilbeau received his biweekly salary of $1,826.00. (*Id.* at ¶ 7.)  In the pay period of August 4, 2019, through August 17, 2019, Guilbeau did not work at all.  (*Id.* at ¶ 10.)  Guilbeau received his full biweekly salary of $1,826.00.  (*Id.* at ¶ 9 (authenticating pay statement).)

The second part of Guilbeau's hybrid compensation was a "Rig-site Day Rate Bonus" and other lesser "bonus" payments.  (Guilbeau Dep. [#73-1], at 33:14–22.)  Schlumberger refers to this part of Guilbeau's compensation as a "bonus," while Plaintiffs refer to it as a "day rate." The "Rig-site Day Rate Bonus" was paid pursuant to a written policy setting forth conditions that must be met in order for an employee to earn the day rate for each day of performing job duties at a rig-site.  (*Id.* at 44:18–46:20; Salomon Dep. [#73-2], at 112:23–113:12; Maxwell Decl. [#73-3], at ¶¶ 11–12; Pay Policy [#73-3], at 67.)   Guilbeau's remuneration statements in the record refer to the "Rig-site Day Rate Bonus" as a "Rig Day Rate."  (Guilbeau Compensation [#78-2].)

Guilbeau also received a lesser "Standby Day Rate Bonus," which was paid "when the client [was] being charged for the field crew to be on standby."  (Pay Policy [#73-3], at 67–68.) Guilbeau also received a "Reduced Crew Incentive," "Lead Bonus," and "Key Tech Bonus" when he worked with a smaller crew, worked as the lead for the crew, or was required to employ certain technologies or tools in performing his duties, respectively.  (Guilbeau Compensation [#78-2], at 2–6; Guilbeau Dep. [#78-1], at 34:11–24.)   Guilbeau recorded the job bonuses to which he was entitled in Schlumberger's system called "LoadChart."  (Guilbeau Dep. [#73-1], at 48:11–21; Salomon Depo. [#73-2], at 74:14–21, 90:3–13.)   Guilbeau did not receive these job

bonuses for days worked that were not billable to Schlumberger's customers.  (Guilbeau Dep. [#73-1], at 33:14–35:20.)  For example, when Guilbeau attended training, he did not receive any additional "bonus" or "day rate" compensation.  (*Id.* at 36:18–37:16.)

For 2018, Guilbeau's total annual income was $260,423.50.  (*Id.* at 38:25–40:25.)  That year, $175,300.00 of this income was from "Rig Day Rate" compensation, and $43,824.00 was Guilbeau's guaranteed base salary.  (Guilbeau Compensation [#78-2], at 4.)  For 2019, Guilbeau's total annual income was $143,199.79. (Guilbeau Dep. [#73-1], at 40:25–41:22.)  That year, $78,125.00 of his income was from "Rig Day Rate" compensation, and $26,659.60 was his guaranteed base salary.  (Guilbeau Compensation [#78-2], at 6.)  At all time periods relevant to this suit, Guilbeau earned over $100,000.00 per annum and over $455.00 per week in guaranteed base salary.  (Guilbeau Dep. [#73-1], at 33:7–10, 37:17–42:4.)

## D.    Analysis

Schlumberger asks the Court to award it summary judgment on Guilbeau's claims on the basis that he was exempt from the FLSA's overtime compensation requirements under the HCE exemption.  Schlumberger argues all three requirements of the HCE exemption are easily satisfied here: (1) Guilbeau was paid on a salary basis and received an annual salary of $47,467 (which amounts to a weekly salary of $913.00—an amount well in excess of the $455.00 required by the FLSA's regulations); (2) Guilbeau's total annual compensation exceeds $100,000, the threshold annual compensation for the exemption, as he was paid $260,423.50 in 2018 and $132,900.00 in 2019; and (3) Guilbeau regularly performed at least one or more exempt duties.

As noted, Plaintiffs dispute the salary-basis requirement.  Plaintiffs maintain the hybrid pay structure at issue does not satisfy the salary-basis requirement of the exemption because

Guilbeau's actual compensation did not bear a "reasonable relationship" to his guaranteed weekly salary as required by Section 541.604(b).   Schlumberger responds that Section 541.604(b) does not govern this case because its reasonable relationship requirement only applies when an employee's compensation consists of a day rate *and a day rate only*.  According to Schlumberger, because Guilbeau received a guaranteed salary that otherwise satisfied the income thresholds of the exemption under Section 541.602(a) (even if that salary comprised a small portion of his overall compensation), Section 541.604(b) does not apply.  Schlumberger misreads the governing regulations and is not entitled to summary judgment.

i.      **Schlumberger has not established as a matter of law that Section 541.604(b) does not govern the hybrid compensation scheme at issue.**

The Court should reject Schlumberger's argument that the hybrid compensation scheme at issue satisfies the salary-basis requirement of the HCE exemption because it has not established as a matter of law that Section 541.604(b)'s reasonable relationship requirement does not apply.

Section 541.604 is triggered where employees receive some additional compensation over and above their minimum weekly guaranteed salary, just like Guilbeau here.  Section 541.604(a) governs where the additional compensation is a commission or bonus or pay for hours "beyond the normal workweek," i.e., additional work not typically contemplated by the employee's regular schedule or hours worked in excess of 40 hours per week.  Schlumberger asks the Court to treat the day-rate portion of Guilbeau's compensation as remuneration for this kind of extra work under 541.604(a) because Schlumberger referred to Guilbeau's day rate as a "Rig-site Day Rate *Bonus*."  (Pay Policy [#73-3], at 67 (emphasis added).)  How Schlumberger characterized or referred to the day-rate portion of Guilbeau's compensation does not control; the reality of the compensation arrangement and the textual requirements of the governing

12

regulations do.  *See Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981) (A label is "dispositive only to the degree that it mirrors the economic reality of the relationship.").

Guilbeau testified in his deposition that "every day [he] was working on a rig, [he] would get a base payment that was . . . calculated by the day . . . ."  (Guilbeau Dep. [#78-1], at 33:18–34:10.)  Guilbeau's remuneration statements refer to this portion of his compensation as a "Rig Day Rate."  (Guilbeau Compensation [#78-2].)  There is no evidence before the Court that establishes this "day rate" was extra compensation of the kind that would fall under Section 541.604(a).

Aside from pointing to its decision to call Guilbeau's day rate a "bonus" in its pay policy documents, Schlumberger argues that Guilbeau's additional compensation is a "bonus" because it was tied to Schlumberger's revenue.  Schlumberger argues that Guilbeau received his day-rate "bonus" only when Schlumberger's customers were charged for work performed at their oil rigs and Schlumberger generated revenue.  The fact that Schlumberger charged its customers for days it staffed DDs to oilrigs does not establish as a matter of law that Guilbeau's day rate was a bonus falling under Section 541.604(a).

Again, to fall under Section 541.604(a), Guilbeau's extra compensation must be for extra work *beyond* Guilbeau's "normal workweek" or compensation for a commission on sales or a bonus based on employer profits.  Although the regulations indicate that extra compensation under Section 541.604(a) may "in some weeks" exceed the employee's guaranteed salary, the remuneration statements in the record suggest that Guilbeau's day rate exceeded his guaranteed salary not just some weeks but every single week in which he performed work for Schlumberger.  Furthermore, it was Guilbeau's understanding that his day rate was part of his base remuneration

for his normal duties as a DD working in the field at a rig site.  (Guilbeau Dep. [#78-1], at 33:18–34:10.)  The remuneration statements before the Court support this assertion.

In contrast to his day rate, Guilbeau's other "bonuses" comprised a far lesser portion of his overall compensation.  In 2018, for example, Guilbeau only received $900 in "Key Tech Bonus" payments and $4,800 in "Standby Rate" payments all year long.  (Guilbeau Compensation [#78-2], at 4.)  Even the "Reduced Crew Incentive" payment of $20,625 in 2018 pales in comparison to the $175,300 Guilbeau received in "Rig Day Rate" payments throughout that year.  (*Id.*)  Viewing Guilbeau's compensation structure as a whole it is reasonable to conclude that these lesser payments would fall under Section 541.604(a).  These payments compensated Guilbeau for being on standby; carrying out his duties with a reduced crew; and being required to work with specific tools or technologies.  Schlumberger has not advanced a persuasive argument for categorizing Guilbeau's day rate, which consistently comprised the majority of his pay, similarly.[2]  As Schlumberger has not proven as a matter of law that

---

[2] The undersigned acknowledges that one judge in the Western District of Louisiana has embraced Schlumberger's "revenue-linked" commission argument.  *See Venable v. Schlumberger Ltd.*, No. 6:16-CV-00241 LEAD, 2022 WL 895447 (W.D. La. Mar. 25, 2022) (Summerhays, J.); *Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-02267, 2022 WL 992670 (W.D. La. Mar. 30, 2022) (Summerhays, J.).  These decisions did not have the benefit of the Supreme Court's *Helix* decision, *see infra*, and the undersigned disagrees with Judge Summerhays's characterization of the day-rate compensation at issue based on the record before the Court for the reasons already stated.

Moreover, these opinions were based on two pre-*Helix* opinions out of the First and Second Circuits regarding the HCE exemption, which Schlumberger again cites in its briefing here.  *See Litz v. Saint Consulting Group, Inc.*, 772 F.3d 1 (1st Cir. 2014); *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146 (2d Cir. 2013).  Yet these cases are inapposite for multiple reasons.  *Anani* squarely held that Section 604(b) did not apply to the HCE exemption, a proposition directly rejected by the Supreme Court in *Helix, see infra*.  Additionally, in *Anani* the plaintiff was a pharmacist who received a base salary based on a 44-hour work week; his extra compensation paid at an hourly rate was for work beyond his normal 44-hour work week, not compensation for the primary work of the employee, as here.  730 F.3d at 147.  In *Litz*, Section 541.604(b) was not even at issue; the plaintiffs had abandoned the argument that this subsection applies to highly compensated employees in their reply brief.  772 F.3d at 5.  Regardless, the

Guilbeau's day rate was a bonus under Section 541.604(a), Guilbeau's extra compensation must therefore be analyzed under Section 541.604(b).

A district court in the Southern District of Texas analyzing a similar compensation structure recently also denied an employer summary judgment on the HCE exemption. *See Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 658768, at *1 (S.D. Tex. Mar. 4, 2022), *report and recommendation adopted*, No. 3:19-CV-00320, 2022 WL 889276 (S.D. Tex. Mar. 25, 2022).[3]  In *Gentry*, the plaintiffs were paid a guaranteed weekly salary equal to only eight hours of pay plus an additional hourly rate for all hours worked in excess of eight hours, including those hours worked over 40 in a given workweek. *Id.* at *2.  Yet the plaintiffs almost always worked more than 40 hours a week. *Id.*  As the guaranteed weekly salary was not intended to compensate plaintiffs for their full regular workweek, and the additional hourly

---

First Circuit's agreement with the Second Circuit that Section 541.604(b) does not apply to the HCE exemption (in dicta) is counter to the Supreme Court's statements in its decision in *Helix*. *See id.*

[3]  The employer filed an appeal with the Fifth Circuit on April 8, 2022.  *See Gentry v. Hamilton-Ryker IT Solutions*, 22-40219.  The appeal was stayed pending the Supreme Court's decision in *Helix*, but now briefing is complete and the parties are awaiting oral argument and a decision.  If the Fifth Circuit issues a ruling during the pendency of this case, it could be potentially dispositive of the HCE exemption issue before the Court.

The undersigned also notes that Schlumberger recently provided the Court with a notice of another recent Fifth Circuit FLSA decision regarding the salary basis test [#85].  *See Hebert v FMC Tech., Inc.*, 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023).  Schlumberger argues this decision is "highly relevant" to the issues raised in its motion for summary judgment.  The undersigned has reviewed the *Hebert* decision and finds it to be related to though not dispositive of any issue raised in Schlumberger's motion.  In *Hebert*, which is an unpublished decision, the Fifth Circuit affirmed a district court's grant of summary judgment in favor of an employer on the basis that the employee was exempt from the FLSA's overtime-compensation requirements under the "learned professional" exemption.  Fifth Circuit rejected the plaintiff's argument that because he received a "field service premium" for days he was required to work in the field in addition to his guaranteed salary he was not paid on a salary basis. *Id.* at *2.  The Fifth Circuit in *Hebert* was not considering the argument raised here—that the bonus payment was not a bonus or a premium payment at all but rather a day rate.  This decision does not provide significant guidance to the Court as to how to evaluate the hybrid pay structure at issue in this case.

compensation instead functioned as part of the employee's base pay for regular hours worked, the district court reasoned that the compensation structure had to be evaluated under Section 541.604(b). *Id.* at *5–6.

The Supreme Court's recent decision in *Helix Energy Solutions Group, Inc. v. Hewitt*, 598 U.S. --, 143 S. Ct. 677 (2023), supports this conclusion.   In *Helix*, the Supreme Court addressed the HCE exemption in the context of an oilfield worker paid solely by the day.   Hewitt was paid a day rate for his work as a "toolpusher" on an offshore oil rig; he regularly worked 12 hours a day and seven days a week, then had 28 days off before reporting back to the vessel.   *Id.* at 684.   The Supreme Court rejected the employer's argument that just because Hewitt received a paycheck every two weeks that contained pay exceeding the threshold $455 for the exemption, he was paid under Section 541.602(a) on a salary basis.   *Id.* at 687.   The Supreme Court reasoned that day-rate workers like Hewitt could not be deprived of the benefits of the FLSA just because they received a high day rate and were ultimately well paid; the text of the exemption makes plain that day-rate workers are only exempt if their compensation satisfies the reasonable relationship requirement of Section 604(b).   *Id.* at 691–92.   Hewitt was therefore not exempt under the FLSA and was entitled to overtime compensation.   *Id.* at 692.

In reaching this conclusion, the Supreme Court explained that the employer "could come into compliance with the salary-basis requirement for Hewitt and similar employees in either of two ways." *Id.* at 691.   "It could add to Hewitt's per-day rate a weekly guarantee that satisfies § 604(b)'s conditions.   Or it could convert Hewitt's compensation to a straight weekly salary for time he spends on the rig." *Id.*   In making this statement, the Supreme Court intimated that receiving a weekly guarantee in addition to the per-day rate would not remove the pay structure from the ambit of Section 604(b).

16

In advocating for a different interpretation of *Helix* and Section 604(b), Schlumberger directs the Court to footnote three of the *Helix* opinion.  In that footnote, the Supreme Court emphasized that Section 602(a) and Section 604(b) are "independent routes for satisfying the HCE rule's salary-basis component" and that "a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt."  *Id.* at 685 n.3.  But footnote three does not say anything regarding the type of hybrid compensation structure at issue here or in *Gentry*.  This footnote merely establishes that where a worker is paid on a purely salary basis (on a weekly or less frequent basis), Section 604(b) is not triggered.  That is not the scenario here, where Guilbeau's base compensation for his work as a DD at oilrig sites is comprised not just of a weekly salary but also a day rate.

The Department of Labor ("DOL") appears to agree.  In 2018, the DOL issued an opinion letter on the HCE exemption consistent with the district court's approach in *Gentry*.  *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2018-25, 2018 WL 5925115 (Nov. 8, 2018).  The opinion applied Section 604(b) to a compensation structure in which an engineer was paid a guaranteed weekly salary of $2,100 for 30 hours of work per week (not the full workweek) with additional compensation of $70 for each additional hour over 30.  *Id.*  Just like the Supreme Court explained in *Helix*, payment of a weekly guarantee plus additional hourly or daily compensation falls under Section 604(b).  Whether the employee retains the exemption despite the additional compensation depends upon whether there is a reasonable relationship between the guaranteed salary and the employee's actual earned pay.

In summary, Schlumberger has not established as a matter of law that the extra compensation received by Guilbeau in the form of a "rig day rate" constitutes a bonus or commission that falls under Section 541.604(a).  It follows, therefore, that Schlumberger has not

established as a matter of law that this extra compensation satisfies the "salary basis" requirement of Section 541.602(a) without regard to the reasonable relationship requirement of Section 541.604(b). Guilbeau received substantial additional compensation beyond his guaranteed weekly salary that, if not falling under Section 541.604(a), must be evaluated under Section 541.604(b).

> **ii.    Schlumberger has not established as a matter of law that Guilbeau's compensation satisfied Section 541.604(b)'s reasonable relationship requirement.**

If Section 541.604(b) governs, Schlumberger cannot prove that there was a reasonable relationship between Guilbeau's guaranteed salary and actual compensation. The DOL, in evaluating reasonableness, has concluded that a ratio of 1 to 1.5 or below (when comparing guaranteed salary and actual earned pay) is reasonable. Opinion Letter FLSA 2018-25, 2018 WL 5925115. Thus, the DOL determined that the engineer addressed in its 2018 opinion letter (if regularly receiving earnings of $3,761 per week, an amount constituting 1.8 times the guaranteed weekly salary of $2,100) would not be considered to be paid on a salary basis and would therefore lose the exemption. *Id.* Similarly, in *Gentry*, the plaintiffs regularly received compensation over five times their guaranteed salary (e.g., a guaranteed weekly salary of only $984 with average total weekly compensation in the amount of $5,347.66). 2022 WL 658768, at *6. The district court concluded "[t]hese numbers are far beyond what is considered reasonable." *Id.*

The same conclusion is compelled here. The summary judgment record establishes that, in 2018, Schlumberger paid Guilbeau a guaranteed "base salary" of $43,824.00 and total compensation of $260,423.50, a ratio of 1 to 5.9 between guaranteed salary and actual earned pay. (Remuneration Statements [#78-2], at 4; Guilbeau Dep. [#78-1], at 38:25–40:25.) In 2019,

Schlumberger paid Guilbeau a guaranteed base salary of $26,659.60 and total annual compensation of $143,199.79, a ratio of 1 to 5.3 between guaranteed salary and actual earned pay. (Remuneration Statements [#78-2], at 6; Guilbeau Dep. [#78-1], at 40:25–41:22.)  These numbers far exceed the 1:1.5 ratio embraced by the Department of Labor and applied in the Fifth Circuit.  *See Gentry*, 2022 WL 658768, at *6; *Sonnier v. Recon Mgmt. Servs. Inc.*, No. 2:20-CV-00002, 2022 WL 141779, at *6 (W.D. La. Jan. 14, 2022) (collecting authorities).

In summary, Guilbeau's hybrid compensation, comprised of both a guaranteed weekly minimum plus a day rate, does not satisfy Section 541.604(b)'s reasonable relationship requirement.  Therefore, Schlumberger has not established as a matter of law that it paid Guilbeau on a salary basis for purposes of the HCE and other white-collar exemptions. Accordingly, Schlumberger has not proven its affirmative defense of the HCE exemption and is not entitled to summary judgment.

### III.  Motion for Notice and Motion to Defer Notice

In addition to recommending that the District Court deny Schlumberger's motion for summary judgment, the undersigned will deny Schlumberger's motion to defer notice and grant in part Plaintiffs' motion for notice.  Whether Plaintiffs are ultimately exempt employees under the HCE exemption or other white-collar exemptions is not the type of threshold issue the Court must decide on its merits prior to issuing notice.  Additionally, Plaintiffs have satisfied their burden to demonstrate that the identified class of potential DD Plaintiffs are similarly situated and entitled to notice of this lawsuit.  The undersigned will, however, deny the motion for notice as to the MWD class.

## A.     Legal Standard

In the Fifth Circuit's recent decision in *Swales*, the court rejected the two-step approach of conditional certification and decertification applied by district courts across the country for decades in favor of a more searching initial inquiry on whether notice should be issued.  *Swales*, 985 F.3d at 434.  The Fifth Circuit has now directed district courts to "rigorously scrutinize the realm of 'similarly situated' workers" and requires that courts "do so from the outset of the case, not after a lenient, step-one 'conditional certification.'"  *Id.*  Per *Swales*, courts should now "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'"  *Id.*  This initial inquiry includes a consideration of what merits questions can be answered collectively.  *Id.* at 442.  The district court should then "authorize preliminary discovery accordingly."  *Id.* at 441.  "After identifying the material facts and legal considerations at issue, the Court may decide (i) collective action is not appropriate; (ii) additional discovery is needed to make a determination; or (iii) a certain category of employees is similarly situated and should be given notice."  *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 723 (S.D. Tex. 2021) (quoting *Swales*, 985 F.3d at 443).  Plaintiffs bear the burden of demonstrating the proposed classes of employees identified in their motion for notice are similarly situated.  *Swales*, 985 F.3d at 443; *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018).  A district court has broad discretion in deciding whether and to whom to issue notice for purposes of litigation management.  *Swales*, 985 F.3d at 443.

## B.     Analysis

Plaintiffs ask the Court to issue notice to two classes of employees—DDs and MWDs. Schlumberger contends the Court should not issue notice before deciding the threshold issue of

whether Plaintiffs are exempt under the HCE exemption. Although the undersigned has recommended that the District Court deny Schlumberger's motion for summary judgement, the Court is not required to resolve the merits issue of whether Guilbeau and other Plaintiffs are exempt employees falling outside of the FLSA's overtime-compensation before evaluating whether notice should be issued. Additionally, the undersigned concludes that Plaintiffs have established that the DD employees are similarly situated and entitled to notice, but the undersigned will deny the motion for notice as to the MWD employees. Finally, because Schlumberger has not raised any actual arguments challenging Plaintiffs' proposed notice in their response to Plaintiffs' motion, the undersigned will approve Plaintiffs' proposed notice and consent form and procedures.

> i. *Swales* **does not direct courts to resolve whether an employee is exempt under the HCE exemption at the notice stage of an FLSA collective action.**

The Fifth Circuit has admonished courts that while a district court may facilitate notice to potential plaintiffs' for case-management purposes, "it cannot signal approval of the merits or otherwise stir up litigation." *Swales*, 985 F.3d at 434 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). Yet, the Fifth Circuit has also endorsed the resolution of certain threshold issues that bear on the ultimate merits of a case prior to addressing the issuance of notice. A district court abuses its discretion, for example, by issuing notice to those employees who executed valid agreements to arbitrate their disputes with their employer, as those persons are not "potential participants" in an FLSA action pending in federal court. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019). A district court errs also when it refuses to consider available evidence that bears on whether the economic-realities test (in a case turning on whether workers were misclassified as independent contractors) establishes that

members of the FLSA class were not "employees" such that they cannot bring an FLSA claim. *Swales*, 985 F.3d at 441.

But the issue of whether Guilbeau and other DD Plaintiffs were exempt under the HCE exemption is a different type of threshold issue than whether an FLSA plaintiff is an "employee" or has a right to proceed in a judicial rather than an arbitral forum.  Unlike these issues, the HCE exemption is an affirmative defense, for which Schlumberger—not Plaintiffs—bears the burden of proof.  Plaintiffs should not be required to marshal summary-judgment evidence to disprove Schlumberger's affirmative defense in the context of a motion for notice.  This is not compelled by *Swales* or *JPMorgan Chase*, and the Court declines to endorse this line of reasoning here. Accordingly, regardless of the recommendation to deny Schlumberger's motion for summary judgment, the undersigned will deny Schlumberger's motion to defer notice.

> **ii.    Plaintiffs have satisfied their burden to demonstrate entitlement to notice under *Swales* as to the DD class.**

Plaintiffs ask the Court to issue notice to two subclasses of Plaintiffs, DDs and MWDs. The DD subclass is defined as follows:

> All current and former employees of Defendant, of any job title, who performed any DD ("directional drilling") duties and were paid partially on a "salary" basis that did not bear a reasonable relationship to their total weekly earnings and partially on a day rate basis without receiving overtime premium pay for all hours worked over forty in each seven-day workweek for the time period beginning three years prior to the filing of this lawsuit through the date of the final disposition of this action.

Plaintiffs' proposed notice also states that the DD class includes FSDD, FEDD, FSDX, FEDX, and any individual with such job title or performing any such role remotely.  (Proposed Notice [#62-9].)

The MWD subclass is defined as follows:

> All current and former employees of Defendant, of any job title, who performed the role of an MWD ("measurements while drilling"), LWD ("logging while drilling"), or MLWD ("measurements and logging while drilling), and were paid partially on a "salary" basis that did not bear a reasonable relationship to their total weekly earnings and partially on a day rate basis without receiving overtime premium pay for all hours worked over forty in each seven-day workweek and/or whose job duties did not meet any exemption to the FLSA for the time period beginning three years prior to the filing of this lawsuit through the date of the final disposition of this action.

Plaintiffs' proposed notice also informs the MWD class that this class includes FSMWD, FSMLWD, FSLWD, FEMWD, FEMLWD, FELWD, and any individual with such job title or performing any such role remotely. (Proposed Notice [#62-10].)

As previously discussed, Plaintiffs' FLSA claims turn on the factual and legal determination of whether they were exempt workers under the HCE exemption and other white-collar exemptions. Given the nature of Plaintiffs' claims, the determination of whether they are similarly situated for purposes of collective treatment turns primarily on whether they were paid pursuant to the same pay policy. Plaintiffs have satisfied their burden to demonstrate that all DDs and MWDs were subject to the same pay practice, regardless of specific job duties or variations in the title of the position as listed above or variations in the specific rates of their pay.

The evidence presented by Plaintiffs establishes that Schlumberger currently employs approximately 200 to 250 DDs and 12 to 24 remote MWDs (the number of field MWDs is unknown). (Salomon Dep. [#62-1], at 87:18–88:10, 120:14–121:4.) Schlumberger's corporate representative testified in his deposition that all of Schlumberger's DDs and MWDs are subject to the same pay policy, regardless of the geographic location of their work. (Salomon Dep. [#62-1], at 14:15–16:7, 61:20–62:16, 64:8–11.) All DDs and MWDs receive both a guaranteed weekly salary and a "job bonus" component, which includes the "day rate rig bonus" and smaller

bonuses discussed *supra*.  (Salomon Dep. [#62-1], at 14:20–16:7; Guilbeau Dep. [#62-7], at 30:7–11.)

This evidence is sufficient to establish that the DD class is similarly situated as to Plaintiffs' FLSA claims and entitled to notice of this lawsuit.  Plaintiffs stipulated at Guilbeau's deposition that Guilbeau is not challenging his exempt status based on his job duties, only whether he was paid on a salary basis.  (Guilbeau Dep. [#62-7], at 6:23–7:2.)  Because the primary components of the DD class compensation—the guaranteed weekly salary and the day rate—are the same throughout the class and Plaintiffs are not challenging the duties element of the HCE exemption, there will not be variation between class members that would require individualized treatment to evaluate the merit of this class's FLSA claims and the application of the exemption.  Schlumberger does not advance any argument in its response to Plaintiffs' motion for notice suggesting otherwise, aside from a general assertion as to all Plaintiffs that various bonuses they might receive differentiate them from one another in terms of pay structure. Neither does Schlumberger argue that DDs who work in different locations are paid differently; no one disputes that all DDs were paid using the guaranteed-salary plus day-rate "bonus" pay structure.  Thus, given that plaintiffs' argument is not based on the DDs' duties (which might vary), and the pay structure is the same for all DDs who work for Schlumberger, the undersigned finds claims of the DD class can be handled collectively and there is no reason to limit the geographic scope of the DD class.

Assessing the similarities among the members of the MWD class is not as straightforward.  Again, there is testimony in the record that MWDs were all subject to the same pay policy regardless of geographic location or work in a remote or field capacity.  Yet, as to this class, the duties component of the HCE exemption remains in dispute.  Schlumberger vigorously

argues there are significant variations in the job duties of MWDs that make collective treatment impossible. Plaintiffs argue that the overall duties of the MWD subclass are the same. Plaintiffs further argue that this Court is collaterally estopped from considering any variation in duties of MWDs in whether to issue notice because similarly situated MWDs already litigated this issue against Schlumberger and prevailed. *See Gilchrist v. Schlumberger Tech. Corp.*, 1:16-cv-00008-LY.

First, the undersigned disagrees with Plaintiffs' collateral-estoppel argument. Offensive collateral estoppel forecloses a defendant from litigating an issue the defendant has previously litigated unsuccessfully with another party. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). For a plaintiff to invoke the doctrine of offensive collateral estoppel, the Fifth Circuit has held that the following requirements must be satisfied: (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine. *Amaya v. City of San Antonio*, 980 F. Supp. 2d 771, 777 (W.D. Tex. 2013) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998)).

The issue currently before the Court is whether the proposed class of MWDs working for Schlumberger are similarly situated for purposes of receiving notice of a collective action. The court in *Gilchrist* never decided this legal issue. The plaintiffs in *Gilchrist* were two field MWDs also working for Schlumberger (John Gilchrist and Byron Brockman), alleging misclassification as exempt employees and seeking unpaid overtime compensation. However, in *Gilchrist* there was never a decision on the issuance of notice and there was never a class of MWDs identified. The plaintiffs moved for conditional certification (under the pre-*Swales*

standard) but ultimately withdrew their motion, as well as the additional two consents to join the lawsuit that had been filed, and chose to proceed solely on an individual basis.  *See Gilchrist*, 1:16-cv-00008-LY (dkt. 50, 54).  Thereafter, Schlumberger moved for summary judgment on the HCE exemption, but unlike in this case, the primary issue in dispute was not whether the plaintiffs were paid on a salary basis (the parties stipulated that they had been), but whether they performed exempt duties. *See id.* (dkt. 87).  The district court denied the motion. *Id.* (dkt. 114). The case proceeded to a bench trial before the district court, after which the court held that Schlumberger had misapplied the HCE exemption to the two MWD plaintiffs and that they were entitled to overtime compensation. *Id.* (dkt. 240).  The final judgment memorializing these findings is currently on appeal before the Fifth Circuit.

Plaintiffs have appended to their motion for notice over 600 pages of the *Gilchrist* trial transcript in an attempt to establish various facts related to the duties of O'Mara (the lead MWD Plaintiff in this case) and the proposed class.  Yet all that the *Gilchrist* case decided was that the specific plaintiffs proceeding on an individual basis—Gilchrist and Brockman—did not regularly perform executive and administrative duties, as defined in the regulations and the HCE and administrative exemptions.  This decision said nothing about all MWDs working for Schlumberger or the duties of the breadth of the proposed class here.  And importantly, the plaintiffs in *Gilchrist* were both field MWDs, whereas O'Mara is a remote MWD.  Thus, collateral estoppel cannot be employed by Plaintiffs here to prevent Schlumberger from arguing that the MWD class (which encompasses both remote and field MWDs across geographic locations) is not similarly situated, as Schlumberger never had the opportunity to litigate that question in the *Gilchrist* case.  Nor does collateral estoppel bar Schlumberger down the road in

this case from contesting the duties element of the HCE exemption as to O'Mara and the MWD class in a motion for summary judgment or at trial.

Plaintiffs can, however, in arguing that the MWD class is similarly situated and entitled to notice, rely on testimony from O'Mara in his deposition that his duties as a remote MWD were the same as the duties of the field MWDs in the *Gilchrist* case.   In the deposition, counsel for Plaintiffs read O'Mara excerpts from the *Gilchrist* trial transcript, and Plaintiffs point to this testimony to establish that there is no material difference in the duties between field and remote MWDs.  (O'Mara Dep. [#62-6], at 118:23–148:18.)  O'Mara also generally testified to this effect throughout his deposition: that being a field MWD and remote MWD involved the same tasks "minus the physical stuff you can't do remotely obviously."  (*Id.* at 13:6–14:7, 153:14–23.) Additionally, O'Mara testified that there is no material difference between an MWD, an LWD, and an MLWD, and Schlumberger's corporate representative agreed that the job description for MWDs was appropriate for any tier or grade of the position.  (*Id.* at 18:11–22:23, 92:24–93:2; Salomon Dep. [#62-1], at 101:14–102:1, 113:16–114:4.)

Schlumberger, however, points to evidence highlighting the distinction between the duties of field and remote MWDs, arguing that the duties of field and remote MWDs could not possibly be the same, if O'Mara testified he did not do any "physical stuff," i.e. manual labor, because he worked solely at a remote operations center.  (*See* O'Mara Dep. [#62-6], at 13:6–14:7, 100:12–102:13.)  Schlumberger also directs the Court to testimony from the *Gilchrist* trial to establish that those MWDs like O'Mara who worked at Schlumberger's remote operations centers had expertise and problem-solving and quality-control abilities differentiating them from field MWDs.  (*See* Gilchrist Tr. [#66-8], at 38–41, 140–41, 148.)  Brockman testified at the *Gilchrist* trial that remote MWDs were the "highest level of MWDs."  (*Id.* at 148.)  Finally,

testimony of Richard Lovelace and Magid Ibrahim—two MWD plaintiffs from another FLSA action against Schlumberger out of the Western District of Louisiana—raises additional fact questions as to whether the MWD class is similarly situated.  *See Boudreaux v. Schlumberger*, 6:14-cv-02267.  Lovelace testified that as part of his role as an MWD, he helped onboard new MWDs by showing them how to program tools and to find their way around the rig; evaluated junior MWDs on their completion of new tasks for promotion purposes; and sometimes filled in for his supervisor in submitting required survey reports to state agencies.  (Lovelace Dep. [#66-10], at 37–38, 51–55.)  Ibrahim testified that he made high-level decisions himself rather than sending his questions to the remote operations center and provided design recommendations and pre-job planning and support, duties he did not share with all MWDs.  (Ibrahim Dep. [#66-12], at 119–20, 140, 154-55.)

Although Plaintiffs have presented the Court with some evidence that these distinctions may not ultimately be dispositive of the duties aspect of the HCE exemption, the undersigned is not convinced that the MWD class is similarly situated under the more searching *Swales* standard.  Additionally, the undersigned notes that the MWD class is small—only consisting of 12 to 24 remote employees (and an unknown number of field employees).  Combining this subclass with the much larger DD class is likely to complicate the resolution of this action and does not advance the case management and efficiency concerns underlying the collective action framework.

In summary, Plaintiffs have satisfied their burden to demonstrate that the DD subclass is similarly situated with respect to the merits of their FLSA claims and the application of the HCE exemption.  The DD class is therefore entitled to notice of this lawsuit.  However, the motion for notice to the MWD class is denied.

### iii.   The undersigned will approve the proposed notice and consent procedures.

Having concluded that the DD class of Plaintiffs is entitled to notice, the undersigned will also approve Plaintiffs' proposed notice to the DD class members, consent form, and notice procedures.   Plaintiffs request notice via mail, e-mail, and text message, a 90-day opt-in period, with a 45-day reminder postcard.  Schlumberger's response to Plaintiffs' motion does not object to any specific aspect of the proposed notice and consent forms and notice schedule.   The undersigned finds these proposed procedures to be reasonably calculated to provide assurance that potential class members, many of whom work in the field engaged in direct oilfield operations, receive notice of this lawsuit.

### IV.  Conclusion, Order, and Recommendation

Having considered the parties' motions, the responses and replies, the arguments of counsel at the Court's March 1, 2023 hearing, the record before the Court, and governing law, the undersigned recommends that Defendant's Motion for Summary Judgment With Respect to the Claims of Trever Guilbeau [#73] be **DENIED**.

**IT IS ALSO ORDERED** that  Plaintiffs' Opposed Motion for Notice Under *Swales* [#62] be **GRANTED IN PART** as follows:

- The undersigned hereby approves Plaintiffs' Notice Letters and Consent Form attached to their motion [#62-9, #62-10, #62-11] and notice shall be issued to the DD class of potential plaintiffs.  The motion is denied as to the MWD class.

- The undersigned hereby approves the following notice schedule:

| DEADLINE | DESCRIPTION OF DEADLINE |
|---|---|
| **10 Days from Order Approving Notice to Potential Class Members** | Schlumberger to disclose the names, all known addresses, all phone numbers (home, mobile, etc.), all known email addresses (work and personal), social security numbers, dates of employment, and locations employed of those described in above-referenced group of |

| | Putative Class Members to be notified in a usable electronic format. |
|---|---|
| **20 Days from Order Approving Notice to Potential Class Members** | Plaintiffs' Counsel shall send by mail, e-mail, and text message a copy of the Court approved Notice and Consent Form to the Putative Class Members. Schlumberger is required to post the Notice and Consent forms at all of its restaurants for 90 days in an open and obvious location, such as an employee breakroom. |
| **90 Days from Date Notice is Mailed to Potential Class Members** | The Putative Class Members shall have 90 days to return their signed Consent forms for filing with the Court. Schlumberger may take down the posted Notice and Consent forms. |
| **45 Days from Date Notice is Mailed to Potential Class Members** | Plaintiffs' Counsel is authorized to send by mail, e-mail, and text message the Reminder Notice to the Putative Class Members reminding them of the deadline for the submission of the Consent forms. |

- Class members are allowed to execute their consent form electronically via DocuSign. Plaintiffs' counsel may use the contact information of the Putative Class Members to mail, email, or text notice and forms. Plaintiffs' counsel may hire, if necessary, a third-party class action administration company to conduct the actual mailing, emailing and text messaging of the notice and forms. Schlumberger is hereby prohibited from communicating, directly or indirectly, with any current or former DD employee about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period. Schlumberger shall so instruct all of its managers. This order shall not restrict Schlumberger from discussing with any current employee matters that arise in the normal course of business.

**IT IS FINALLY ORDERED** that Defendant's Opposed Motion to Defer Notice Pending Resolution of Threshold Issues [#74] is **DENIED**.

### V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

     **IT IS SO ORDERED.**

     SIGNED this 7th day of July, 2023.

                      ELIZABETH S. ("BETSY") CHESTNEY
                      UNITED STATES MAGISTRATE JUDGE