# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**TREVER GUILBEAU, individually**
**and on behalf of all others similarly situated,**

>       *Plaintiff*,

**v.**                                    **Case No. SA-21-CV-0142-JKP-ESC**

**SCHLUMBERGER TECHNOLOGY**
**CORPORATION,**

>       *Defendant.*

## MEMORANDUM OPINION AND ORDER
## ACCEPTING REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court is a *Report and Recommendation and Order of United States Magistrate Judge* (ECF No. 86) ("R&R" for the report and recommendation, but collectively, "R&R and Order"). Applying the well-established standards under Fed. R. Civ. P. 56, the Magistrate Judge recommended that the Court deny the motion for partial summary judgment (ECF No. 73) filed by Defendant Schlumberger Technology Corporation ("STC"). Within that same filing, the Magistrate Judge granted in part and denied in part a motion for notice/certification (ECF No. 62) filed by Plaintiffs and denied a motion to defer notice (ECF No. 74) filed by Defendant. She issued the order component pursuant to 28 U.S.C. § 636(b)(1)(A) and a Referral Order (ECF No. 4) for case management. She issued the recommendation under authority of 28 U.S.C. § 636(b)(1)(B), and a specific referral (ECF No. 75) for report and recommendation. Defendant timely filed objections to the R&R and Order, *see* ECF No. 88, with an appendix of specific objections by section and page, *see* ECF No. 88-1. Plaintiffs timely filed a limited objection (ECF No. 91), and Defendant filed a response (ECF No. 92) to that limited objection.

The parties have also made several other filings: notice of supplemental authority (ECF

No. 90); notice of supplemental authority (ECF No. 93); response to notice of supplemental authority (ECF No. 94); opposed motion to strike or alternative motion for leave to file reply (ECF No. 95); response to motion to strike (ECF No. 96); reply to motion to strike (ECF No. 97); notice of supplemental authority (ECF No. 98); and notice of supplemental authority (ECF No. 100). The Court will address these filings as needed. It will address the objections in accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72.

## I. AUTHORITY OF MAGISTRATE JUDGE AND STANDARD OF REVIEW

Through referral under 28 U.S.C. § 636(b)(1), magistrate judges have authority to consider and handle both non-dispositive and dispositive pretrial matters, subject to different standards of review by the presiding district court judge. Section 636(b)(1)(A) permits district judges to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for

> a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

Subparagraph (A) further provides that the district judge "may reconsider" any pretrial matter decided by a magistrate judge when "it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

"Section 636(b)(1)(B) permits district judges to refer dispositive matters to a magistrate judge for issuance of proposed findings of fact and recommendations for disposition." *Brown v. Bridges*, No. 12-CV-4947-P, 2015 WL 410062, at *1 (N.D. Tex. Jan. 30, 2015). Section 636(b)(1) further provides:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Asserted objections "serve[] to narrow the dispute" and "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 & n.6 (1985). Section 636(b)(1) "does not on its face require any review at all . . . of any issue that is not the subject of an objection." *Id*. at 149. Nevertheless, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." *Id*. at 154.

"Like § 636(b)(1), Fed. R. Civ. P. 72 recognizes that the authority of magistrate judges and the corresponding review by the district court ultimately depend on whether the referred matter is properly characterized as dispositive or non-dispositive." *Brown*, 2015 WL 410062, at *2; *accord Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at *3 (W.D. Tex. Nov. 8, 2018) (quoting *Brown* for same proposition). Rule 72 addresses review of both nondispositive matters (Rule 72(a)) and dispositive motions (Rule 72(b)) handled on referral to a magistrate judge.[1] Both provisions give parties fourteen days to object.

For nondispositive matters, district judges "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See* Fed. R. Civ. P. 72(a). On the other hand, for dispositive matters, Rule 72(b)(3) mandates that district judges "determine de novo any part of the magistrate judge's disposition that has been properly objected to." This rule, like the statute, provides the district court with discretionary authority to "receive further

---

[1] Rule 72 was amended effective December 1, 2023. Because the amendment modified only the last sentence of Rule 72(b)(1) regarding mailing (now serving) a copy of a recommendation to (now on) each party (now "as provided in Rule 5(b)"), the amendment has no effect on the matters currently before the Court.

evidence." On its face, Rule 72(b) does not mandate any review absent a specific objection. Nevertheless, following its 1983 adoption, the advisory committee notes state: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."

With respect to nondispositive matters, the statute (§ 636(b)(1)(A)) and Rule 72(a), set out a "highly deferential standard [that] requires the court to affirm the decision of the magistrate judge unless 'on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed.'" *Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*, 955 F. Supp. 2d 678, 689 (N.D. Tex. 2013) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)); *accord Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017) (same). With respect to reviewing a nondispositive order of a magistrate judge, the following principles apply:

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his or her] legal conclusions. [T]he abuse of discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.

*Baylor Health Care Sys.*, 955 F. Supp. 2d at 689 (citations and internal quotation marks omitted); *accord Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (recognizing that a review of a non-dispositive ruling of a magistrate judge entails reviewing "'factual findings under a clearly erroneous standard,' while 'legal conclusions are reviewed de novo'"); *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2016 WL 236266, at *2 (W.D. Tex. Jan. 20, 2016).

The clearly erroneous standard of review "does not entitle the court to reverse or reconsider

the order simply because it would or could decide the matter differently." *Gomez*, 2017 WL 5201797, at *2 (citing *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)). To the contrary, "the great deference owed to the [magistrate] judge's findings compels the conclusion that [w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Guzman*, 808 F.3d at 1036 (citations and internal quotation marks omitted).

In accordance with § 636(b)(1)(B), the Court referred the summary judgment motion for recommendation. *See* ECF No. 75. It had previously referred this case to the Magistrate Judge for disposition of all non-dispositive matters in accordance with § 636(b)(1)(A). *See* Referral Order (ECF No. 4). The Magistrate Judge's order disposes of non-dispositive matters filed by the parties. No party contends that it was improper for the Magistrate Judge to rule on the motions for notice/certification or to defer notice through an order. Because motions for notice and to defer notice "involve procedural, case-management rulings, a magistrate judge may hear and determine such motions" under 28 U.S.C. § 636(b)(1)(A).[2] *Repass v. TNT Crane & Rigging, Inc.*, No. MO:18-CV-00107-DC, 2022 WL 18356715, at *1 (W.D. Tex. Feb. 24, 2022) (addressing motion to decertify). These non-dispositive, pretrial matters are within "the trial court's discretion" and that "[t]he bottom line is that the district court has broad, litigation-management discretion here." *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 436, 443 (5th Cir. 2021).

Consistent with § 636(b)(1) and Rule 72, the Court reviews the R&R and Order entered by the Magistrate Judge and the objections thereto. But the Court recognizes that it has the discretion to accept or reject new evidence to the extent objections refer to new evidence and arguments not

---

[2] The § 636(b)(1) exception for motions "to dismiss or permit maintenance of a class action" does not apply because "collective actions under the FLSA are not Rule 23 class actions." *Repass v. TNT Crane & Rigging, Inc.*, No. MO:18-CV-00107-DC, 2022 WL 18356715, at *1 n.1 (W.D. Tex. Feb. 24, 2022).

presented to the Magistrate Judge. A party who objects to a recommendation of a magistrate judge "waives legal arguments not made in the first instance before the magistrate judge." *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994)). Nevertheless, district courts have "wide discretion to consider and reconsider the magistrate judge's recommendation." *Id*. at 852. While the district courts are obliged "to review *de novo* the actual evidence on objected-to findings," they "should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge." *Id*. Similarly, while "performing its open-ended review, the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge." *Id*. Its discretion both permits the district court to accept the new evidence through 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), or to reject it. *Id*. One reason to reject new evidence is to assure that litigants simply do not "use the magistrate judge as a mere sounding-board for the sufficiency of the evidence." *Id*.

## II. ANALYSIS AND CONCLUSIONS

Defendant asserts objections to the R&R, *see* ECF No. 88 at 1-3, 8-17; ECF No. 88-1 at 3-10, as well as to the Magistrate Judge's order regarding the motions for notice and to defer notice, *see* ECF No. 88 at 4-6, 17-21; ECF No. 88-1 at 10-11. It also asserts various objections to three other sections of the R&R and Order (titled "Introduction"; "Background"; and "Conclusion, Order, and Recommendation"). *See* ECF No. 88-1 at 1-2, 12. Plaintiffs have filed a limited objection to the Magistrate Judge's order. *See* ECF No. 91.

Defendant moved for partial summary judgment regarding claims asserted by Plaintiff Trever Guilbeau whether asserted individually or as a class. *See*, *generally*, ECF No. 73. The Magistrate Judge appropriately approached the motion as seeking "summary judgment on all claims asserted by Guilbeau on behalf of himself and all other DDs [(directional drilling employees)]."

R&R at 5. At times this Court may refer to the DDs plaintiffs, including Guilbeau, generically as Plaintiffs for ease of reference. Such references do not alter the scope of the summary judgment motion. As summarized by the Magistrate Judge:

> Plaintiffs Trever Guilbeau and Christopher O'Mara bring this action on behalf of themselves, and all others similarly situated against their former employer, Defendant Schlumberger Technology Corporation ("Schlumberger"), an oilfield services company, seeking unpaid overtime compensation. Guilbeau worked as a directional drilling employee ("DD") in connection with Schlumberger's oilfield drilling operations, meaning he provided oilfield drilling services to Schlumberger and was generally responsible for executing non-vertical well-drilling projects. O'Mara worked as a measuring while drilling employee ("MWD"), an engineering position involving collecting, monitoring, and reporting data collected from various tools and sensors on directional drilling rigs regarding drilling operations.

*Id*. at 2 (citations to the record omitted).

The dispute in this case is whether Defendant's pay structure includes a salary plus a bonus or a salary plus a day rate. And the label used by the employer is not determinative. *Cf. Taylor v. HD & Assocs., LLC*, 45 F.4th 833, 839 (5th Cir. 2022) (per curiam) (holding that the nature of a payment for purposes of FLSA exemptions "is a question of law that relies on how a payment works in practice, rather than what it is called"); *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. Unit A Apr. 1981) (recognizing that a label in the FLSA context "is dispositive only to the degree that it mirrors the economic reality of the relationship").

Upon reviewing the entire evidence; the briefing of the parties, including the objections asserted, and the R&R and Order of the Magistrate Judge, the Court is not left with any definite and firm conviction that any factual mistake has been committed. Indeed, the parties identify no material factual dispute. *Compare* Def.'s Partial Mot. Summ. J. (ECF No. 73) at 2 (asserting "no disputed issues of fact") *with* Pls.' Resp. Partial Mot. Summ. J. (ECF No. 78) at 5-6 (conceding that facts are "largely uncontested"). Nevertheless, as will be discussed in more detail, the parties' dispute essentially boils down to whether the day-rate component of the relevant pay structure

comprises part of Plaintiffs' base compensation for work during the normal workweek. If it does, then the compensation does not qualify as additional compensation in the form of a bonus.

In addition, upon a de novo review of the legal conclusions of the Magistrate Judge, the Court finds no legal error. And for that vast area of choice that remains to the Magistrate Judge who has properly applied the law to fact findings that are not clearly erroneous, the Court finds no abuse of discretion. The Court has considered all asserted objections and hereby overrules them all. Below, it will provide additional comments or discussion on objections that warrant it.

## A. Objections to R&R

Defendant objects that the R&R is directly contrary Fifth Circuit and Supreme Court precedent directly on point. ECF No. 88 at 3. It argues that the Magistrate Judge committed plain error in summarily disregarding relevant Fifth Circuit precedent (*Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023) (unpublished opinion), *cert. filed*, (U.S. Dec. 29, 2023)), while denying summary judgment. *Id.* at 8-9. It argues that the Magistrate Judge committed clear error by misconstruing *Helix Energy Solutions Group., Inc. v. Hewitt [hereinafter Helix]*, 598 U.S. 39 (2023). *Id.* at 9-12. It also argues that the Magistrate Judge committed clear error by relying on inapposite caselaw (*Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022) (recommendation of Mag. J.) *adopted by* 2022 WL 889276 (S.D. Tex. Mar. 25, 2022)) while ignoring on-point authority (numerous cited cases from other jurisdictions). *Id.* at 13-17.

Despite Defendant's certainty that the Magistrate Judge has erred, the Court's de novo review reveals a complex issue with no definitive answer based upon binding precedent alone. Defendant sees certainty through its interpretation of caselaw and regulatory text. "But, although such simplicity and clarity may be apparent to an advocate for a desired position, it is neither simple nor clear to a court tasked to consider whether it should dismiss" an action on an affirmative

defense "when no binding precedent exists to compel a particular ruling." *See Hurst v. Equifax Info. Servs., LLC*, No. SA-20-CV-1366-JKP-ESC, 2021 WL 5926125, at *3 (W.D. Tex. Dec. 15, 2021). Defendant appears to obtain its "clear vantage point by considering caselaw out of context and failing to recognize legal and factual nuances between their cited cases and the case now before the Court." *See id*. As this Court has noted before, "legal issues are more clear cut from the eyes of an advocate than they are from the view of a neutral arbiter who must consider the positions of all the various parties." *S.LV. v. Rosen*, No. SA-21-CV-0017-JKP, 2021 WL 243442, at *7 (W.D. Tex. Jan. 25, 2021).

This case requires interpretation of interrelated regulatory provisions. It is thus paramount to understand the regulations as interpreted through binding caselaw. The Magistrate Judge thoroughly addressed these matters and properly supported the R&R. The Court finds no error in her conclusions, findings, analysis, or interpretation. Still, given the importance of the R&R interpretation and the Court's duty to conduct a de novo review of these matters, the Court separately discusses and analyzes the caselaw and regulatory interpretation.

"The Fair Labor Standards Act of 1938 (FLSA) guarantees that covered employees receive overtime pay when they work more than 40 hours a week." *Helix*, 598 U.S. at 43. The FLSA is intended to address employers overworking covered employees without adequate compensation for their work. While numerous exemptions exist, "courts are to give FLSA exemptions 'a fair reading,' as opposed to the narrow interpretation previously espoused by [the Fifth Circuit] and other circuits." *Carley v. Crest Pumping Tech., LLC*, 890 F.3d 575, 579 (5th Cir. 2018) (quoting *Encino Motorcars, LLC v. Navarro*, 584 U.S. ___, ___, 138 S. Ct. 1134, 1142 (2018)). As recognized by the Supreme Court, "an employee is not covered, and so is not entitled to overtime compensation, if he works 'in a bona fide executive, administrative, or professional capacity,' as those 'terms are defined' by agency regulations." *Helix*, 598 U.S. at 43 (quoting 29 U.S.C. § 213(a)(1)).

9

Resolution of the summary judgment motion requires the Court to consider whether Plaintiffs are exempt from the overtime provisions as highly compensated employees ("HCE") under 29 C.F.R. § 541.601, which requires (1) a minimum total annual compensation (2) for specific duties (3) that includes a minimum weekly payment on a "salary or fee basis." *See* 29 C.F.R. § 541.601(a) and (b). The only element at issue here is whether Defendant paid Guilbeau and other DDs on a salary basis.

The "basic idea" for the salary basis test "is that an employee can be [exempt] only if he receives a 'predetermined and fixed salary'—one that does not vary with the precise amount of time he works." *Helix*, 598 U.S. at 45 (addressing exemption as a bona fide executive). An added "layer of complexity" attaches to that description, however, because the Secretary of Labor has implemented the exemption "through separate and slightly different rules, one applying to lower-income employees [(29 C.F.R. § 541.100)] and the other to higher-income ones [(29 C.F.R. § 541.601(a), (b)(1))]." *Id*. Both rules have three requirements—compensation on a salary-basis, at a minimum rate per week, for specified duties—each with their own respective test. *Id*. The tests for both rules only differ with respect to the duties test. *Id*. The other two tests are identical in form for both rules. *Id*. at 46. This is important because an interpretation of the salary-basis test applies to both rules equally. *Id*. at 57.

Two other regulations, 29 C.F.R. §§ 541.602(a) and 541.604(b) [often referred to as § 602(a) and § 604(b)] "give context to the salary-basis test." *Id*. at 46. Section 602(a) sets out what it takes to "be considered to be paid on a 'salary basis'" and "ensures that the employee will get at least part of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked." *Id*. (quoting regulation for first part).[3]

---

[3] In full, the general rule of § 602(a) states:

Section 604(b), on the other hand, "focuses on workers whose compensation is 'computed on an hourly, a daily or a shift basis,' rather than a weekly or less frequent one." *Id*. (quoting regulation). This regulation permits employers to "base an employee's pay on an hourly, daily, or shift rate without 'violating the salary basis requirement' or 'losing the . . . exemption' so long as two conditions are met." *Id*. at 46-47 (quoting regulation). Not only must the employer guarantee the minimum weekly salary level "regardless of the number of hours, days or shifts worked," but "that promised amount must bear a 'reasonable relationship' to the 'amount actually earned' in a typical week—more specifically, must be 'roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek.'" *Id*. at 47 (same). These conditions ensure consistency between the salary basis concept and hourly or daily pay. *Id*. (relying on 69 Fed. Reg. 22184).

The Supreme Court further elaborated on how the structure as well as the text of the regulations support the decision. *See id*. at 54-58 & n.5. It found that "§ 604(b) lays out a second path— apart from § 602(a)—enabling a compensation scheme to meet the salary-basis requirement." *Id*. at 55. It recognizes that this "second route is all about daily, hourly, or shift rates" versus § 602(a), which "addresses payments on 'a weekly[ ] or less frequent basis." *Id*. These two regulations "offer non-overlapping paths to satisfy the salary-basis requirement, with § 604(b) taking over where § 602(a) leaves off." *Id*. at 56. It found that § 604(b) "confirms the plain-text, weekly-rate-only reading of § 602(a)." *Id*. at 57.

---

An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

While this general rule is subject to numerous exceptions to the prohibition against deductions from pay, *see* 29 C.F.R. § 541.602(b), no such exceptions are at issue in this case.

The pay structure in this case is a combination of a weekly salary that appears to satisfy the salary basis requirement as set out in § 602(a), in addition to pay calculated on a day rate. Because there is no overlap between § 602(a) and § 604(b), the latter provision provides the path when a hybrid pay structure combines a weekly salary with pay calculated on a day rate for work within the normal workweek. As discussed more later, if an employer pays an employee a day rate for work beyond the normal workweek, either temporally in the sense that the work exceeds the normal forty-hour workweek, or because the work exceeds the typical scope of work contemplated by the employee's regular schedule, the additional compensation may be properly disregarded for purposes of § 602(a) as it invokes § 604(a) rather than § 604(b).

Defendant interprets the dual paths just the opposite—arguing that § 604(b) is only applicable to employees "paid solely on an hourly, daily, or shift basis." *See* ECF No. 88 at 9. This interpretation, however, appears contrary to the "weekly-rate-only reading of § 602(a)" espoused in *Helix*. To be sure, *Helix* defines a daily-rate worker as one who "is paid for each day he works and no others," *see* 598 U.S. at 51, but that does not exclude other workers from receiving earnings computed on a daily basis. *Helix* did not consider a worker paid on a hybrid pay structure like the Plaintiffs in this case. While such a hybrid worker may not be a daily-rate worker as defined by the Supreme Court as it discussed a straight-day-rate pay structure, workers subject to such a hybrid pay structure nevertheless receive earning computed on a daily basis. Perhaps they could be called hybrid-daily-rate workers, hybrid-day-rate workers, or simply day-rate workers, but regardless, the label does not control applicability of the pertinent regulations. Instead, the pay structure and how payments actually work in practice affect the applicability of certain regulations. Courts may pierce the label to ascertain exactly what is happening in practice.

The *Helix* definition does not mean that a day rate worker receives only a day rate and no other compensation as argued by Defendant, *see* ECF No. 88 at 9. Nor does it exclude § 604(b)

from applying in other situations when pay is computed on a daily basis. Absent binding precedent directly on point, the Court flatly rejects Defendant's position that § 604(b) applies only when an employee's compensation consists of a day rate and a day rate only. Similarly, it rejects the notion that § 602(a) alone controls the salary basis issue of this case. This case does not involve a salary-only pay structure that necessarily invokes § 602(a). Nor does it involve a day-rate pay structure that necessarily invokes § 604(b). This case involves a hybrid pay structure that has an undisputed salary component along with a second component that may or may not relate to the Plaintiffs' base compensation—the parties simply disagree whether the second component is payment as part of the employees' base compensation or whether it is for duties outside the normal workweek. And viewing the facts in the light most favorable to Plaintiffs, § 604(b) applies.

The Supreme Court made clear that these provisions—§ 602(a) and § 604(b)—provide content to the salary basis requirement in that they both "serve to define" what the HCE requires. 598 U.S. at 57. "And § 604(b)'s focus on daily and hourly workers confirms that § 602(a)—as its own text shows—pertains only to employees paid by the week (or longer)." *Id*. at 58. It does not identify any other provision that would provide content to the salary basis requirement.

Furthermore, while rejecting asserted policy consequences, including the employer's "operational and cost-based objections," the Supreme Court recognized that the employer "could come into compliance with the salary-basis requirement . . . in either of two ways": (1) adding to the employee's per-day rate a weekly guarantee that satisfies § 604(b)'s conditions" or (2) converting the employee's "compensation to a straight weekly salary for time he spends on the rig." *Id*. at 60. As the Supreme Court stated, "the whole point of the salary-basis requirement is to" eliminate the option for employers to both avoid paying "employees a true salary" and to avoid paying them overtime. *Id*. The Supreme Court does not identify other ways for the employer to comply with the salary-basis requirement.

Framing the question as "whether a high-earning employee is compensated on a 'salary basis' when his paycheck is based solely on a daily rate," the Supreme Court held "that such an employee is not paid on a salary basis, and thus is entitled to overtime pay." *Id*. at 43. In making that holding, it made two important conclusions: (1) § 602(a) "applies solely to employees paid by the week (or longer); it is not met when an employer pays an employee by the day" and (2) "Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)." *Id*. at 50. The Supreme Court further noted that, not only do these "conclusions follow from both the text and the structure of the regulations," but the various asserted "policy claims cannot justify departing from what the rules say." *Id*. In a footnote, the Supreme Court emphasized that "[i]n setting out the pertinent regulatory structure, [it shows] that § 602(a) and § 604(b) are independent routes for satisfying the HCE rule's salary-basis component." *Id*. at 50 n.3. Thus, "a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt." *Id*.

The Magistrate Judge interpreted footnote 3 as "establish[ing] that where a worker is paid on a purely salary basis (on a weekly or less frequent basis), Section 604(b) is not triggered." R&R at 17. That is a reasonable and fair interpretation supported by various pertinent caselaw. The Magistrate Judge also found such scenario was not present in this case because "Guilbeau's base compensation for his work as a DD at oilrig sites is comprised not just of a weekly salary but also a day rate." *Id*. Viewing the summary judgment evidence in the light most favorable to Plaintiffs, the Court agrees with that finding. Furthermore, nothing in *Helix*, including footnote 3, directly addresses the type of hybrid compensation structure at issue in this case. *See* 598 U.S. at 45-57. Obviously, Defendant neither paid Plaintiffs solely on a daily rate nor solely with a salary. But that does not make *Helix* distinguishable in all respects. That factual distinction does not eliminate the reasoning of the Supreme Court, especially given the en banc statements of the Fifth Circuit that

were under review.

The *Helix* decision arose from an en banc Fifth Circuit decision that remains binding to the extent not inconsistent with *Helix. See Hewitt v. Helix Energy Sols. Grp., Inc. [hereinafter Hewitt]*, 15 F.4th 289 (5th Cir. 2021), *aff'd*, 598 U.S. 39 (2023). In *Hewitt*, the Fifth Circuit held "that, when it comes to daily-rate employees" the employer "must comply with § 541.604(b)." 15 F.4th at 292. Because Plaintiffs here have a hybrid payment structure, one might distinguish *Hewitt* on grounds that they are not daily rate employees subject to that provision. But the hybrid pay structure certainly does not render the en banc decision irrelevant to this case. Its reasoning transcends the particular factual differences. Importantly, *Hewitt* recognized that "respect for text forbids [courts] from ignoring text." *Id.*

*Hewitt* also recognized persuasive authority from the Sixth and Eighth Circuits, as well as the Secretary of Labor. *Id.* at 294 (finding persuasive *Hughes v. Gulf Interstate Field Servs. Inc.*, 878 F.3d 183 (6th Cir. 2017); *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1042 (8th Cir. 2020); and *U.S. Dep't of Labor, Wage & Hour Div., Op. Letter* FLSA2020-13, 2020 WL 5367070, *1 (Aug. 31, 2020)). It found *Hughes* notable in recognizing that "[t]he text of § 541.602(a) does not tell us what to do when an employee's salary is *not* clearly calculated 'on a weekly, or less frequent basis.'" *Id.* at 295 (quoting 878 F.3d at 189). It found *Coates* notable in its conclusion "that the 'general definition' of salary basis as set forth in § 541.0602(a) is 'subject to numerous interpretative rules,' including § 541.604(b)." *Id.* (quoting *Coates*, 961 F.3d at 1042). Consistent with *Coates* and *Hewitt*, one could read § 602(a) as effectively subject to an "exception" when an exempt employee's earnings are computed on an hourly, daily, or shift basis through 29 C.F.R. § 541.604(b). *See Helix* 598 U.S. at 46-47, 55-57.

*Hewitt* also analyzed § 604(b) in depth. It recognized that to avoid losing the exemption or violating the salary basis requirement, two conditions must be satisfied when an employer

computes an employee's earnings on a daily basis—a minimum weekly guarantee and a reasonable relationship between that guaranteed amount and the amount earned. 15 F.4th at 293-94. These conditions serve to protect employees. *Id*. at 294. "First, the 'minimum weekly' guarantee ensures that a daily-rate employee still receives a guaranteed amount each week 'regardless of the number of hours, days or shifts worked.'" *Id*. (quoting regulation). This "sets a floor for how much the employee can expect to earn, 'regardless' of how many hours, days, or shifts the employee works." *Id*. (same).

> Second, the reasonable-relationship test ensures that the minimum weekly guarantee is not a charade—it sets a ceiling on how much the employee can expect to work in exchange for his normal paycheck, by preventing the employer from purporting to pay a stable weekly amount without regard to hours worked, while in reality routinely overworking the employee far in excess of the time the weekly guarantee contemplates.

*Id*. In a nutshell, the en banc Fifth Circuit held that it is explicit from § 541.604(b) "that an otherwise 'exempt' employee who is paid a daily rate 'los[es] the exemption' and 'violat[es] the salary basis requirement' unless the employer complies with § 541.604(b)." *Id*. at 297.

*Hewitt* also addressed an argument that the Fifth Circuit's "understanding of the salary-basis test conflicts with *Litz v. Saint Consulting Group, Inc.*, 772 F.3d 1 (1st Cir. 2014), and *Anani v. CVS RX Services, Inc.*, 730 F.3d 146 (2nd Cir. 2013)." *See* 15 F.4th at 297. The Fifth Circuit began by recognizing "stray language in *Anani* that appears to be in tension with" its opinion. *Id*. (parenthetically noting *Anani*, 730 F.3d at 149 ("We perceive no cogent reason why the requirements of C.F.R. § 541.604 must be met by an employee meeting the requirements of C.F.R. § 541.601."); *see also Litz*, 772 F.3d at 5 (quoting *Anani* but noting that "[p]laintiffs 'do not take a position on this issue'")). But despite that stray language, it found "no actual conflict" for the "simple reason" that those cases both involved pay structures not invoking § 604(b). *Id*. In doing so, it expressly agreed with *Hughes* distinguishing those cases "precisely on this textual ground."

16

*Id.* Consequently, the Fifth Circuit expressly stated that "[t]here are both textual and precedent-based grounds for distinguishing [its] case from *Litz* and *Anani*." *Id.*

Neither *Helix* nor *Hewitt* discuss § 541.604(a) and provide no basis to consider it as another exception to the salary basis dichotomy. Rather, by its terms, it applies when an employer provides an exempt employee with additional compensation, such as a commission, a percentage of sales or profits, or for "hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a). The latter type of "additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off." *Id.*

As found by the Magistrate Judge, § 604(a) applies to bonus payments for being on standby, working with a reduced crew, working as the lead for a crew, or using certain required technologies or tools in performing work duties. *See* R&R at 14. No one objects to this finding. Indeed, Defendant specifically agrees with this finding. *See* ECF No. 88 at 12. And the Court accepts such finding. These bonuses are for circumstances beyond the base work duties.

The Magistrate Judge further found that Defendant has not advanced a persuasive argument for similarly categorizing Plaintiffs' day rate. *See* R&R at 14. In doing so, the Magistrate Judge expressly distinguished cases from the Western District of Louisiana that did not have the benefit of the *Helix* decision and relied on circuit cases (*Litz* and *Anani*) that have been rejected at least in part by *Helix*. *See id.* at 14-15 n.2 (disagreeing and distinguishing *Venable v. Schlumberger Ltd.*, No. 6:16-CV-00241 LEAD, 2022 WL 895447 (W.D. La. Mar. 25, 2022) and *Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-02267, 2022 WL 992670 (W.D. La. Mar. 30, 2022)). While Defendant asserts objections to distinguishing these cases, the Court's de novo review supports an analytical framework that does not follow the results in the non-binding decisions of the Western District of Louisiana in *Venable* and *Boudreaux*.

The Magistrate Judge ultimately concluded that, for Plaintiffs' day rate payments to fall within § 604(a), the extra compensation must be for work beyond the normal workweek. *Id*. at 13. The Magistrate Judge aptly defined, "beyond the normal workweek," as "additional work not typically contemplated by the employee's regular schedule or hours worked in excess of 40 hours per week." *Id*. at 12. The Court agrees that § 604(a) excludes compensation received for the normal workweek as "additional compensation." This is so for at least two reasons.

First, if the provision was intended to apply to additional compensation provided for work performed during the normal workweek, the example's language regarding "beyond the normal workweek" would be superfluous and unnecessary. As recognized by the Supreme Court, "one of the most basic interpretive canons" directs courts to construe a statute, or in this instance a regulation, "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation and internal quotation marks omitted). Second, if the compensation is part of the employee's base compensation for work done during the normal workweek, then it does not seem to be additional compensation at all—it is just base compensation, perhaps calculated differently from other base compensation. And when the base compensation is computed on an hourly, daily, or shift basis, then § 541.604(b) applies.

Last year, the Fifth Circuit decided another case that deserves discussion. *See Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427, at *1 (5th Cir. June 21, 2023) (unpublished opinion), *cert. filed*, (U.S. Dec. 29, 2023). (affirmed lower court grant of summary judgment). In *Hebert*, it was "undisputed that [the employer] paid [the employee] a salary and that [the employee] received a field service premium for days he spent working at offshore sites." *Id*. at *1. The plaintiff there "admit[ted] that he received a bi-weekly salary without regard to the number of hours or days he worked" and in an unpublished opinion, the Fifth Circuit bluntly stated that such "salary

plainly satisfies the definition of 'salary basis' in § 541.602(a)." *Id*. at *2. Relying on 29 C.F.R. § 541.604(a), the Fifth Circuit stated that an employee "does not lose his status as an employee paid on a salary basis just because he is also paid a bonus on top of the salary that the record has established was guaranteed to him." *Id*.

The Magistrate Judge distinguished *Hebert* on grounds that the case did not consider the argument at issue here that the asserted bonus payment was not a bonus or premium payment at all, but rather a day rate for base compensation for a normal workweek. R&R at 15 n.3. While not specifically noted by the Magistrate Judge, the field service premium appears more akin to the bonuses recognized by the Magistrate Judge to be additional compensation under § 604(a). As a premium, the bonus is not for an employee performing base duties under typical circumstances. But rather, such premium appears to be a bonus for performing duties outside the ordinary circumstances of the position, like the tech, reduced crew, and lead bonuses at issue in this case. The facts set out in *Hebert* support this conclusion.

The plaintiffs in *Hebert* were installation engineers who would "work in office environments and occasionally visit offshore sites." *Hebert*, 2023 WL 4105427, at *1. While providing on-site technical support was one of their main tasks, they only engaged in such fieldwork occasionally, and when they did, they received a premium for days working at the offshore site. *Id*. Stated more specifically,

> While at FMC, Hebert spent over half of his time in the office planning and reviewing installation projects. He also provided on-site technical support for issues and troubleshooting during the installation process for FMC's equipment. If any issues were discovered during installation, Hebert assisted with analyzing those issues and designing solutions to them. Occasionally, Hebert's on-site work required manual labor. Once a project was complete, Hebert and his team then conducted in-office reviews of that project.

*Id*.

The above facts are distinct from the facts in this case, which consistent with the summary

judgment standard, the Court construes in the light most favorable to the Plaintiffs as the parties

opposing summary judgment. As recognized by the Magistrate Judge, the hybrid pay structure in

*Hebert* (salary plus a service premium/bonus) provides little guidance "as to how to evaluate the

hybrid pay structure at issue" here. R&R at 15 n.3. Although Defendant maintains that the R&R

is "directly contrary to" *Hebert*, *see* ECF No. 88 at 3, this Court disagrees. The Magistrate Judge

properly distinguished *Hebert*.

Contrary to Defendant's objection, *see* ECF No. 88 at 8, the Magistrate Judge did not err

in her consideration of *Hebert*. Relying on Hebert's appellate brief, Defendant argues that "the

R&R draws distinctions without differences." *Id*. at 8 & n.11. In full, footnote 11 states:

> Hebert's brief to the Fifth Circuit reveals that he made the exact same arguments as
> are present in this case. "We go offshore, we work a ton of hours, we are hands-on,
> we do it for a hundred days a year." "FMC pays installation engineers, including
> Hebert, a salary plus a daily bonus (called a "field service premium," when they
> work in the field.) "Field service premium "is a "daily bonus." "The field service
> premium [. . .] is a daily bonus that is purely based off the time that is spent working
> in the field [.]). *Hebert*, No. 22-20562, Doc. No. 26 at pp. 15–17. There is no dif-
> ference between the (field premium) that the FMC engineers received for their hun-
> dreds of days worked offshore versus the day bonus STC directional drillers re-
> ceived for their work on days billable to a customer.

*Id*. at 8 n.11. In contrast to the facts of this case, Hebert's appellate brief seems to concede the

issue that the field premium is a bonus for offshore worktime. In conjunction with the facts set out

in the *Hebert* decision, it is clear that the offshore worktime is not an everyday occurrence or even

something that occurs half the time. A bonus for occasional work activities like working offshore

may fall within § 604(a) rather than invoking § 604(b). But viewing the facts in the light most

favorable to Plaintiffs in this case, this case differs materially from *Hebert*.

The Magistrate Judge also relied on a district court decision from the Southern District of

Texas. *See* R&R at 15-16 & n.3 (relying on *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-

CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022) (recommendation of Mag. J.) *adopted by*

2022 WL 889276 (S.D. Tex. Mar. 25, 2022)). *Gentry* reasoned that § 604(b) is invoked by a hybrid

pay structure that guarantees a weekly salary based on less than a normal workweek plus an additional hourly rate for all additional hours worked. *See* 2022 WL 658768, at *5-6. And it provides persuasive analysis and consideration. Importantly, as recognized by the Magistrate Judge, *Helix* supports the conclusions reached in *Gentry*. *See* R&R at 16.

As recognized by the Magistrate Judge, the employer had appealed *Gentry* to the Fifth Circuit and a circuit ruling "could be potentially dispositive of the HCE exemption issue before the Court." *Id*. at 15 n.3. And shortly after the R&R, the Fifth Circuit affirmed the judgment of the district court "essentially for the reasons stated in the magistrate judge's thorough and exhaustive report, adopted by the district court as its opinion." *See Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 22-40219, 2023 WL 4704115, at *1 (5th Cir. July 24, 2023) (per curiam). As foreshadowed by the Magistrate Judge here, such affirmance does provide a potentially dispositive basis to follow *Gentry* and its interpretation of the relevant regulations. But the Fifth Circuit recently treated a petition for rehearing en banc as a petition for panel rehearing, granted the petition, and withdrew the per curiam opinion. *See Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 22-40219, unpub. order (5th Cir. Jan. 26, 2024) (attached as Ex. A to ECF No. 100). This Court thus remains without a final ruling on the *Gentry* appeal. But beyond speculation, there is no basis to ascertain that a future ruling might hold. Courts do not engage in speculation as to future rulings. They instead proceed with the issues before them based on the existing state of the law. For all the reasons stated, the Court finds *Gentry* persuasive and supported by this Court's own interpretation of both *Helix* and *Hewitt*. If the Fifth Circuit issues a binding decision to the contrary, the Court may of course revisit this matter upon proper motion raising the new opinion.

Defendant objects that the Magistrate Judge plainly erred because the R&R is directly contrary to (1) *Hebert*, (2) the *Helix* pronouncement in footnote three that § 602(a) and § 604(b) constitute separate and distinct paths for satisfying the salary basis requirement, (3) statements in

*Hewitt* that it does not conflict with *Anani* or *Litz*, and (4) various cited caselaw finding that the reasonable relationship test does not apply when an exempt employee receives a salary that complies with § 602(a). ECF No. 88 at 3. As clearly conveyed by the above de novo analysis, the Court disagrees and thus overrules these objections. And to be clear, the Court disagrees that the Magistrate Judge erred in her consideration of *Hebert*, *Helix*, *Hewitt*, or other caselaw.

With respect to the various cited authorities not expressly considered by the Magistrate Judge, Defendant questions the decision not to specifically address each cited case. *See* ECF No. 88 at 13-17. Suffice to say, courts do not err simply by failing to address cited authorities on a case-by-case basis. This is particularly true when cited authority is from outside sources that are not binding on the court. The Magistrate Judge properly considered the binding sources, interpreted such sources, and made findings and conclusions therefrom. To the extent other cited authorities support a different interpretation, a reviewing court may safely view those other cited authorities as unpersuasive to the original analysis and interpretation. Of course, an objecting party may specifically show how an undiscussed authority establishes error. Further, a de novo review negates any perceived error in consideration of cited authorities. To avoid any complaint by Defendant, the Court expressly states that it finds no cited authority persuasive enough to alter its interpretation of the regulations at issue in this case.

The Court, furthermore, rejects Defendant's argument, *see* ECF No. 88 at 13, that the Magistrate Judge committed clear error in relying on *Gentry*. As already discussed, the Court has accepted the Magistrate Judge's interpretation of relevant caselaw and regulatory text through its de novo review and views *Gentry* persuasive and supported by this Court's own interpretation of both *Helix* and *Hewitt*. Following *Gentry* is consistent with such interpretation. At one point, the Fifth Circuit affirmed *Gentry*, "found no reversible error of law or fact," and expressly recognized the lower court's ruling as "thorough and exhaustive." *See Gentry v. Hamilton-Ryker IT Sols., LLC*,

No. 22-40219, 2023 WL 4704115, at *1 (5th Cir. July 24, 2023) (per curiam). This affirmance provides some support for the Magistrate Judge finding the lower court decision persuasive and is a strong indicator that the Magistrate Judge committed no clear error in choosing to find *Gentry* persuasive to the issues before the Court. That the Fifth Circuit has recently withdrawn the initial affirmance provides no basis to find clear error, or error at all. When courts address a legal issue without the benefit of directly controlling binding precedent, they properly utilize non-binding precedent that they find persuasive. The Magistrate Judge did just that. And this Court agrees that *Gentry* is persuasive on the facts before this Court. Notably, had the Fifth Circuit not withdrawn that affirmance, the review of the R&R may have been much simpler. Without a final ruling on the *Gentry* appeal, this Court remains in essentially the same circumstances that existed before the Magistrate Judge.

Defendant provided supplemental authority that the Court will address. *See* ECF No. 93 (providing *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170, 1176 (10th Cir. 2023)). It submits that "[t]he compensation plan at issue in *Wilson* is the same compensation plan that Plaintiffs assert here as being contrary to the FLSA." *Id.* at 2. Notably, *Wilson* vacated a jury verdict upon all evidence presented and remanded for a new trial. *See* 80 F.4th at 1172. Although the Tenth Circuit found that Schlumberger compensated the plaintiffs on a salary basis, it remanded the case because it found other issues that "may be subject to factual dispute." *Id.* at 1180.

*Wilson* appears to be a particularly apt comparison because it involved the same defendant as this case and the employee was an MWD, like O'Mara. *See id.* at 1173. In *Wilson*, the Tenth Circuit held that § 604(b) "applies only to employees whose base compensation is computed on an hourly, daily, or shift basis." *Id.* at 1176. But here, as recognized by the Magistrate Judge, there is evidence that Defendant paid Plaintiffs a day rate as part of their base compensation. *See* R&R at 13-14. Guilbeau also testified that he received his salary portion from Defendant because the

employees "were on-call 24/7." ECF No. 73-1 at 37:25–38:1. He testified that employees did not receive the day rate "other than being on a customer's well site." *See id.* 36:18–37:5. The only "work" identified other than being on a customer's well site consisted of attending training classes, which was not compensated by a day rate. *See id.*

As the Magistrate Judge found in this case, Defendant has not carried its burden to support its claimed exemption because it has not shown as a matter of law that it paid Plaintiffs on a salary basis. There remains a dispute as to whether the day-rate portion of Plaintiffs' compensation was part of the base compensation or constituted additional compensation within the scope of § 604(a) and thus outside the purview of § 604(b). *See* R&R at 12-19. Accepting the findings of the Magistrate Judge, the Court finds that Defendant has failed to carry its burden to establish its affirmative defense by failing to establish as a matter of law that § 604(b)'s reasonable relationship requirement does not apply under the facts construed in the light most favorable to Plaintiffs.

This finding alone makes *Wilson* not dispositive of any issue in this case. Defendant simply wants to disregard the dispute as to whether the daily rate it paid to Plaintiffs was part of the employees' base compensation and thus calculated under § 604(b) or whether it was instead additional compensation falling under § 604(a). This Court's summary judgment ruling is not based on evidence presented in *Wilson*. Nor is it based on the Tenth Circuit's review of the evidence.

Limited to that holding, this Court finds *Wilson* distinguishable from this case. This case appears more similar to *Gentry* than to *Hebert*, and as *Wilson* noted: "Given the stark contrast in fact patterns our respective courts are concerned with, we are hard-pressed to say that the logic of *Gentry* bears on this case." 80 F.4th at 1179 n.4. Turning the tables, this Court is hard pressed to say that the logic of *Wilson* or *Hebert* bears on this case. While Defendant may ultimately provide evidence to carry its burden on its affirmative defense, it has not done so yet—particularly when the Court must view the evidence in the light most favorable to Plaintiffs.

*Wilson*, furthermore, did not recognize the superfluous nature of ignoring the § 604(a) "beyond the normal workweek" example when finding *Gentry* unpersuasive. *See id.* This Court, however, specifically recognizes a valid interpretive basis for limiting "additional compensation" under § 604(a) to circumstances where the compensation is actually additional to payment required for the normal workweek. In any event, the Tenth Circuit's holding underscores the differences between this case and others relied upon by Defendant.

Given this discussion of *Wilson*, the Court finds no need to consider Plaintiffs' Response to Defendant's Notice of Supplemental Authority (ECF No. 94). Having no need to consider such response the Court deems moot the Motion to Strike, or in the Alternative, Motion for Leave to file Reply (ECF No. 95), filed by Defendant. It thus has no need to consider Defendant's proposed reply (ECF No. 95-2); Plaintiffs' response to Defendant's motion (ECF No. 96); or Defendant's reply (ECF No. 97).

Defendant seems to miss or ignore nuances in the R&R that are based upon the burden that Defendant must shoulder as the summary judgment movant and proponent of its affirmative defense that Plaintiffs are exempt employees. It also views the facts as clearly supporting its position. While viewed from its perspective the facts may be clear to Defendant, the summary judgment process requires courts to view the facts in the light most favorable to the non-movant. As identified in the R&R, there is evidence to support the view that Plaintiffs are not exempt employees because Defendant did not pay them on a salary basis. *See* R&R at 13-14 (identifying (1) deposition testimony that Guilbeau "would get a base payment that was . . . calculated by the day" every day that he worked on a rig; (2) remuneration statements that refer to this portion of his compensation as a "RigDay Rate"; and (3) deposition testimony that "it was Guilbeau's understanding that his day rate was part of his base remuneration for his normal duties as a DD working in the field at a rig site," while noting that the provided remuneration statements support that understanding).

As noted earlier, this Court, moreover, views other deposition testimony from Guilbeau as also relevant to that matter.

Defendant takes issue with the Magistrate Judge stating: "There is no evidence before the Court that establishes this 'day rate' was extra compensation of the kind that would fall under Section 541.604(a)." *See* ECF No. 88 at 10 n.13 (citing R&R at 13). Defendant views this as inaccurate because it "submitted testimony, pay statements and the bonus plan that established that Guilbeau's bonuses were conditional upon the type and amount of work he performed" and the bonuses were "not part of his base guaranteed compensation—which was his salary." *Id*. Defendant misses the point. Because Defendant has the burden on its affirmative defense, it must present evidence that establishes that the day-rate compensation was governed by § 604(a) instead of § 604(b) when application of the latter would eliminate the exemption. Defendant's identified evidence does not establish applicability of § 604(a) in light of the identified evidence of Plaintiffs.

The R&R merely recommends that the Court deny summary judgment because Defendant "has not proven as a matter of law that Guilbeau was paid on a 'salary basis,' as required to be exempt under the HCE exemption or any other white-collar exemption." R&R at 5. In making such recommendation, the Magistrate Judge fairly interpreted relevant regulations consistent with relevant precedent of the United States Supreme Court and the Fifth Circuit Court of Appeals. Based on the facts viewed in the light most favorable to the Plaintiffs, the Court agrees that Defendant has not carried its burden to establish its affirmative defense as a matter of law. A dispute remains as to whether Defendant's relevant pay structure is a hybrid salary plus bonus, which would not invoke § 604(b), or a hybrid salary plus a daily rate used to calculate the combined base compensation for a normal workweek for Plaintiffs. Under the interpretation of relevant caselaw and regulations, to which this Court agrees and accepts, the latter hybrid pay structure would invoke § 604(b), and thus deny exemption status to Plaintiffs. Accordingly, summary judgment is

denied.

In summary, for the reasons stated by the Magistrate Judge and as supplemented herein, the Court finds that an employer does not pay an employee on a salary basis when it uses a hybrid pay structure that pays employees a salary plus a day rate as a base compensation for work within the normal workweek. To the extent that there is a salary component that appears to satisfy § 602(a), the appearance is a ruse—an illusion to cover up the computation of the employee's earnings computed on a daily basis—a computation that directly invokes § 604(b) and its reasonable relationship component. Viewing the summary judgment evidence in the light most favorable to Plaintiffs, this is the hybrid pay structure utilized by Defendant in this case.

On the other hand, if the employer uses a hybrid pay structure that pays employees a guaranteed salary plus a day-rate bonus for work beyond the normal workweek, i.e., work beyond forty hours or beyond the scope of the employees' base duties typically performed in a normal workweek, then such pay structure does not invoke § 604(b) or its reasonable relationship component. While this case certainly does not require the Court to elaborate on the precise parameters of the meaning of "beyond the normal workweek," certain things could clearly qualify without much analysis. Even viewing the evidence in the light most favorable to Plaintiffs, the Court reasonably concludes that lesser payments received by Plaintiffs, i.e., for being on standby; carrying out duties with a reduced crew; working with specific tools or technologies; and for working as a lead, would fall under § 604(a). As previously discussed, these fall beyond the normal workweek. Depending on the normal workweek for a particular employee, other payments can readily be viewed as beyond the normal workweek—working night shifts, weekends, or at a different location, etc. But when an employer purports to pay an employee "additional compensation" for the employee simply doing his or her normal work, such compensation is not truly additional—it is simply compensation for the employee's base duties. And if it is "computed on an hourly, daily, or shift basis,

then it activates § 541.604(b).

**B. Objections to Magistrate Judge Order**

   In addition to issuing the R&R on the summary judgment motion, the Magistrate Judge issued orders addressing two motions referred for determination. *See* R&R and Order at 19-29. She outright denied Defendant's motion to defer notice pending resolution of threshold issues. *See id*. at 19, 30. And she granted in part and denied in part Plaintiff's motion for notice. *See id*. at 19, 30. Granting it as to a putative collective action for DD employees and denying it as to a MWD collective action. *Id*. at 19.

   The Magistrate Judge recognized that *Swales v. KLLM Transportation Services, LLC*, 985 F.3d 430 (5th Cir. 2021) provides the standard for determining whether to certify a collective action and issue notice to putative members. *See id*. at 20. The Magistrate Judge found that "Plaintiffs have satisfied their burden to demonstrate that the identified class of potential DD Plaintiffs are similarly situated and entitled to notice of this lawsuit." *Id*. at 19. The Magistrate Judge further found that "Plaintiffs have satisfied their burden to demonstrate that all DDs and MWDs were subject to the same pay practice, regardless of specific job duties or variations in the title of the position as listed above or variations in the specific rates of their pay." *Id*. at 23. But, as noted by the Magistrate Judge, "the similarities among the members of the MWD class is not as straightfor-ward." *Id*. at 24. For the putative MWD collective action, "the duties component of the HCE ex-emption remains in dispute." *Id*. Ultimately, the Magistrate Judge concluded:

   Although Plaintiffs have presented the Court with some evidence that these distinc-tions may not ultimately be dispositive of the duties aspect of the HCE exemption, the undersigned is not convinced that the MWD class is similarly situated under the more searching *Swales* standard. Additionally, the undersigned notes that the MWD class is small—only consisting of 12 to 24 remote employees (and an unknown number of field employees). Combining this subclass with the much larger DD class is likely to complicate the resolution of this action and does not advance the case management and efficiency concerns underlying the collective action frame-work.

*Id.* at 28. Both sides assert objections to the Magistrate Judge orders. *See* ECF Nos. 88 and 91.

### 1. Plaintiffs' Limited Objection

Plaintiffs' objection is limited to requesting "that the Court direct notice to issue to both Defendant's DD and MWD employees." ECF No. 91 at 2. In a footnote, Plaintiffs note that they "lodge [their] objection regarding the Magistrate Judge's decision on class certification, although the R&R's section concerning certification of a collective action is technically an order and not a recommendation." *Id.* at 2 n.1. Nevertheless, they also "alternatively seek reconsideration pursuant to Fed. R. Civ. P. 54(b) of the R&R order denying certification of an MWD class because . . . after briefing closed, the Fifth Circuit issued an opinion clarifying the applicable standard under *Swales*, which supports class certification of both the MWD and DD classes." *Id.* (citing *Loy v. Rehab Synergies, LLC*, 71 F.4th 329 (5th Cir. 2023)).

In contrast to the R&R portion of the R&R and Order, the Magistrate Judge took direct action on the motions referred for determination, including the motion for notice. *See* R&R and Order at 19. Such an order can result in an appeal to the District Judge by filing objections in accordance with Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b). But unlike a dispositive matter resolved through an R&R, an order fully resolved by a Magistrate Judge may also result in a motion to reconsider such order. "Typically, the Judge who issued the order to be re-reviewed would consider the filed motion for reconsideration." *Grant v. RentGrow, Inc.*, No. SA-21-CV-1172-JKP, 2023 WL 6518844, at *1 (W.D. Tex. Oct. 4, 2023). Indeed, in most instances, the preferred process by all involved is for the objecting party to first seek reconsideration from the judge who issued the order. This permits the issuing judge the initial opportunity to correct or clarify any aspect of his or her order that might need correction or clarification.

Plaintiffs initially object that, based on *Loy*, the Fifth Circuit has confirmed that *Swales* does not greatly alter the prior standard utilized in considering whether to permit a collective action

to proceed with notice to be issued to putative members. ECF No. 91 at 2-3. This objection appears to be primarily motivated by the Magistrate Judge's statement that she was "not convinced that the MWD class is similarly situated under the more searching *Swales* standard." *See id* at 3 (citing R&R and Order at 28).

The crux of *Loy* is that courts have "broad, litigation-management discretion" that is "cabined by the FLSA's 'similarly situated' requirement." 71 F.4th at 337 (quoting *Swales*, 985 F.3d at 443). The Magistrate Judge recognized this discretion. *See* R&R and Order at 20. Further, as the Magistrate Judge further recognized, *Swales* directed the district courts to "rigorously scrutinize the realm of 'similarly situated workers'" at "the outset of the case, not after a lenient, step-one 'conditional certification.'" *Id.* (quoting *Swales*, 985 F.3d at 434). Contrary to Plaintiffs' view, this does seem to be a more searching standard than previously applied. It was not contrary to law for the Magistrate Judge to apply the *Swales* legal standard in considering whether to certify an MWD collective action and send notice.

Plaintiffs next object that the decision to not send notice to MWD employees ignores the identical pay structure between DDs and MWDs. ECF No. 91 at 4-6. However, the Magistrate Judge recognized that both groups of employees shared the same pay structure. *See* R&R and Order at 23. The Court finds no error in the consideration given to the identical pay structures.

While the Court agrees that "the uniformity in payment practices . . . may dispose of both types of employees' claims simultaneously," *see* ECF No. at 91 at 5, this does not lead necessarily to a conclusion that notice should be issued to the MWDs. The Magistrate Judge recognized other differences between the MWD members, i.e., lack of uniformity as to duties, which compelled the Magistrate Judge to deny the motion for notice as to MWDs. *See* R&R and Order at 24, 27-28. Such denial is not contrary to law. Nor is it based on any clear error. Such denial lies within the Magistrate Judge's discretion.

Lastly, Plaintiffs object to the Magistrate Judge imposing a numerosity requirement for issuing notice. *See* ECF No. 91 at 7-8. Although the Magistrate Judge mentioned the perceived much smaller number of MWDs that would comprise an MWD collective action, *see* R&R and Order at 28, the Court does not view the Magistrate Judge as imposing any numerosity requirement. The Magistrate Judge merely mentioned the comparatively small number of MWDs as an additional notation. *See id*. With or without such additional notation, the Court finds the denial is not contrary to law or based on any clear error (even if interpolating some evidence to indicate that the number of field-MWDs were similar to the number of DDs).

In short, Plaintiffs have not shown that the denial of notice to MWD employees is clearly erroneous or contrary to law. Upon reviewing the entirety of the evidence and briefing, the Court has no definite and firm conviction that the Magistrate Judge committed any mistake. A de novo review of the legal conclusions shows no reason to reverse that denial. For all matters within the discretion of the Magistrate Judge, the Court finds no abuse of discretion.

Although Plaintiffs state that they alternatively seek reconsideration under Fed. R. Civ. P. 54(b), the Court declines to consider that attempt at reconsideration simultaneously with considering objections raised under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b). As mentioned previously, the preferred approach is that litigants present Rule 54(b) motions for reconsideration to the judge who issued the ruling sought to be reconsidered. Furthermore, in general, the Court does not view a footnote as a sufficient basis to assert a motion. That is especially true when the footnote is within objections under Rule 72 and § 636(b).

Whether *Loy* or some other basis justifies reconsideration under Rule 54(b), such basis should be submitted to the Magistrate Judge in the first instance. Although the Fifth Circuit issued *Loy* on June 21, 2023, after briefing concluded on the motion for notice but before the Magistrate Judge issued the ruling on the motion, neither party presented the case for consideration and the

Court finds no error in the Magistrate Judge not considering a case newly decided after briefing concluded. This Court, furthermore, finds no basis to return the matter to the Magistrate Judge under the standard of review applicable to objections asserted under Rule 72 and § 636(b).

### 2. Defendant's Objections

Defendant lodges objections against both adverse rulings by the Magistrate Judge. *See* ECF No. 88 at 4-5. As for the denial of Defendant's motion to defer consideration of the motion for notice/certification, it objects to the Magistrate Judge's consideration of its argument that Plaintiffs' reasonable relationship claim is a threshold issue that must be resolved before notice of a collective action is issued. *Id*. at 4-5.

As for the Magistrate Judge's certification of a nationwide collective action of individuals employed as DDs, Defendant objects that the Magistrate Judge failed to address several relevant issues regarding the ramifications of a certified collective action of DDs in the Western District of Louisiana. *See id*. at 5. It also asserts the same reasonable relationship and threshold issue asserted against the ruling on the motion to defer consideration. *See id*. at 5-6, 17-21. It further asserts objections based on the Magistrate Judge (1) failing to address "an argument that the regulation upon which Plaintiffs' claim is based is contrary to the controlling statute," *id*. at 6, 17; (2) "adopting wholesale Plaintiffs' proposed notice and schedule," *id*. at 6-7; (3) abusing her discretion in certifying a DD collective action over Defendant's objection regarding threshold issues, *see id*. at 7; (4) committing error and abusing her "discretion in certifying the class and ordering the production of lists before the time expired for [Defendant] to even raise objections to the R&R as permitted under the Federal Rules and U.S. Code, let alone allowing time for those objections and any appeals to be resolved," *id*.; and (5) certifying a case with no cognizable claim, *id*. at 13.

Twenty-two months after Plaintiffs commenced this case, they moved for notice (ECF No. 62) under *Swales*. They sought leave to send notice to a collective action comprised of Defendant's

32

current and former DDs and MWDs. ECF No. 62 at 1. After the Magistrate Judge held a hearing on the motion, *see* ECF No. 72, Defendant moved for summary judgment (ECF No. 73) and to defer issuance of notice (ECF No. 74). It moved to defer consideration of Plaintiffs' motion for notice/certification until the Court had fully resolved Defendant's threshold challenge that Plaintiffs had no valid reasonable relationship claim under § 604(b). ECF No. 74 at 1. As an alternative threshold issue, Defendant argued that Plaintiffs cannot proceed with a "salary-only challenge." *Id*. at 1-2. It sought to defer a ruling on Plaintiffs' request for notice until the Court decided these threshold issues through the summary judgment motion. *Id*. at 2.

Defendant objects that the Magistrate Judge incorrectly analyzed its threshold challenge. ECF No. 88 at 4. The initial gist of that objection is that the asserted threshold challenge does not arise from an affirmative defense, but instead arises from Plaintiffs' right or standing to state their claim. *Id*. It states that it "did not ask the Court to decide its exemption defense," it instead "asked the Court to find that Plaintiffs had not stated a cognizable claim in attempting to apply the reasonable relationship to an employee paid a true salary and qualifying under § 602(a) as being paid on a salary basis." ECF No. 88-1 at 10.

The latter statement does not explain how that differs from resolving its affirmative defense. The HCE exemption has three requirements, one of which is a minimum weekly payment on a salary or fee basis. *See* 29 C.F.R. § 601(a), (b). The salary basis requirement is a contested matter in this case. That exemption requirement mandates consideration of the general salary basis definition of 29 C.F.R. § 541.602. When an employer pays additional compensation to an exempt employee or computes an exempt employee's earnings on an hourly, daily, or shift basis, 29 C.F.R. § 541.604(a) or (b) come into play. Under § 604(b), the reasonable relationship issue does not arise unless "[a]n exempt employee's earnings" are "computed on an hourly, a daily or a shift basis."

The Court does not see how this perceived threshold issue differs in substance from

considering the exemption defense. Plaintiffs present a claim for unpaid overtime. They assert the reasonable relationship issue only in anticipation or response to the HCE defense. Whether that issue succeeds depends on a definitive ruling on the affirmative defense.

As to the objection based on Plaintiffs' right or standing to state their claim, the Court finds the objection has no basis under the facts. Through its motion for summary judgment, Defendant raises no issue that Plaintiffs lack standing to assert their overtime claim. There is no question that this Court has jurisdiction over this FLSA action. To the extent that Plaintiffs might lack a cognizable claim on the summary judgment briefing before the Court, they only do so if Defendant carries its burden to establish its affirmative defense that Plaintiffs are exempt employees. By not raising the second alternative threshold issue in its summary judgment motion, Defendant did not submit it for merits consideration. The Court finds that Defendant has waived the alternative argument as it pertains to the summary judgment ruling.

Defendant strenuously argues that the three basic elements of its affirmative defense are undisputed. ECF No. 88 at 4. But that argument completely disregards the fact that the required weekly salary must be paid on a salary basis, which still remains in a state of dispute. And as found by the Magistrate Judge and accepted by this Court, Defendant has not carried its burden to establish its affirmative defense. Viewing the facts in the light most favorable to Plaintiffs, a reasonable finder of fact could return a verdict for Plaintiffs despite the asserted affirmative defense. Defendant has not shown that it is entitled to judgment as a matter of law on its affirmative defense. Through the lens of summary judgment, the facts do not show that Defendant paid Plaintiffs on a salary basis as required for them to be exempt employees.

Defendant later revisits the threshold challenge issue. *See id*. at 17-20. It contends that the Magistrate Judge clearly erred when she ruled that its argument was an affirmative defense that should be addressed on the merits. *Id*. at 18. It concedes that threshold issues vary "but they

commonly involve the issue of limitations on a court's authority or ability to address the merits of an underlying matter." *Id*. Although Defendant presents a myriad of circumstances that have been noted or found to be threshold issues in the actions then before the various courts or boards, it presents none holding that the exemption relied upon by Defendant qualifies as a threshold issue that precludes issuance of notice in this type of FLSA collective action. *See id*. at 18-20. This Court does not view such authorities as a reason to defer issuing notice in this FLSA action.

Furthermore, although Defendant raised its affirmative defense as a threshold issue in its motion to dismiss (ECF No. 12), filed about two months after commencement of this case, this Court denied that motion because Defendant had not shown that the defense was viable from the face of the operative pleading. *See* ECF No. 27. Defendant chose not to reassert the defense until filing its summary judgment motion on March 30, 2023, more than two years after commencement of this action, a year after denial of its motion to dismiss, and nearly a month after the Magistrate Judge had held a hearing on the motion for notice. This does not indicate that the defense should preclude the Magistrate Judge from considering the motion for notice.

In general, threshold matters are raised early in a case. Litigants should present them in such a manner as to not delay issuance of notice of a certified collective action. If a motion to dismiss fails on a perceived threshold matter, the litigant should garner its evidence and present it in a motion for summary judgment as soon as it is procedurally viable to do so. It is a bit incredulous for Defendant to continue to argue that its affirmative defense is a threshold matter that the Court must decide before issuing notice to prospective members of a collective action when it waited so long to assert it in a motion for summary judgment. Regardless, the Magistrate Judge appropriately recognized that "Plaintiffs should not be required to marshal summary-judgment evidence to disprove Schlumberger's affirmative defense in the context of a motion for notice." R&R at 22. Furthermore, the defense is one that appears to relate to all putative members of the

collective action. Thus, it is not a defense that must be addressed before notice issues. Additionally, as made abundantly clear in this Memorandum Opinion and Order, Defendant has still not succeeded on its defense.

As for the second threshold matter asserted in the motion to defer notice, such matter blends into Defendant's objection that the Magistrate Judge erred in failing to consider or address its alternative argument "that the DOL regulations were contrary to the governing statute as the governing statute establishes the exemptions based upon the duties performed by the incumbent, not the amount the incumbent is paid." *See* ECF No. 88 at 17. Defendant objects that even though it "raised the issue in its opposition to certification," the Magistrate Judge did not address it. *Id.*

Defendant indeed raised the issue in response to the motion for notice. *See* ECF No. 66 at 5-6 (relying on *Nevada v. U.S. Dept. of Labor*, 275 F. Supp. 3d 795, 805-06 (E.D. Tex. 2017) and 69 Fed. Reg. 22122, 22165 (April 23, 2004)). But Plaintiffs challenged the issue in reply by arguing that the regulations are permissible under the rulemaking authority to define and delimit exemptions, Defendant misreads the non-binding case from the Eastern District of Texas, and judicial estoppel bars Defendant from disavowing the binding nature of the regulations it has previously relied upon. *See* ECF No. 69 at 1-4.

Defendant did not raise this alternative issue in its summary judgment motion. In response to the summary judgment motion, Plaintiffs viewed that failure as an abandonment of the alternative issue. *See* ECF No. 78 at 6-7. Defendant addresses the argument in its reply brief, ECF No. 82 at 1 n.1, but makes no attempt to assert the issue into its summary judgment motion. Of course, even had it tried to raise the issue in its reply brief, such attempt would not be sufficient to present it to the Court for resolution through the summary judgment process.

To the extent a litigant believes it has a threshold issue that must be resolved before notice may issue in a collective action, it is incumbent upon such litigant to present it to the Court for

resolution. The Magistrate Judge simultaneously resolved the two motions referred for disposition along with issuing a recommendation that the Court deny Defendant's summary judgment motion. The Magistrate Judge knew exactly what issues were and were not presented as reasons for obtaining summary judgment. Defendant's failure to assert the issue in its motion for summary judgment provides ample reason to disregard it as it pertains to issuance of notice for a collective action. And while Defendant did raise it as a reason to defer notice, even then, it merely sought to defer issuance of notice pending resolution of its motion for summary judgment. By not asserting the second threshold matter in that motion, the Magistrate Judge had no reason to consider it as a viable reason to defer or deny notice.

Furthermore, even though the Magistrate Judge did not expressly consider the alternative argument in making the ruling on the motion for notice, the ruling itself necessarily indicates that the Magistrate Judge rejected the alternative argument as a reason not to issue notice to the DD employees. Defendant has not shown that such rejection is clearly erroneous or contrary to law. And this Court does not find such rejection to be clearly erroneous, contrary to law, or any abuse of discretion.

Defendant's argument was endorsed in a dissent in *Helix*. *See* 598 U.S. at 67-68 (Kavanaugh, J., dissenting). Plaintiffs notified the Magistrate Judge of the *Helix* decision, *see* ECF No. 70, which prompted Defendant to respond, *see* ECF No. 71. That latter response again raised the issue that Defendant asserts that the Magistrate Judge failed to consider. *See id.* at 6. Its response relies only upon the *Helix* dissent. *Id.* Dissenting opinions, however, are not binding on lower courts.

Defendant also objects that the Magistrate Judge certified a collective action that lacks a cognizable claim. *See* ECF No. 88 at 13. The entirety of this objection relates to the Defendant's view that Guilbeau and other DDs are exempt employees as to the overtime provisions at issue in

this case. *See id.* at 13-17. For the reasons already stated, this Court agrees that Defendant has not carried its burden to show that the DD employees are exempt. Accordingly, the Court finds no error in certifying the collective action due to the lack of a cognizable claim.

Defendant further disagrees with the Magistrate Judge failing to address issues that arose in a certified collective action of DDs in the Western District of Louisiana, adopting the notice and schedule proposed by Plaintiffs, and failing to provide adequate time for producing lists of employees. *See* ECF No. 88 at 5-7. Defendant also states that the certified collective action "includes DXs which Plaintiffs recognized as not suitable for certification and even removed them from consideration in the MWD class after [Defendant's] objections." ECF No. 88-1 at 11. But like Defendant's prior objections, the Court finds no basis to reconsider the Magistrate Judge's rulings. The Magistrate Judge, of course, is free to revisit these matters as she handles the notice and certification issues that may arise as this case proceeds.

With respect to the motion for notice and motion to defer, the Court finds nothing clearly erroneous or contrary to law. The Magistrate Judge simply acted within her broad discretion. The Magistrate Judge did not abuse her discretion by denying the motion to defer ruling and partially granting the motion for notice despite the potentially dispositive affirmative defense, which she had recommended be denied. Notably, after issuing her order denying the motion to defer notice and granting notice as to a DD collective action, the Magistrate Judge granted Defendant's unopposed motion to stay the order on the motion for notice and stayed the deadlines and timelines while the Court considers Defendant's objections to the R&R and Order.

### III. CONCLUSION

Having reviewed the R&R and Order in accordance with Fed. R. Civ. P. 72 and 28 U.S.C. § 636, and under the appropriate standard of review, the Court **ACCEPTS** the Report and Recommendation of the United States Magistrate Judge (ECF No. 86), **AFFIRMS** the order portion of

the R&R and Order, **OVERRULES** all asserted objections, and **DENIES** Defendant's Partial Motion for Summary Judgment (ECF No. 73). For the reasons stated herein, the Court also **MOOTS** the Motion to Strike, or in the Alternative, Motion for Leave to file Reply (ECF No. 95), filed by Defendant.

This action will continue to proceed under the Referral Order (ECF No. 4) previously issued in this case. Consistent with the deadlines set forth in the R&R and Order that the Magistrate Judge stayed pending resolution of the R&R, Defendant shall make the required disclosure of putative members of the DD collective action within ten days of this Memorandum Opinion and Order, unless the Magistrate Judge orders otherwise. The other deadlines set in the R&R and Order also restart as of the date of this Memorandum Opinion and Order unless the Magistrate Judge orders otherwise.

Because this case is already three years old, the Court intends to expedite this case to the extent possible. From deadlines in the R&R, the Court expects the notice and consent process to be completed within about four months absent any extensions by the Magistrate Judge. Further, consistent with this Court's Fact Sheet, *see* Fact Sheet for Judge Jason K. Pulliam ¶ 35, Defendant has filed its one and only allowed motion for summary judgment. Any future dispositive motion deadline will exclude another summary judgment from Defendant unless the undersigned has specifically granted leave for another such motion. To the extent there is need for a dispositive motion deadline at all, such deadline should expire within the consent period. Further, given the age of this case, the Court intends to set a trial date preferably in the last quarter of this year. **On or before March 19, 2024**, the parties shall confer and submit multiple proposed trial dates along with their best estimate as to the length of trial. To aid their conference, the Court's current schedule precludes trial in December 2024. It also has trials currently scheduled from September 23, 2024, through early October, as well as a trial commencing on October 21, 2024. The Court will have a

firm trial setting in place before the end of March 2024.

**It is so ORDERED this 5th day of March 2024.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**