# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**TREVER GUILBEAU, individually
and on behalf of all others similarly situated,**

     *Plaintiff*,

**v.**                                         **Case No. SA-21-CV-0142-JKP-ESC**

**SCHLUMBERGER TECHNOLOGY
CORPORATION,**

     *Defendant.*

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are two related matters. First, the Court has under consideration Defendant's Objections (ECF No. 120), Plaintiffs' response to the objections (ECF No. 127), and filings related to potentially relevant caselaw (ECF Nos. 119, 135-36). Second, the Court considers Defendant's Motion to Lift Stay and Motion for Reconsideration (ECF No. 137), Plaintiffs' response to those motions (ECF No. 140), Defendant's reply (ECF No. 141), a recently filed notice (ECF No. 142) regarding another potentially relevant case decision, and Defendant's response (ECF No. 143) to the latest notice. There is substantial overlap between the formal motion briefing and the prior filings. Given the matters presented, the Court first considers the formal motions by Defendant before addressing the objections to the non-dispositive ruling of the Magistrate Judge.

## I. MOTION TO LIFT STAY

Plaintiffs do not oppose the motion to lift the stay. *See* ECF No. 140 at 1. The Court agrees that there is no reason to retain the stay and thus grants the motion to lift stay.

## II. MOTION FOR RECONSIDERATION

Defendant Schlumberger Technology Corporation ("STC") asks the Court to reconsider its Memorandum Opinion and Order Accepting the Report and Recommendation of United States

Magistrate Judge (ECF No. 101). In light of *Venable v. Smith International, Inc.*, 117 F.4th 295 (5th Cir. 2024), it contends that the Court should reconsider its prior summary judgment ruling as well as the decision to allow this case to proceed as a collective action. ECF No. 137 at 2. Stated succinctly in its reply, Defendant asserts: "Reconsideration of the Court's prior orders is warranted, and the Court should withdraw its previous orders, grant STC's Motion for Partial summary judgment, and deny Plaintiffs' Motion for Notice under *Swales*." ECF No. 141 at 2. Plaintiffs unsurprisingly disagree with any reconsideration. *See* ECF No. 140.

## A. Applicable Reconsideration Standard

Defendant invokes Fed. R. Civ. P. 54(b), which applies when a party seeks reconsideration of an interlocutory order. *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (recognizing the applicability of Rule 54(b)); *Austin v. Kroger Tex., LP*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (clarifying relationship between Rule 54(b) and 59(e)).

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all of the claims." Through "Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (citation and internal quotation marks omitted). Applying "the more flexible Rule 54(b)" standard, provides broader discretion for the courts to reconsider their interlocutory orders. *Id*. at 337. The more flexible approach reflects the "inherent power" of the "court to afford such relief from interlocutory judgments as justice requires." *Id*. (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)).

So long as courts "recognize that they have the discretion to grant reconsideration even in the absence of any such showing," the flexible approach permits them to "require a showing of

one of the following factors to justify reconsideration: an intervening change in law; availability of previously unavailable new evidence; or a need to correct a clear legal error or to prevent manifest injustice." *S.L.V. v. Rosen*, No. SA-21-CV-0017-JKP, 2021 WL 243442, at *5 (W.D. Tex. Jan. 25, 2021) (second quote from *Gonzalez ex rel. E.G. v. Bond*, No. 1:16-CV-0068-BL, 2017 WL 3493124, at *7 (N.D. Tex. June 29, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017)). In many circumstances, the absence of such showing would exhibit no injustice to denying reconsideration. But in all cases, the critical consideration for reconsidering an interlocutory order under Rule 54(b) is whether justice requires relief from such order. *See Austin*, 864 F.3d at 337.

## B. Mandamus Petition

Given a cautionary footnote when the Fifth Circuit denied Defendant's mandamus petition, *see In re Schlumberger Tech. Corp.*, No. 24-50446, unpub. ord. at 5 n.2 (5th Cir. June 13, 2024) (found at ECF No. 128), the Court stayed this action pending further order of the Court as it considered Defendant's objections and the interactions of various cited cases. Defendant relies on that mandamus denial for arguing that *Venable* is dispositive of the matters in this case. ECF No. 137 at 2 (noting that the Fifth Circuit had stated that "the same question presented in this case is at issue in two other cases pending before our court on plenary review—No. 22-30227, *Venable v. Smith International, Inc.* and No. 22-30819, *Boudreaux v. Schlumberger Technology Corp.*" and that "the question at issue here is already being considered by other panels of this court"). Defendant later stresses that "the issue in *Venable* is 'the same question presented in this case.'" *Id*. at 8.

But Defendant reads too much into the mandamus denial. The same question does not necessarily receive the same answer under different facts or circumstances, i.e., the procedural posture of a case. And the unpublished order does not control this Court's determination as to whether the later *Venable* opinion considers the same legal question under the same or similar facts in the same

procedural posture. At this point, this Court is in the best position to gauge the similarities and dissimilarities between this case and the now rendered *Venable* decision.

When ruling on the then pending motion to stay, this Court, as suggested by the mandamus panel, took note of the "two impending decisions" of the Fifth Circuit while also "giv[ing] close consideration to [the] published *Gentry* decision—including the key 'factual[] dissmilarit[ies]'" that distinguished the compensation scheme at issue in that case from the schemes at issue in *Wilson* and *Hebert*." *See In re Schlumberger Tech. Corp.*, unpub. ord. at 5 n.2. The Fifth Circuit has now added to the body of FLSA caselaw by issuing *Venable*. However, that case does not necessarily displace the published *Gentry* decision (*Gentry II*). The latter decision may still provide appropriate guidance as will be discussed in more detail.

**C. *Venable* and *Gentry II***

In response to Plaintiff's notice (ECF No. 135) that the Fifth Circuit dismissed the *Boudreaux* appeal for lack of jurisdiction, Defendant informed the Court of the Fifth Circuit's published *Venable* decision. *See* ECF No. 136 at 1–1. It therein submitted that *Venable* is the "definitive ruling on the pay practice at issue in this case." *Id*. at 1–2. It submitted that "[t]he compensation structure for the plaintiffs in *Venable* is the same as STC's compensation for the Plaintiffs in this action" and "[t]he issues in *Venable* are identical to this case." *Id*. at 2. It argued that *Venable* "clearly calls for dismissal of Plaintiffs' claims based solely on the reasonable relationship test." *Id*. Through its motion to reconsider, it makes the same or similar arguments. *See* ECF No. 137 at 2, 7–11.

This is not the first time that Defendant has perceived a definitive ruling that it contends dictates a result here. And the Court again does not see the same clarity as Defendant. Sure, all things being the same, *Venable* could be definitive authority for the same result here. And as an affiliated entity to the defendant in *Venable*, *see* ECF No. 141 at 1, Defendant may be in an

advantageous position to gauge the similarities of the two entities and perhaps the cases themselves. But, as explained later, there are material differences between the facts presented in this case and those presumably presented in *Venable* to secure the granting of the motion for summary judgment in that case. Whether those differences actually exist is a matter to be determined through trial, or a second motion for summary judgment if Defendant can make a proper showing that such a motion is warranted. Before identifying material differences, however, it appears prudent to first reflect upon what has occurred in this case and how the new cases may apply.

The Fifth Circuit did not decide *Venable* in a vacuum. As this Court previously discussed, many recent cases provide insights into the issues before it. *See Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 713–22 (W.D. Tex. 2024) (discussing, *inter alia*, *Helix Energy Sols. Grp., Inc. v. Hewitt [hereinafter Helix]*, 598 U.S. 39 (2023); *Hewitt v. Helix Energy Sols. Grp., Inc. [hereinafter Hewitt]*, 15 F.4th 289 (5th Cir. 2021), *aff'd*, 598 U.S. 39 (2023); *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023) (unpublished opinion), *cert. denied*, 144 S. Ct. 820 (2024); *Gentry v. Hamilton-Ryker IT Sols., LLC [hereinafter Gentry I]*, No. 3:19-CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022) (recommendation of Mag. J.) *adopted by* 2022 WL 889276 (S.D. Tex. Mar. 25, 2022), *aff'd*, No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023), *reh'g granted, op. withdrawn*, 95 F.4th 219 (5th Cir. 2024), and *aff'd in part, vacated in part, remanded*, 102 F.4th 712 (5th Cir. 2024)). The interplay of 29 C.F.R. §§ 541.602(a), 541.604(a), and 541.604(b) also play a major role in resolving the issues in this case. *See id.* at 714–19. The Court's prior de novo review "reveal[ed] a complex issue with no definitive answer based upon binding precedent alone." *See id.* at 713.

At that time, despite Defendant's insistence that the Magistrate Judge had clearly erred in various respects regarding Defendant's motion for summary judgment, the Court reached a contrary conclusion on its review and acceptance of the recommendation. After setting out applicable

legal principles from *Helix* and *Hewitt*, the Court declined to follow the underlying *Venable* district court decision and a similar decision out of the same district court, because "the Court's de novo review support[ed] an analytical framework that does not follow the results in the non-binding decisions of the Western District of Louisiana." *Id.* at 718 (not following *Venable v. Schlumberger Ltd.*, No. 6:16-CV-00241 LEAD, 2022 WL 895447 (W.D. La. Mar. 25, 2022) and *Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-02267, 2022 WL 992670 (W.D. La. Mar. 30, 2022)). It then distinguished *Hebert*, before analyzing and finding *Gentry I* "persuasive and supported by this Court's own interpretation of both *Helix* and *Hewitt*." *Id.* at 719–21. And it stated: "If the Fifth Circuit issues a binding decision to the contrary, the Court may of course revisit this matter upon proper motion raising the new opinion." *Id.* at 721. The Court did not lightly decide to follow *Gentry I*.

Before finalizing its acceptance of the Magistrate Judge's recommendation, the Court also addressed and distinguished a case not presented to the Magistrate Judge, *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2630 (2024). *See id.* at 722–23. It found the instant case "more similar to *Gentry* than to *Hebert*," and found it difficult "to say that the logic of *Wilson* or *Hebert* bears on this case." *Id.* at 723.

With this background in mind, the Court now turns to whether either *Venable* or *Gentry v. Hamilton-Ryker IT Sols., LLC [hereinafter Gentry II],* 102 F.4th 712 (5th Cir. 2024) provides a binding definitive answer to the issues before the Court. Defendant contends that *Venable* provides that answer. Of course, to the extent applicable, Supreme Court decisions, such as *Helix*, and the en banc decision of *Hewitt* remain the most precedential. Panel decisions such as *Venable* and *Gentry II* simply cannot override applicable Supreme Court or en banc precedents. Through *Gentry II*, the Fifth Circuit affirmed *Gentry I* in all material respects as it relates to this case. *See* 102 F.4th at 717–25. The features that this Court found persuasive are now binding to the extent the case is

not distinguishable. The appellate *Venable* decision is likewise binding to the extent it applies. Because this Court viewed *Gentry I* as persuasive while distinguishing the underlying *Venable* decision, the question is now whether the new appellate decisions alter that view.

An intervening change in law may provide a basis for courts to reconsider prior rulings. Whether *Venable* or any other recent Fifth Circuit opinion qualifies as such an intervening change is properly considered on Defendant's motion to reconsider. But reconsideration is not a given outcome for changed appellate decisions. *See Richardson v. NES Glob., LLC*, No. CV H-20-223, 2024 WL 3852258, at *3 (S.D. Tex. Aug. 16, 2024) (denying reconsideration urged due to the withdrawal of the earlier *Gentry* opinion among other reasons).

Here, through its objections and motion for reconsideration, Defendant essentially seeks review of *Venable* and *Gentry II* to ascertain whether its position is so clear as to justify a change in direction in this case. And the Court did delay this case for further consideration of the new Fifth Circuit decisions. The Court thus considers whether *Venable* justifies a change of course.

In large part, this Court's analysis to date is premised on the underlying district court opinion in *Gentry I* as supported by *Helix* and *Hewitt*. The effort and consideration of the issues by the district court in *Gentry I* is undeniable. *See* 2022 WL 658768, at *5 (indicating that judge had "dedicated a considerable amount of time to understanding the distinction between the latter part of § 541.604(a) and § 541.604(b)" and based on that reading, found a subtle distinction). That court found "confusion surrounding the salary-basis test understandable" given that the regulations and "many of the cases interpreting the regulations" are "somewhat confusing." *See id*. at *3. This Court has likewise expended considerable time and effort in deciphering the various regulations and cases.

*Gentry I* recognized a subtle distinction in the regulations based upon whether additional compensation is provided for work beyond the normal workweek or for work within such a week.

*Id*. at *5–6. On appeal, the Fifth Circuit noted:

> Together, sections 602(a) and 604(a) allow employers to pay a true weekly salary, a salary paid on a weekly or less frequent basis, plus additional compensation in the form of commissions, profit-sharing, or hourly wages for hours worked beyond the normal workweek. Section 602(a) provides a stable and predictable source of income while § 604(a) allows performance incentives for work beyond the regular workweek.

*Gentry II*, 102 F.4th at 719.

To fall under § 602(a), the salaried employee must be paid on a weekly basis. *Id.* at 720. Focusing on the "weekly basis" aspect, it held that an employee is not paid on a "weekly basis" as required by § 602(a) unless the predetermined sum, i.e., salary, "is *calculated*, not merely provided, by the week." *Id*. In other words, to be paid on a "weekly basis" requires the employer to pay the employee a weekly rate. *Id*. And, importantly, weekly rates encompass payment "for all work performed that week." *Id*. *Gentry II* did not materialize these requirements without support; instead, it gleaned the requirements from the Supreme Court's *Helix* decision. *See id*. at 720 & nn. 30–33. Section 602(a) requires more than "that employees receive a preset and non-reducible sum each weekly pay period." *Id*. at 720 n.33 (citing *Helix*, 598 U.S. at 52-53).

Because the pay for employees was calculated by the hour, they were not paid "by the week as § 602(a) requires." *Id*. at 721. Moreover, the employer could not "reasonably argue that eight hours of pay constitutes a 'weekly rate,' because that "'guaranteed weekly salary' typically accounted for less than 20% of their total paychecks." *Id*. A "guaranteed weekly salary" fails "to provide a weekly rate," when the compensation is "not a true salary but [i]s illusory." *Id*. Further, "language in § 602(a) regarding 'all or part' of an employee's compensation does not absolve employers from paying a weekly rate; it only references additional compensation under § 604(a)." *Id*. at 722.

"A straight-forward reading of the text makes clear that § 604(a) does not envision hourly pay for work within the normal workweek." *Id*. The same is true for daily pay. Compensation "for

work performed during the workweek [is] impermissible under § 604(a)." *See id*. Stated differently, "pay was for work performed during the workweek, render[s] § 604(a) inapplicable." *Id*. at 723. The Fifth Circuit agreed that "it would be nonsensical for the Department [of Labor] to qualify the example of additional pay for hours worked—limiting it to time beyond the normal workweek—if pay for all or most of an employee's hours within the normal workweek could also constitute additional compensation under 604(a)." *Id*. at 722 (internal quotation marks omitted). *Gentry II* clearly recognized that "*Helix* and sections 602(a), 604(a), and 604(b) require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Id*. at 725.

In accepting the recommendation in this case, this Court took that hard look and concluded that based on the summary judgment evidence viewed in the light most favorable to Plaintiffs, a genuine dispute exists as to whether the purported weekly salary truly compensated the employees for a week's work making § 604(a) applicable or whether the salary was also for base pay for work within the normal workweek. *Guilbeau*, 719 F. Supp. 3d at 724. While the facts of *Gentry I* and *Gentry II* are not entirely on all fours with the instant case, their analysis parallels well with the facts of this case. Plaintiff Guillbeau's guaranteed weekly salary was $913 with a day rate of $625. His weekly guarantee was less than a day and a half calculated from his day rate. For a full week of work, the guaranteed amount is about 22.6% of the total paycheck. Although this case involves a day rate rather than hourly rate, the guarantee still appears illusory rather than a true salary at a weekly rate. And a review of *Gentry II* reveals an appellate decision fully supportive of this Court's prior denial of summary judgment. It is certainly not a binding decision contrary to the Court's prior ruling.

*Gentry II*, furthermore, specifically agreed with *Wilson* that the two cases were "factually

dissimilar." 102 F.4th at 725 & n.66 (noting that "*Gentry* is wholly concerned with a compensation scheme where the employee received a guaranteed weekly salary equal to 8 hours of pay in any week in which the employee performed any work—i.e., it was computed on an hourly basis"). Whether similar or not, *Gentry II* viewed any "tension with" *Wilson* as resulting from that court "overlook[ing] a key aspect of *Helix*." *Id*. at 724. As it explained, "the Tenth Circuit found that a measurement-while-drilling operator was paid on a salary basis when he was guaranteed a fixed, biweekly salary in addition to extra compensation for time spent on a drilling rig" and "held that the employee was paid on a salary basis because he received the 'same salary every week' which was 'not based upon his hours, days, or shifts of work.'" *Id*. at 725 (quoting *Wilson*, 80 F.4th at 1177). The *Gentry II* panel viewed *Wilson* as "overlook[ing] the 'antecedent' question in *Helix*: whether the salary, regardless of the frequency with which it was distributed, provided a true weekly rate." *Id*. (quoting *Helix*, 598 U.S. at 50 n.3). It also compared *Wilson*'s reasoning as nearly identical "to the dissent in *Helix*." *Id*. 725 n.69. It further noted that "[t]o the extent that [its] decision is inconsistent with *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014), another pre-*Helix* decision out of the First Circuit, *Litz* also relied on the same flawed rationale rejected in *Helix*." *Id*. 725 n.70. The Fifth Circuit's approach to *Wilson* is comparable to this Court's consideration. *See Guilbeau*, 719 F. Supp. 3d at 722–23.

*Venable* neither discussed *Wilson* nor shed further light on that opinion's persuasiveness or lack thereof. It did, however, recognize that employees are exempt from overtime wages when they are a "bona fide executive," which in general requires satisfying three criteria or tests—salary basis, salary level, and job duties. *See* 117 F.4th at 299. As for the first criterion, *Venable* states that "the salary basis test requires that an employee 'receives a 'predetermined and fixed salary'— one that does not vary with the precise amount of time he works.'" *Id*. (quoting *Helix*, 598 U.S. at 45). And the quoted language does provide "[t]he basic idea." *See Helix*, 598 U.S. at 45. As *Helix*

states, employees cannot be a bona fide executive unless they receive such a predetermined and fixed salary. *Id*. But, as discussed at length in *Gentry II*, receipt of such a salary is insufficient of itself to satisfy the salary basis test. 102 F.4th at 720 & n.33 (discussing weekly basis, weekly rate, and recognizing that *Helix* rejected the contention that "§ 602(a) requires only that employees receive a preset and non-reducible sum each weekly pay period"). *Helix* itself followed that basic idea with "greater detail and disputation." *See* 598 U.S. at 45.

*Venable* did not address "weekly basis" or "weekly rate," as *Gentry II* had done. Instead, it simply recognized that the employees were "paid under a hybrid compensation structure," and were "not paid on an hourly, a daily, or a shift basis," thus finding § 604(b) inapplicable. 117 F.4th at 299. In doing so, it rejected an argument that because the employees "were paid in part on a weekly salary basis and in part on a daily basis, the salary basis did not meet § 604(b)." *Id*. It held that the employees "misinterpret the weekly salary basis to be a *payment in part*" when they are paid "a *guaranteed* annual salary" with an "opportunity to make additional compensation." *Id*. at 300.

Nevertheless, quoting *Gentry II*, *Venable* recognized that "§ 604(a) expressly contemplates hourly compensation for work beyond the normal work week, while § 604(b) concerns hourly compensation within the employee's normal scheduled workweek." *See id*. (quoting 102 F.4th at 723). While it made that recognition as it noted two essential differences between § 604(a) and (b), it did not develop the issue as it pertained to the case before it. *See id*. It never says that a claimed bonus necessarily falls within § 604(a). It appears to accept as fact that the plaintiffs there were paid "daily-rate job bonuses . . . if they provided services to [the defendant's] customers on their drilling rigs." *Id*. at 298. But as this Court previously noted, the label used by employers, i.e., bonus versus day rate "is not determinative." *Guilbeau*, 719 F. Supp. 3d at 712 (citing *Taylor v. HD & Assocs., LLC*, 45 F.4th 833, 839 (5th Cir. 2022) (per curiam); *Donovan v. Tehco, Inc.*, 642

F.2d 141, 143 (5th Cir. Unit A 1981) (recognizing that a label in the FLSA context "is dispositive only to the degree that it mirrors the economic reality of the relationship")); *accord Pickens v. Hamilton-Ryker IT Sols., LLC*, ___ F.4th ___, ___, No. 24-5407, 2025 WL 972526, at *6 (6th Cir. Apr. 1, 2025) (discussing labels and economic realities under the FLSA).

The district court in *Venable* had "conditionally certified the action as a collective action under 29 U.S.C. § 216(b)," the parties later filed cross-motions for summary judgment after discovery, and the district court found on the summary judgment record that the employees were exempt from the overtime-pay guarantee protections of the FLSA. 117 F.4th at 298. Through its de novo review, the Fifth Circuit affirmed the district court's finding that the defendant was entitled to summary judgment based on the applicability of the bone fide executive exemption. *See id.* at 298–301. Thus, based on the summary judgment record, it agreed with the district court that the exemption applied and compelled summary judgment in favor of the defendant. Tellingly, it explained that "[b]ecause there is no genuine dispute of material fact, the district court appropriately granted Smith's motion for summary judgment." *Id.* at 301.

Citing to summary judgment evidence, the *Venable* district court found that "Venable received job bonuses for days he provided services to Smith's customers on their drilling rigs." *See* 2022 WL 895447, at *3 & n.27. But having been decided prior to *Gentry II*, the district court did not explore whether the compensation at issue was within or beyond the normal workweek. Similarly, in affirming the grant of summary judgment, the Fifth Circuit does not appear to explore that issue either. While Plaintiffs expressly raised the issue in their petition for en banc review, *see*, *Venable v. Smith Int'l, Inc.*, No. 22-30227 (5th Cir. Oct. 2, 2024) (Pls.-Appellants' Pet. for En Banc Rehearing (doc. 149)), the panel treated the petition as one for a panel rehearing and denied it "[b]ecause no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc," *id.* (5th Cir. Oct. 16, 2024) (order denying petition (doc. 151)). This

Court will not view the denial of rehearing as altering its view of the underlying appellate *Venable* decision. Nor will it view the denial of en banc review as foreclosing Plaintiffs from arguing here that *Gentry II*, rather than *Venable*, is the appropriate guiding precedent.

Even though *Gentry II* supports Plaintiffs' reasoning, Defendant would have this Court find that the Fifth Circuit has specifically rejected the arguments advanced by Plaintiffs in this case. *See* ECF No. 141 at 2–3. Based upon the published *Venable* decision and the facts and circumstances of the case now before it, the Court cannot make such finding. The Court will not speculate as to why the Fifth Circuit did not further address the within-beyond normal workweek distinction. It did not attempt to distinguish *Gentry II* but instead cited it with approval for recognizing "'essential differences' between § 604(a) and § 604(b)." *Venable*, 117 F.4th at 300. Defendant essentially wants to preclude further litigation of an issue that does not appear to have been actually litigated in *Venable*. Plaintiffs provide solid reasons not to apply such issue-preclusion. *See* ECF No. 140 at 6–7.

While the Court sees that *Gentry II* could be distinguished on grounds that it involved a predetermined sum (salary) calculated on an hourly, rather than weekly, rate, such distinction ignores the important recognition and discussion of "beyond the normal workweek" and its requirement that "a weekly rate compensates employees for all work performed that week." *See* 102 F.4th at 719–20. *Gentry II*'s applicability appears to go well beyond circumstances where the employee's salary is calculated on an hourly, rather than weekly basis.

In any event, Defendant's position that *Venable* dictates a result in this case ignores the procedural posture of this case compared to that case. The district court in *Venable* granted the employer's motion for summary judgment and denied the partial motion for summary judgment filed by the plaintiffs. *See* 117 F.4th at 297. The district court had found that the employer had

carried its burden to show that the plaintiffs were exempt employees. The Fifth Circuit affirmed because it agreed that there was no genuine dispute of material fact. *Id*. at 301.

Here, on the other hand, as emphasized in both the report and recommendation (ECF No. 86) and the order accepting that recommendation (ECF No. 101), Defendant has not carried its burden as a factual matter. Stated succinctly in that order:

> As the Magistrate Judge found in this case, Defendant has not carried its burden to support its claimed exemption because it has not shown as a matter of law that it paid Plaintiffs on a salary basis. There remains a dispute as to whether the day-rate portion of Plaintiffs' compensation was part of the base compensation or constituted additional compensation within the scope of § 604(a) and thus outside the purview of § 604(b). Accepting the findings of the Magistrate Judge, the Court finds that Defendant has failed to carry its burden to establish its affirmative defense by failing to establish as a matter of law that § 604(b)'s reasonable relationship requirement does not apply under the facts construed in the light most favorable to Plaintiffs.

*Guilbeau*, 719 F. Supp. 3d at 722 (citing R&R at 12-19). Defendant argues that the Court denied summary judgment "on the legal conclusion that Guilbeau was not paid on a salary basis because his compensation did not satisfy the reasonable relationship test." ECF No. 137 at 8–9. Defendant's argument ignores the factual underpinnings for the summary judgment denial as stated in the quoted text above.

While discussing *Wilson*, the Court further stated: "Defendant simply wants to disregard the dispute as to whether the daily rate it paid to Plaintiffs was part of the employees' base compensation and thus calculated under § 604(b) or whether it was instead additional compensation falling under § 604(a)." *Guilbeau*, 719 F. Supp. 3d at 722–23. And it noted: "While Defendant may ultimately provide evidence to carry its burden on its affirmative defense, it has not done so yet—particularly when the Court must view the evidence in the light most favorable to Plaintiffs." *Id*. at 723. This Court, furthermore, recognized "a valid interpretive basis for limiting 'additional compensation' under § 604(a) to circumstances where the compensation is actually additional to payment required for the normal workweek." *Id*.

14

Not only does *Venable* appear distinguishable based on its procedural posture but it also has potentially distinguishing facts. The employees in *Venable* were "reamers" who "supervised drillers" and received a salary with "job bonuses if they provided services to Smith's customers on their drilling rigs." *See* 117 F.4th at 298. This collective action involves directional drillers that Defendant contends receive similar bonuses. "The dispute in this case is whether Defendant's pay structure includes a salary plus a bonus or a salary plus a day rate." *Guilbeau*, 719 F. Supp. 3d at 712. But Defendant has not carried its summary judgment burden to show the compensation was a bonus under § 604(a) or instead part of the drillers' base pay calculated under § 604(b). *Id.* at 722. And through its motion to reconsider, it does not point to any basis to alter that summary judgment view.

Viewing the facts of this case in the light most favorable to Plaintiffs, the economic realities are that Defendant paid Plaintiffs a salary to be "on-call 24/7," while receiving a day rate as part of the base compensation for doing their job. *See id.* (summarizing facts). Other than "attending training classes," the only work performed by Plaintiffs was at the "customer's well site," thus obtaining the day rate compensation for essentially the only work performed. *Id.* The guaranteed salary thus covered being on-call and attending training classes. But the work to be done during the normal workweek was performed on the customer's well site, which would prompt compensation at a day rate. As a practical matter, employers do not pay employees solely to be on call and to attend training classes. Performing normal work on a customer's well site hardly equates to a performance incentive under § 604(a). Such work does not appear to be beyond the normal workweek as contemplated by § 604(a), thus relegating the compensation to § 604(b), if paid by the hour, shift, or day.

The critical, unanswered question on summary judgment in this case was whether Plaintiffs were paid on a salary basis. Defendant contends that "*Venable* answers that question and the

answer is yes." ECF No. 137 at 10. But Defendant does not appropriately factor *Gentry II* into the equation. Defendant also ignores that the *Venable* district court granted the employer's summary judgment on the record submitted to it, and then on appeal, the Fifth Circuit affirmed that ruling on the summary judgment record before it. The summary judgment record before this Court apparently differs because the record here left a genuine dispute of material fact as to whether the day-rate compensation paid to Plaintiffs was a bonus constituting additional compensation under § 604(a) or part of the pay for their normal workweek calculated under § 604(b). Plaintiffs recognize "the central factual dispute: whether the day rates paid to Plaintiffs were ordinary wages or bonuses constituting permissible 'additional compensation.'" ECF No. 140 at 1.

With the information before it, the Court does not see that *Venable* alters the factual dispute that led to the denial of summary judgment in this case. The procedural posture differs in this case, i.e., denial of summary judgment based on the presence of a genuine dispute of material fact as to whether the pay structure includes a bonus which avoids § 604(b). Despite Defendant's insistence otherwise, *Venable* does not provide the definitive answer that it seeks.

In reply, Defendant bluntly states: "The defendant in *Venable* is an affiliated company with STC that utilized the same compensation plan (a bi-weekly salary and a job bonus for days when the employee worked at the employer's customer's drilling rig) and, as a result, that decision is factually indistinguishable from the facts here." ECF No. 141 at 1–2. But as this Court has stressed, this case presents a factual dispute as to whether the day rate was a bonus. Because "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof," *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974), the district court in *Venable* necessarily found that the defendant had carried its burden to establish that defense when it granted the defendant's motion for summary judgment and found that the plaintiffs were exempt employees under the FLSA. Indeed, the *Venable* district court

16

recognized that the employer had the burden to prove that its employee fell within the claimed exempted category. *See Venable*, 2022 WL 895447, at \*2. In this case, Defendant did not carry that burden on summary judgment and has provided nothing in its motion to reconsider to carry that burden.

Defendant seeks to rely on a purported change in law after the Fifth Circuit has issued two subsequent opinions, one which affirms an underlying district court opinion relied upon by this Court and one which affirms an underlying district court opinion that this Court distinguished and otherwise found unpersuasive. In some respects, the two decisions seem to simply place this Court in the same position, except now it must decide between two binding (or at least potentially binding) appellate decisions. The Court does not view such unusual circumstances as warranting reconsideration. The law has changed with the intervening decisions in *Venable* and *Gentry II*. But their combined effect supports finding that justice does not require reconsideration. Defendant, furthermore, has not provided any previously unavailable evidence to support its claimed exemption. Nor does it argue or show any need to correct a clear legal error or to prevent manifest injustice. The above analysis of *Venable* and *Gentry II* highlights the lack of clarity as to the state of the law. For these reasons, reconsideration of the summary judgment ruling is not warranted.

Defendant argues that *Gentry II* is fundamentally different from this case because "the defendant's pay scheme in *Gentry* was truly a 'scheme,' or in other words, an artifice to skirt the FLSA's salary requirement." ECF No. 137 at 9 n.54. Whereas here, as in *Venable*, the employees were paid a "true salary, calculated on a weekly basis." *Id*. But as already discussed in detail and held in *Gentry II*, "payment on a 'weekly basis' requires that an employee be paid a 'weekly rate,'" and a "weekly rate compensates employees for all work performed that week." 102 F.4th at 720. As mentioned earlier, when a "guaranteed weekly salary" fails "to provide a weekly rate, it [is] not a true salary but [is] illusory." *Id*. at 721.

In reply, Defendant also argues that "[a] legally indistinguishable decision of [the Fifth Circuit] must be followed by other panels of [the Fifth Circuit] and district courts unless overruled en banc or by the United States Supreme Court." ECF No. 141 at 2 (ultimately quoting *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992)). This is a restatement of the Fifth Circuit's rule of orderliness: "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). This Court has no disagreement with that legal principle. *See*, *e.g.*, *Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 575–76 (W.D. Tex. 2019) (discussing rule of orderliness).

As should be clear from this Memorandum Opinion and Order, this Court does not view *Venable* as legally indistinguishable. There are both procedural and factual differences. Defendant seeks to invoke the rule of orderliness to compel this Court to follow *Venable* but does not consider whether *Venable* itself complied with the rule of orderliness. The fact that *Gentry II* appears applicable even on the factual differences between that case and this one presents the potential procedural nuance that *Gentry II* provides the guiding precedent under the rule of orderliness because the Fifth Circuit "adheres strictly to the maxim that one panel of the court cannot overturn another, even if it disagrees with the prior panel's holding." *Macktal v. U.S. Dep't of Lab.*, 171 F.3d 323, 328 (5th Cir. 1999). At this juncture, this case is both procedurally and factually distinguishable from *Venable*. Consequently, the Court has no reason to further explore the impact of the rule of orderliness on the matters before it.

But to be clear, even if the Court were considering *Venable* in the context of whether to grant Defendant summary judgment in the first instance, rather than on reconsideration, the Court finds the earlier *Gentry II* decision controlling. That decision, furthermore "is consistent with

*Helix*, the regulatory text, and decisions from [other] circuits" that uphold salaries that "paid employees a weekly rate." 102 F.4th at 725. In the complex regulatory scheme of §§ 602(a), 604(a), and 604(b), the importance of a weekly rate that compensates the employee for all work performed that week cannot be overstated.

For all these reasons, the Court finds no legitimate reason to reconsider the summary judgment denial.

**D. Reconsideration of Certification**

In its motion to reconsider, Defendant urges the Court to reconsider the order partially granting certification in this case. It contends that the Fifth Circuit has now rejected the salary basis argument relied upon by Plaintiffs thus dissolving the only glue holding together the collective action. For the reasons stated above, the Court does not view that rejection to be so clear on the record of this case. Accordingly, the Court finds no basis to reconsider the order partially granting certification in this case.

## II. OBEJECTIONS TO NON-DISPOSITIVE RULING

Defendant objects to an Order Administratively Reopening Case, Authorizing Notice & Staying Discovery (ECF No. 142) issued by the Magistrate Judge on May 22, 2024. More particularly, it asserts that the Magistrate Judge abused her discretion by (1) ordering the issuance of notice to putative collective action members before the Fifth Circuit has issued rulings on pending appeals in other cases with related issues; (2) allowing notice to be issued via text message in addition to mail and email; and (3) permitting a reminder notice and a ninety-day opt-in period.

The Court has reviewed the objections under the standard of review previously set out in this case in detail. *See Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 709–11 (W.D. Tex. 2024) (applying standards of 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)). "When a party appeals a magistrate judge's order, [it] must demonstrate how the order is reversible under

the applicable standard of review—*de novo* for error of law, clear error for fact findings, or abuse of discretion for discretionary matters." *Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F. Supp. 2d 675, 683 (N.D. Tex. 2013) (quoting *Jefferson-Pilot Life Ins. Co. v. Bellows*, No. 3:02-CV-1992-D, 2003 WL 21501904, at *1 (N.D. Tex. June 24, 2003)); *accord Guilbeau*, 719 F. Supp. 3d at 709–11. Whether to permit "an FLSA case to proceed as a collective action" is reviewed "for abuse of discretion." *Loy v. Rehab Synergies, LLC*, 71 F.4th 329, 335 (5th Cir. 2023). Nondispositive, pre-trial matters concerning notice to a collective action lie within "the trial court's discretion" and "[t]he bottom line is that the district court has broad, litigation-management discretion" over such matters. *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 436, 443 (5th Cir. 2021).

Upon reviewing the entirety of the objections and related briefing, the Court has no definite and firm conviction that the Magistrate Judge committed any mistake. It finds no clear error with respect to any fact finding. A de novo review of the legal conclusions shows no reason to reverse or alter the order of the Magistrate Judge. And, for all matters within the discretion of the Magistrate Judge, the Court finds no abuse of discretion. For these reasons, the Court overrules each asserted objection. As for the first asserted objection, there is no reason to further elaborate. Even though the Court stayed this action in an abundance of caution so as to fully consider the interactions of various cases, there is no general basis to withhold notice pending appellate rulings on potentially relevant cases. Besides, not only has the Fifth Circuit now issued rulings on the cases prompting the first objection, but this Court has also fully addressed asserted ramifications from those rulings.

At the outset, Court recognizes Plaintiffs' argument that Defendant waived legal arguments as to the particulars of notice by not raising them when it initially opposed issuance of notice. While Plaintiffs may have a solid basis for that argument, *see Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (recognizing precedent for finding that an objecting party "waives legal

arguments not made in the first instance before the magistrate judge"), the Court finds no need to rely on waiver to overrule Defendant's objections. Waiver aside, Defendant's objections lack merit. With respect to the particulars of notice, i.e., notice via text, reminder notices, and a ninety-day opt-in period, the Court recognizes that Defendant cites nonbinding cases that have proceeded differently. But none of these cases support finding that the Magistrate Judge committed any legal error. That other cases have proceeded differently does not mean that the Magistrate Judge abused her discretion with respect to any of these particular aspects of notice. Plaintiffs provide cases supporting the Magistrate Judge's notice particulars. Deciding between approaches utilized in non-binding cases is within the discretion of magistrate judges.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Lift Stay and Motion for Reconsideration (ECF No. 137). It grants the motion to lift stay and denies the motion for reconsideration. Accordingly, the Court **LIFTS** the stay imposed in this case, *see* ECF No. 130. In addition, the Court **OVERRULES** Defendant's Objections (ECF No. 120).

Because this case is ready for continued pretrial management by the assigned Magistrate Judge, the Court hereby returns it to the Magistrate Judge for continued pretrial management as reflected in the Referral Order (ECF No. 4).

**It is so ORDERED this 25th day of April 2025.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**