## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**TREVER GUILBEAU, individually**
**and on behalf of all others similarly situated,**
**and CHRISTOPHER O'MARA, individually**
**and on behalf of all others similarly situated,**

     *Plaintiffs*,

**v.**                                       **Case No. SA-21-CV-0142-JKP-ESC**

**SCHLUMBERGER TECHNOLOGY**
**CORPORATION,**

     *Defendant.*

## MEMORANDUM OPINION AND ORDER
## <u>GRANTING INTERLOCUOTORY APPEAL</u>

Before the Court are two motions filed by Defendant Schlumberger Technology Corporation: (1) Motion to Certify an Interlocutory Appeal (ECF No. 146) and (2) Motion to Stay (ECF No. 147). Plaintiffs have filed a combined response (ECF No. 151) to the motions and Defendant has filed a combined reply (ECF No. 153). The Court previously granted a motion to expedite ruling on these motions. *See* ECF No. 150.

This is the second attempt by Defendant to obtain an interlocutory appeal. *See* ECF No. 102. Defendant previously sought to appeal a Memorandum Opinion and Order Accepting Report and Recommendation ("R&R") of United States Magistrate Judge (ECF No. 101). In accepting the R&R, the Court, among other things, denied Defendant's Partial Motion for Summary Judgment. *See Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 731 (W.D. Tex. 2024), *reconsideration denied*, No. SA-21-CV-0142-JKP-ESC, 2025 WL 1213026 (W.D. Tex. Apr. 25, 2025). Defendant now seeks to appeal the Memorandum Opinion and Order (ECF No. 144) that denied reconsideration of the prior summary judgment ruling. Based upon *Venable v. Smith International, Inc.*, 117 F.4th 295 (5th Cir. 2024), Defendant moved for reconsideration of the Court's

denial of summary judgment and other orders. *See Guilbeau v. Schlumberger Tech. Corp.*, No. SA-21-CV-0142-JKP-ESC, 2025 WL 1213026, at *1 (W.D. Tex. Apr. 25, 2025).

Defendant contends that *Venable* provides the definitive answer to resolve this case fully in its favor. This Court, however, declined to apply *Venable* over another intervening Fifth Circuit opinion, *Gentry v. Hamilton-Ryker IT Sols., LLC [hereinafter Gentry II]*, 102 F.4th 712 (5th Cir. 2024), which the Court viewed as "fully supportive of this Court's prior denial of summary judgment." *Guilbeau*, 2025 WL 1213026, at *5. Given both intervening decisions of the Fifth Circuit, coupled with *Gentry II* (May 24, 2024) arriving before *Venable* (September 4, 2024), the Court did not view *Venable* as definitive enough to warrant reconsideration or granting summary judgment for Defendant. *See*, *generally*, *Guilbeau*, 2025 WL 1213026, at *4–10. This does not mean that the Court lacked all concern as to how *Venable* fits with *Gentry II*. To the contrary, even with the denial of reconsideration, the Court harbored some concern that *Venable* could be construed in a manner that provides a pathway to successful summary judgment for Defendant. It considered sua sponte certifying the matter for interlocutory appeal but in the end decided that if such appeal should be forthcoming under the circumstances of this case, it should come through full briefing from both sides upon a request of Defendant—a party that has shown no hesitancy in presenting matters to the appellate court.

Predictably, Defendant has sought interlocutory appellate review. For the reasons stated herein, the Court finds that the continuing shifting legal landscape warrants granting leave for Defendant to file an interlocutory appeal. Because granting such leave is ultimately within its sound discretion, the Court will not belabor the standard for obtaining such leave. It did not reach this conclusion lightly and found encouragement in multiple principles of law. First, "[t]he propriety of interlocutory appeal may be valid even if the court is 'confident in its decision.'" *Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-CV-208-Z-BR, 2023 WL 5167606, at *3 (N.D. Tex. June

28, 2023) (quoting *Hopkins v. Cornerstone Am.*, No. 4:05-CV-332-Y, 2007 WL 9772306 (N.D. Tex. Aug. 1, 2007)). Second, granting leave for an interlocutory appeal merely provides the appellate court with the discretionary opportunity to permit the appeal. *See* 28 U.S.C. § 1292(b). Should the Fifth Circuit decline to take up the appeal, its reasoning for declining to do so could itself be enlightening to the parties, other litigants, and the courts. Third, the Court's delineation of issues or questions for appeal do not limit the scope of appeal—the appellate court's discretion is to accept the order deemed worthy of interlocutory appeal and such discretion is not constrained by issues the district court deems worthy of early review. *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398 (5th Cir. 2010) (en banc). The appellate court may consider any material issue in the certified order, even if omitted from a list of certified questions. *Id*. The issues or questions reviewed must only be material to the certified order. *Id*.

Before delving into specific issues that warrant interlocutory appeal in this case, the Court sets the backdrop for its various rulings and attempts to elucidate the reasons for its chosen path. This is not done to show whether the path is right or wrong. At the end of the day, that determination lies within the capable hands of the Fifth Circuit whether it examines the issues through interlocutory appeal now or through a later appeal at the conclusion of this case.

**A. Background and Shifting Legal Landscape**

As readily apparent from decisions of the last few years, the legal landscape has been shifting in this case nearly since Plaintiffs' initial filing in February 2021. The first monumental shift occurred in September 2021 when the Fifth Circuit issued an en banc decision, that was later affirmed by the Supreme Court in 2023. *See Hewitt v. Helix Energy Sols. Grp., Inc. [hereinafter Hewitt]*, 15 F.4th 289 (5th Cir. 2021), *aff'd*, 598 U.S. 39 (2023). The Supreme Court aptly summarized the matters leading to its affirmance:

Hewitt filed this action under the FLSA to recover overtime pay. Helix asserted in response that Hewitt was exempt from the FLSA because he qualified as a bona

fide executive. The dispute on that issue turned solely on whether Hewitt was paid on a salary basis; Hewitt conceded that his employment met the exemption's other requirements (the salary-level and duties tests). The District Court agreed with Helix's view that Hewitt was compensated on a salary basis, and accordingly granted the company summary judgment.

The Court of Appeals for the Fifth Circuit, sitting en banc, reversed that judgment, deciding that Hewitt was not paid on a salary basis and therefore could claim the FLSA's protections. The 12-judge majority first held that a daily-rate employee (like Hewitt) does not fall within § 602(a) of the Secretary's regulations. That section, the court reasoned, covers only employees whose compensation is paid on a weekly or less frequent basis, without regard to the number of days or hours worked—the very opposite of a paid-by-the-day employee. Such daily-rate workers, the court continued, can qualify as salaried only through the special rule of § 604(b). But Hewitt's compensation did not satisfy § 604(b)'s conditions; indeed, the court noted, Helix does not even purport to have met them. The court thus concluded that Hewitt, although highly paid, was not exempt from the FLSA. Six judges dissented in two opinions. The more expansive dissent argued that Hewitt's compensation satisfied the salary basis test of § 602(a). It further concluded that § 604(b) is not applicable at all to high-income employees—i.e., those falling within the HCE rule because they earn over $100,000.

We granted certiorari, and now affirm.

*Helix Energy Sols. Grp., Inc. v. Hewitt [hereinafter Helix]*, 598 U.S. 39, 48 (2023) (citations and internal brackets and quotation marks omitted).

To the extent their reasoning transcends the facts of the case, these cases remain the most pertinent to the issues before this Court. While neither case is directly on point, this Court has found that the factual differences do "not make *Helix* distinguishable in all respects" and even though "nothing in *Helix* . . . directly addresses the type of hybrid compensation structure at issue in this case . . . [t]hat factual distinction does not eliminate the reasoning of the Supreme Court, especially given the en banc statements of the Fifth Circuit that were under review." *Guilbeau*, 719 F. Supp. 3d at 717. The Court similarly found the *Hewitt* "reasoning transcends the particular factual differences" between this case and that one. *Id.*

Faced with an uncertain area of law, the Magistrate Judge found a Southern District of Texas case particularly persuasive. *See* R&R at 15-16 & n.3 (recommendation of Mag. J. relying

4

on *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022) *adopted by* 2022 WL 889276 (S.D. Tex. Mar. 25, 2022)). The Magistrate Judge even recognized that an appeal in *Gentry* "could be potentially dispositive" of the issues before this Court. *Id*. at 15 n.3. Nevertheless, as of July 2023, the Magistrate Judge viewed the district court *Gentry* opinion the most persuasive of the non-binding cases before the Court.

Seventeen days after the R&R in this case, "the Fifth Circuit affirmed the judgment of the [*Gentry*] district court 'essentially for the reasons stated in the magistrate judge's thorough and exhaustive report, adopted by the district court as its opinion.'" *Guilbeau*, 719 F. Supp. 3d at 720–21 (quoting *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 22-40219, 2023 WL 4704115, at *1 (5th Cir. July 24, 2023) (per curiam)). In accepting the R&R in this case, this Court noted that, "had the Fifth Circuit not withdrawn that affirmance, the review of the R&R may have been much simpler." *Id*. at 722. But when this Court accepted the R&R on de novo review, it "remain[ed] in essentially the same circumstances that existed before the Magistrate Judge," i.e., lack of a definitive appellate ruling on the *Gentry* appeal. *See id*. This Court still found the district court *Gentry* decision persuasive when it accepted the R&R in early March 2024 after an exhaustive de novo review. *See id*. In doing so, it considered various other cases that Defendant presented as supporting a contrary outcome.

The next month, the Court denied Defendant's first motion for interlocutory appeal. *See Guilbeau v. Schlumberger Tech. Corp.*, No. SA-21-CV-0142-JKP-ESC, 2024 WL 1953142, at *4 (W.D. Tex. Apr. 16, 2024) (found at ECF No. 109). It did so for several interrelated reasons. First, Plaintiffs exhibited "a better understanding of the nuances of the recommendation of the Magistrate Judge and the Court's acceptance of the recommendation." *Id*. at *2. Two, "the order sought to be certified d[id] not concern a simple or pure question of law"; instead summary judgment was denied "because Defendant had not carried its burden to show that Plaintiffs are exempt employees

as a matter of law." *Id.* Three, despite its steadfast "disagreement with this Court's rulings," Defendant had "not convinced the Court to certify the order for interlocutory appeal." *Id.* Four, although Defendant presented two more recently decided nonbinding cases that it contended supported its position on the regulatory interpretation at issue in this case, the cases "provide[d] no support for granting an interlocutory appeal." *Id.* As noted at that time:

> This Court understands the complexities of the regulatory interpretation and respects that reasonable minds may differ on the proper interpretation. But as thoroughly discussed in the order accepting the recommendation of the Magistrate Judge through de novo review, this Court's interpretation does not render any regulatory language superfluous while simultaneously remaining consistent with Supreme Court and Fifth Circuit precedent.

*Id.* The Court also noted that, although "additional Fifth Circuit guidance on the regulatory interpretation would be helpful, multiple appeals are already pending before the Circuit that could shed valuable light on the matter. Providing another case upon which the Fifth Circuit can weigh in on the subject does not appear warranted." *Id.* At that time, the Fifth Circuit had issued neither of the appellate decisions now vying for supremacy in the context of this case.

Three days after this Court denied the first request for interlocutory appeal, the Fifth Circuit denied a petition for mandamus relief as premature. *See* ECF No. 112 (copy of judgment issued as the mandate denying mandamus). The Fifth Circuit explained that the mandamus "filings are premature and based on a misunderstanding of the district court's order." *Id.* at 2. The Circuit recognized that this Court's order required "Plaintiffs to inform the district court whether they desire to move forward with, and incur the potentially significant expense of, issuing notice, or whether they prefer to wait until [the Fifth Circuit] decides pending cases that may directly impact the merits of the Plaintiffs' claims." *Id.* at 3.

In early May 2024, Plaintiffs notified the Court of their intent to proceed with notice. *See* ECF No. 114. This prompted the Court to return the case to the Magistrate Judge who thereafter reopened the case, authorized notice, and stayed discovery. *See* ECF No. 118. Two days after the

order of the Magistrate Judge, on May 24, 2024, the Fifth Circuit issued *Gentry II*. *See* 102 F.4th

712. As previously noted, this Court has viewed that decision as "fully supportive" of the path

forged in this case. *Guilbeau*, 2025 WL 1213026, at *5. At the time the Circuit decided *Gentry II*

there was no *Venable* appellate decision to consider. Thus, at that time, *Gentry II*, in conjunction

with the reasoning in *Hewitt* and *Helix*, still provided the most persuasive avenue for interpreting

the complicated regulatory provisions and applying the law to the facts of this case, as viewed in

the light most favorable to the Plaintiffs. In fact, as a published decision of the Fifth Circuit, the

case was binding authority absent some basis it did not apply.

On June 5, 2024, the Fifth Circuit temporarily stayed the order of the Magistrate Judge

pending further order regarding a second petition for writ of mandamus. *See* ECF No. 126 (copy

of order). By unpublished order dated June 13, 2024, the Fifth Circuit denied mandamus because

Defendant had established no "clear and indisputable" right to the writ. *See* ECF No. 128 at 2

(copy of order). The Fifth Circuit went on to note that "Schlumberger's petition—and, it appears,

this entire case—hinges on which of two alternative regulations applies to determine whether em-

ployees like Guilbeau are with the HCE [(highly compensated employees)] exemption." *Id*. at 3

(citing *Gentry II* as describing the two alternative routes). It identified the parties' competing ar-

guments as whether Plaintiffs were "paid 'on a weekly, or less frequent basis' and therefore 29

C.F.R. §§ 561.602(a) and 541.604(a) apply" or whether they were "paid 'on an hourly, a daily or

a shift basis" and therefore 29 C.F.R. § 541.604(b) governs." *Id*. The Fifth Circuit found that "the

answer to this dispositive question is far from clear or indisputable." *Id*.

While recognizing that Defendant's "position may ultimately prove to be the correct one,"

the Fifth Circuit found "the dispositive question in this case is still up for debate." *Id*. (citing con-

flicting opinions of *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170, 1176 (10th Cir. 2023) and

*Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023)

(unpublished opinion), *cert. denied*, 144 S. Ct. 820 (2024) on one side versus *Gentry II* on the other side). In mentioning *Gentry II*, the Fifth Circuit recognized that it was "factually dissimilar" to the *Wilson* decision. *See id*. Additionally, it noted that "the same question presented in this case is at issue in two other cases pending before our court on plenary review." *Id*. (citing *Venable* and another case). Finally, the Fifth Circuit included a cautionary footnote as to a motion to stay pending in this Court. *See id*. at 3 n.2.

This Court took appropriate recognition of the cautionary footnote when it stayed this case the same day the Fifth Circuit denied mandamus. *See Guilbeau v. Schlumberger Tech. Corp.*, No. SA-21-CV-0142-JKP-ESC, 2024 WL 4251341, at *1 (W.D. Tex. June 13, 2024) (found at ECF No. 130). This Court recognized that it had not yet considered *Gentry II* "in the context of this case," but it had "fully considered the underlying *Gentry* decision that the Circuit affirmed in all relevant respects pertinent to this case." *Id*. It further noted that, like *Gentry II*, it had "also found *Wilson* and *Hebert* distinguishable," while also distinguishing the underlying *Venable* decision to a lesser extent. *Id*. Although *Gentry II* appeared supportive of the path forged in this case, this Court proceeded prudently and cautiously by staying the case pending further order as it considered objections and the interactions of various cited cases. *See id*. This would include the predicted more definitive answer in the coming *Venable* appellate decision.

On September 4, 2024, the Fifth Circuit issued the *Venable* decision that Defendant maintains requires this Court to grant summary judgment in its favor. In October 2024, the parties filed notices that the two cases pending at the Fifth Circuit had been resolved. *See* ECF Nos. 135 and 136. Before the Court issued a written order on the matters then pending in this case, Defendant moved for reconsideration in November 2024. *See* ECF No. 137. The motion became ripe just before the New Year. *See* ECF No. 141 (reply filed December 30, 2024).

Relying on the cautionary footnote in part, Defendant argued that this case is the same as

*Venable*. In denying reconsideration, this Court found:

> But Defendant reads too much into the mandamus denial. The same question does not necessarily receive the same answer under different facts or circumstances, i.e., the procedural posture of a case. And the unpublished order does not control this Court's determination as to whether the later *Venable* opinion considers the same legal question under the same or similar facts in the same procedural posture. At this point, this Court is in the best position to gauge the similarities and dissimilarities between this case and the now rendered *Venable* decision.

*Guilbeau*, 2025 WL 1213026, at *2. Although the "Circuit has now added to the body of FLSA caselaw by issuing *Venable* . . . that case does not necessarily displace" *Gentry II*, which may still provide appropriate guidance." *Id.*

## B. Uncertainty in wake of *Venable*

While Defendant views *Venable* as the definitive answer in this case as suggested in the denial of the second petition for mandamus, the *Venable* decision leaves some uncertainty by not distinguishing the earlier *Gentry II* decision as it affirmed the granting of a motion for summary judgment on the facts presented in the case before it. *Gentry II* unquestionably has some factual distinctions from the case now before the Court. But its underlying principles and rationales have resonated as lights upon this Court's chosen path from the district court's decision through the Fifth Circuit affirmance. With each shift of the legal landscape, the *Gentry* district and appellate cases remained the guiding light. However, the possibility still existed that *Venable* would enlighten the path even further—perhaps providing a definitive answer as to Defendant, because of its affiliation with the defendant in *Venable* and a pay structure that has been characterized as identical. But while this Court waited for a beacon of enlightenment as to hybrid pay structures through *Venable*, the published decision left questions as to how it applies in this case given the prior decision in *Gentry II*.

*Venable* includes scant details as to comparing the facts of the two cases. The *Venable* plaintiffs are reamers, who supervise drillers. 117 F.4th at 298. Plaintiffs here are the supervised

drillers, which might be a factual distinction depending on their compensation schemes. The *Venable* "compensation scheme for reamers was bifurcated—an annual salary and daily-rate job bonuses." *Id*. That sounds a lot like the compensation scheme here—although here, the Court has recognized a genuine dispute of material fact as to whether Plaintiffs were paid bonuses for work beyond the normal workweek or whether the non-salary compensation was part of their base compensation calculated on a daily rate. Further, courts need more than apparent similarities between compensation plans when addressing whether an employer has carried its summary judgment burden to establish its affirmative defense that the employee plaintiffs are exempt.

If the compensation plan here is the same or substantially like the one in *Venable*, then a question left unanswered is how *Venable* fits with *Gentry II*'s focus on the employer paying "a true weekly rate," which it defined as a rate that "compensates employees for all work performed that week." *See* 102 F.4th at 720 (second quote), 724 (first quote). Further, Defendant has contended that this case is like *Wilson*, but *Gentry II* explained that, to the extent its "interpretation is in tension with" *Wilson*, it viewed the Tenth Circuit as "overlook[ing] a key aspect of *Helix*," i.e., "whether the salary, regardless of the frequency with which it was distributed, provided a true weekly rate." *Id*. at 724 (first and second quotes), 725 (third quote). And it noted that "the Tenth Circuit's reasoning is near-identical to the dissent in *Helix*." *Id*. at 725 n.69. *Venable* neither discussed *Wilson* nor shed further light on that opinion's persuasiveness or lack thereof.

*Gentry II* also explained that "it is irrelevant that the guaranteed sum satisfied the salary level test if [the employer] nonetheless failed to provide payment on a salary basis." *Id*. at 721. It found such an "argument echoes the *Helix* dissent." *Id*. This argument also echoes the dissent in the en banc Fifth Circuit decision affirmed by *Helix*. *See Hewitt*, 15 F.4th at 307 (Jones, J., dissenting). In discussing the salary basis test, *Venable* similarly notes that "Plaintiffs are paid an annual salary which is not subject to reduction regardless of the number of hours or days worked

and that salary more than satisfies the requisite guaranteed minimum weekly salary requirement." 117 F.4th at 299–300 (internal quotation marks omitted).

Naturally, binding majority opinions guide the lower courts. The preceding paragraphs create reasonable hesitancy for applying *Venable* as the definitive answer favoring Defendant.

## C. Misstatements and Arguments of the Parties

In their response, Plaintiffs make a statement that might be misconstrued. They state that this "Court also noted that *Venable* was decided before *Gentry II* and so did not explore the issue of whether the presumed bonuses were for work within or beyond the normal workweek." *See* ECF No. 151 at 6–7. To be clear, this Court was noting that the district court decision in *Venable v. Schlumberger Ltd.*, No. 6:16-CV-00241 LEAD, 2022 WL 895447 (W.D. La. Mar. 25, 2022) was decided before *Gentry II*, not that the Fifth Circuit decided its *Venable* decision before deciding *Gentry II*. While this clarification is likely unnecessary and seems to have no impact on Plaintiffs' arguments, the Court prefers to have a clear record should this case ultimately reach an appeal.

It is also sensible for the Court to address two notable misstatements by Defendant in its current motion for leave to appeal. First, Defendant contends: "The Court determined that the Magistrate Judge's finding that Plaintiffs were paid on a day rate basis was a factual finding subject to clearly erroneous review, and the Court could not say that the conclusion was clearly erroneous." *See* ECF No. 146 at 2. It submits "that this is actually a conclusion of law subject to de novo review." *Id.* at 2 n.2.

As already recited in this order, the Court accepted the summary judgment R&R after conducting a de novo review. In accepting the recommendation of the Magistrate Judge, the Court clearly articulated that its review was de novo as to the recommended disposition of the dispositive summary judgment motion, whereas its review was for clear error or contrary to law for

11

nondispositive matters. ECF No. 102 at 2–6. Because the Magistrate Judge addressed both dispositive and nondispositive matters in one filing, the undersigned's acceptance applied differing standards of review depending on the matter addressed. When considering objections to the recommendation, the Court conducted a de novo review. *See id*. at 8–9, 17, 22. It recognized that the parties' disagreement as to "whether the second component [of the hybrid pay structure] is payment as part of the employees' base compensation or whether it is for duties outside the normal workweek." *Id*. at 13. As required for purposes of summary judgment, the Court viewed the summary judgment evidence in the light most favorable to Plaintiffs and found a genuine dispute of material fact that precluded entry of summary judgment on Defendant's affirmative defense that Plaintiffs were exempt employees.

The Court described the dispute multiple times. *See id*. at 7 ("The dispute in this case is whether Defendant's pay structure includes a salary plus a bonus or a salary plus a day rate."); 7–8 ("the parties' dispute essentially boils down to whether the day-rate component of the relevant pay structure comprises part of Plaintiffs' base compensation for work during the normal workweek. If it does, then the compensation does not qualify as additional compensation in the form of a bonus."); 13 ("This case involves a hybrid pay structure that has an undisputed salary component along with a second component that may or may not relate to the Plaintiffs' base compensation— the parties simply disagree whether the second component is payment as part of the employees' base compensation or whether it is for duties outside the normal workweek."); 24 ("There remains a dispute as to whether the day-rate portion of Plaintiffs' compensation was part of the base compensation or constituted additional compensation within the scope of § 604(a) and thus outside the purview of § 604(b)."); 24 ("Defendant simply wants to disregard the dispute as to whether the daily rate it paid to Plaintiffs was part of the employees' base compensation and thus calculated under § 604(b) or whether it was instead additional compensation falling under § 604(a)."); 26 ("A

dispute remains as to whether Defendant's relevant pay structure is a hybrid salary plus bonus, which would not invoke § 604(b), or a hybrid salary plus a daily rate used to calculate the combined base compensation for a normal workweek for Plaintiffs."). This Court has made no determination as a matter of law regarding the salary basis element of Defendant's affirmative defense. It instead has found:

> Defendant has not carried its burden to establish its affirmative defense. Viewing the facts in the light most favorable to Plaintiffs, a reasonable finder of fact could return a verdict for Plaintiffs despite the asserted affirmative defense. Defendant has not shown that it is entitled to judgment as a matter of law on its affirmative defense. Through the lens of summary judgment, the facts do not show that Defendant paid Plaintiffs on a salary basis as required for them to be exempt employees.

*Id*. at 34.

Notably, "the 'determination as to whether an employee is exempt under the [FLSA] is primarily a question of fact' typically better suited for summary judgment." *White v. U.S. Corr., LLC*, 996 F.3d 302, 310 (5th Cir. 2021). (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)). This Court considered the exemption issue through summary judgment but found a factual dispute that precluded summary judgment in favor of Defendant.

While Defendant labels part of Plaintiffs' compensation package as a bonus, Plaintiffs provide evidence that the compensation package includes a salary plus a day rate. Although the nature of a payment for purposes of FLSA exemptions "is a question of law that relies on how a payment works in practice, rather than what it is called," *Taylor v. HD & Assocs., LLC*, 45 F.4th 833, 839 (5th Cir. 2022) (per curiam), there may be underlying questions of fact that must be determined before making a conclusion as a matter of law. And that appears to be the situation in this case. The question of fact is whether the non-salary portion of Plaintiffs' compensation package is part of the employees' base compensation subject to § 604(b) or additional compensation within the meaning of § 604(a). As framed thus far in this case, this underlying factual dispute must be

resolved before the Court can determine as a matter of law whether Plaintiffs are properly considered as exempt from the overtime pay provisions of the FLSA.

Even with the foregoing factual dispute, Defendant maintains that the facts are undisputed. *See* ECF No. 146 at 4. It contends that "Guilbeau admits receiving both a bi-weekly salary plus job bonuses that accrued for each day billable to a customer." *Id*. However, the underlying nature of these "bonuses" as labeled by Defendant appear very much in dispute.

Defendant also quarrels that this Court's analysis differs from other cases. *Id*. at 7. Analysis often differs based on the facts before a particular court. The Court has recognized and addressed each of the other cases that Defendant urges the Court to follow. It has declined to do so under the summary judgment evidence before it. While reasonable minds may certainly differ in their analysis of the complex issues presented in this case, as Plaintiffs point out, this Court has attempted to harmonize "all relevant appellate opinions," *see* ECF No. 151 at 2. Indeed, the Court has engaged an analytical framework that avoids making regulatory language superfluous and unnecessary. *See Guilbeau*, 719 F. Supp. 3d at 719–20; *Guilbeau*, 2024 WL 1953142, at *2.

For all this Court's efforts to harmonize various cases, *Venable* presents a new challenge as a published, binding opinion that Defendant contends involves an identical pay structure to the case now before this Court. Although this Court found the case insufficient to reconsider its prior acceptance of the summary judgment denial, the case involves such a closely related issue that appellate review may materially advance the ultimate termination of this litigation.

In its reply, Defendant states the relevant question for this case as:

The relevant question here is if an individual, who is paid a salary that complies in all respects with 29 C.F.R. § 541.602(a), can be paid additional compensation on any basis as allowed by 29 C.F.R. § 541.604(a) and the reasonable relationship test does not apply, as the Fifth Circuit held in *Venable*, or if that additional compensation must satisfy 29 C.F.R. § 541.604(b)'s reasonable relationship test if the amount of the additional pay is calculated on an hourly, daily, or shift basis (unless it is for work outside the regular workweek), as the Fifth Circuit held in *Gentry II*. This question of which decision controls is a question of law and not one of fact.

14

Reply at 2–3.

Notably, "any basis allowed" by § 604(a) seems to exclude additional compensation for work within the normal workweek, *see Guilbeau*, 719 F. Supp. 3d at 715–19, and *Venable* does not address that apparent exclusion even though it recognizes that "§ 604(a) expressly contemplates hourly compensation for work beyond the normal work week," 117 F.4th at 300. *Gentry II*, on the other hand, dealt extensively with the concepts of within or beyond the normal workweek. *See* 102 F.4th at 720–23. And, while one could distinguish *Gentry II* "on grounds that it involved a predetermined sum (salary) calculated on an hourly, rather than weekly, rate, such distinction ignores the important recognition and discussion of 'beyond the normal workweek' and its requirement that 'a weekly rate compensates employees for all work performed that week.'" *See Guilbeau*, 2025 WL 1213026, at *7 (quoting *Gentry II*, 102 F.4th at 719–20). As stated previously, "*Gentry II*'s applicability appears to go well beyond circumstances where the employee's salary is calculated on an hourly, rather than weekly basis." *Id*. In any event, despite the noted factual dispute, this Court agrees that this case involves a potentially controlling issue of law depending on the interpretation of *Venable* versus *Gentry II*.

Defendant, furthermore, has adamantly argued that § 604(b) only applies when an employee is paid solely on an hourly, daily, or shift basis; otherwise, the section is simply immaterial. *See Guilbeau*, 719 F. Supp. 3d at 715 (addressing argument). Defendant has also consistently argued that § 602(a) applies when the employee is paid through a hybrid compensation structure that includes a guaranteed/preset salary (which cannot be reduced) with the opportunity to earn additional income on top of the guaranteed salary. *See id*. at 715–16 (same). In accepting the summary judgment R&R, this Court stated:

> Absent binding precedent directly on point, the Court flatly rejects Defendant's position that § 604(b) applies only when an employee's compensation consists of a day rate and a day rate only. Similarly, it rejects the notion that § 602(a) alone controls the salary basis issue of this case. This case does not involve a salary only

> pay structure that necessarily invokes § 602(a). Nor does it involve a day-rate pay structure that necessarily invokes § 604(b). This case involves a hybrid pay structure that has an undisputed salary component along with a second component that may or may not relate to the Plaintiffs' base compensation—the parties simply disagree whether the second component is payment as part of the employees' base compensation or whether it is for duties outside the normal workweek. And viewing the facts in the light most favorable to Plaintiffs, § 604(b) applies.

*Id*. Standing alone, *Venable* could support Defendant's arguments. In other words, standing alone, *Venable* could be the missing binding precedent that is directly on point.

However, because *Venable* does not stand in isolation, this Court did not view it as sufficient of itself to grant reconsideration given potential differences in the evidence presented by the respective defendants—one carrying its burden on its affirmative defense, versus Defendant here who did not. Still, this Court recognized the potential of Defendant carrying its burden through a second summary judgment motion should Defendant present a basis for the Court granting leave for a second motion. The legal landscape has changed since the denial of summary judgment in this case. Has it changed enough to alter course is the crucial question. Although this Court may be in a better position to answer that question than the panel of the Fifth Circuit that denied the second mandamus petition, an interlocutory appeal would provide the best position for gauging the similarities and dissimilarities between this case and the now rendered *Venable* decision.

**D. Interlocutory Appeal**

Section 1292(b) of Title 28 of the United States Code permits a district court to certify an order for interlocutory appeal when the Court is "of the opinion that [its] order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Although this Court has found that a genuine dispute of material fact precluded entry of judgment as a matter of law for Defendant, *Venable* has now presented a potential interpretation of the § 602(a) and § 604(b) dichotomy that could render the factual dispute immaterial.

If *Venable* indeed stands for the proposition that § 602(a), either alone or in conjunction with § 604(a), provides the relevant regulatory provision when a hybrid pay structure combines a weekly salary with pay calculated on a day rate for work even if that pay is for work within the normal workweek, then the factual dispute in this case falls aside. This appears contrary to the Supreme Court's finding that § 604(b) "confirms the plain-text, weekly-rate only reading of § 602(a)." *See Guilbeau*, 719 F. Supp. 3d at 715 (quoting *Helix*, 598 U.S. at 57). It also seems to make language in § 604(a)—"beyond the normal workweek"—superfluous and unnecessary. *See id*. at 719. But these are legal issues that can be addressed on interlocutory appeal should the Fifth Circuit deem it warranted.

If *Venable* indeed stands for the proposition that § 604(b) is simply immaterial when an employer utilizes a pay structure like the one used in this case, then the factual dispute in this case does not matter. The factual dispute here concerns whether the compensation provided above the guaranteed salary qualifies as a bonus under § 604(a) or additional base compensation calculated under § 604(b).

Regardless of the timing of any future appeal, this Court is confident that the Fifth Circuit will shed valuable light on the difficult issues of this case, including whether this Court is right or wrong on its focus on the regulatory language appearing to require that additional compensation be for work "beyond the normal workweek." But at this point, the Court finds all requirements of 28 U.S.C. § 1292(b) satisfied. While a factual dispute appears to exist, this case still involves a controlling question of law presented through *Venable*'s potential interpretation of the relevant regulations. One could interpret *Venable* in a way that renders the factual dispute immaterial. Further, although hotly disputed by the parties, given the numerous decisions in this case, as well as the shifting legal landscape, there is a substantial ground for difference of opinion. This Court has strived to weave an interpretive path of the regulations in a manner that holds true to their text

17

while not rendering text as superfluous. In this complicated area, reasonable minds may differ on the proper interpretation.

     An immediate appeal, furthermore, will materially advance the ultimate termination of this litigation. If, on interlocutory appeal, the Fifth Circuit agrees that *Gentry II* provides the proper path despite its own factual differences from this case, then the parties can proceed with full understanding of the legal implications of such agreement. As stated by a sister court:

> Furthermore, although an order affirming this Court's decision would not terminate the litigation, it would provide certainty to the parties. The parties would be proceeding with phase two of this litigation knowing for certain that Plaintiffs' [exempt] status . . . is the law of this case. That undoubtedly would assist in the resolution of the remainder of issues in this case and may assist in settlement negotiations between the parties.

*Hopkins v. Cornerstone Am.*, No. 4:05-CV-332-Y, 2007 WL 9772306, at *3 (N.D. Tex. Aug. 1, 2007)). And should the Fifth Circuit interpret *Venable* as providing a non-distinguishable definitive path to grant summary judgment for Defendant, then this case will be effectively over.

     Defendant asks the Court to certify its order denying reconsideration for interlocutory appeal. While an appeal of that order might provide the needed clarity, appealing a denial of reconsideration differs from a denial of summary judgment. To provide the Fifth Circuit the opportunity to provide the most comprehensive clarification of the legal issues in this case, the Court hereby certifies both orders (ECF Nos. 101 and 144) for interlocutory appeal. While that certification satisfies § 1292(b), the Court will later identify specific legal questions that it views as proper for review on interlocutory appeal—knowing full-well that the Fifth Circuit is not constrained by any certified question.

## E. Stay

     Defendant also moves for a stay of this case pending the interlocutory appeal. While the district courts may certify an order for interlocutory appeal under § 1292(b), the statute also specifically provides: "That application for an appeal hereunder shall not stay proceedings in the

district court unless the district judge or the Court of Appeals or a judge thereof shall so order." One manifest purpose of § 1292(b) is "to assist in the speedy conclusion of litigation." *Hopkins*, 2007 WL 9772306, at *6. While in general, "allowing for the piecemeal appeal of each and every interlocutory order from a trial court would be counter-productive to that goal," the statute "recognizes that in certain exceptional circumstances allowing an appeal from an interlocutory order will promote the speedy resolution of a case." *Id*. In essence, the statute has an apparent "bias against staying a case pending an interlocutory appeal, and a court should only stay a case while an interlocutory appeal is being taken in limited and exceptional circumstances." *Id*.

Courts "consider four factors in deciding whether to grant a stay pending appeal." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (listing four factors identified in *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)). The Supreme Court identified four factors as "the 'traditional' standard for a stay" and held that they "govern a request for a stay pending judicial review." *Nken*, 556 U.S. at 425–26. The traditional four factors are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. at 426. Courts have applied these factors in the context of staying a case pending an interlocutory appeal under § 1292(b). *See, e.g.*, *Hunt, Gather LLC v. Andreasik*, No. 1:23-CV-627-RP, 2023 WL 4853400, at *6 (W.D. Tex. July 27, 2023). Both parties rely on these four factors in this case. *See* ECF No. 147 at 7; ECF No. 151 at 8-9.

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433. "Whether to grant a stay is committed to [the Court's] discretion." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). And courts recognize that "[t]he first two factors are the most critical." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228 (5th Cir. 2020) (quoting *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (per curiam)). "The

proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Defendant seeks a stay to avoid providing a list of putative collective action members and the issuance of notice. *See* ECF No. 147 at 1. It compares providing such a list to be the same as "the cat is out of the bag" and "cannot be placed back in it." *Id*. It argues that in such scenarios, courts issue stays pending the outcome of review. *Id*. at 1 & n.1 (citing cases involving privileged documents, a deposition transcript, and production of documents). None of its cited cases involve the FLSA or § 1292(b). Furthermore, production of privileged documents or work product differs materially from the circumstances here. Permitting notice to move forward is not a case of letting the cat out of the bag.

Defendant again broadly characterizes the issue of notice as violative of *Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430 (5th Cir. 2021). But this Court again disagrees. *See Guilbeau v. Schlumberger Tech. Corp.*, No. SA-21-CV-0142-JKP-ESC, 2024 WL 1953142, at *3 (W.D. Tex. Apr. 16, 2024) (rejecting Defendant's argument based on *Swales*). The Court has already determined that putative members of the collective action are similarly situated. Following *Swales*, the Court "rigorously scrutinize[d] the realm of 'similarly situated' workers," and did "so from the outset of the case, not after a lenient, step-one 'conditional certification.'" *See Swales*, 985 F.3d at 434 (imposing that early role of the district courts). As recognized in *Swales*, such procedure provides the district courts the basis "to determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id*. Although "[t]hese bedrock rules . . . define and delimit the district court's discretion," *see id*., this Court followed *Swales* and permitted certain similarly situated individuals to proceed as a collective action. It did so while "avoid[ing] endorsing the merits of the case." *See id*. at 440. And it retained its judicial neutrality in doing so. *See id*. at 436.

Finding that the employer defendant has not carried its burden on its affirmative defense does not endorse the merits of the case. It merely shows that the employer is not entitled to summary judgment. This case does not present a situation where the court appears to endorse the merits of the litigation by means of facilitating notice. The Court has not broadly defined the collective action to include workers who are not similarly situated to the named Plaintiffs in that some may not be potential participants in the defined collective action. Both the named Plaintiffs and the putative members of the collective action stand or fall on the same basis. That "notice can only go to potential participants," *see id.* at 441 (citation and internal quotation marks omitted), is not violated when all members of the collective action, both named Plaintiffs and putative members, may be merely potential participants in that an affirmative defense may at some future time preclude the collective action as a whole from having a viable claim. The Court did not refuse to consider evidence regarding Defendant's affirmative defense—Defendant simply did not carry its burden. This is not a case where "alerting those who cannot ultimately participate in the collective merely stirs up litigation." *See id.* This is so, because all noticed putative members can participate in the collective but their participation, like those of the named Plaintiffs and every putative member, may be contingent on surviving the employer's affirmative defense. This is not a case where the Court ignored any evidence of an asserted threshold matter. *Swales* stated the distinction succinctly:

> Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits. Rather, addressing these issues from the outset aids the district court in deciding whether notice is necessary. And it ensures that any notice sent is proper in scope—that is, sent only to potential plaintiffs. When a district court ignores that it can decide merits issues when considering the scope of a collective, it ignores the "similarly situated" analysis and is likely to send notice to employees who are not potential plaintiffs. In that circumstance, the district court risks crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool.

985 F.3d at 442. In the context here, the putative members' similar situations may ultimately mean

that collectively they have no claim for overtime as exempt employees or that they collectively have a claim for overtime pay because Defendant improperly classified them as exempt employees.

Even if the Fifth Circuit ultimately agrees with Defendant as to the legal interpretations of the relevant regulatory provisions, Defendant has not shown that it will be prejudiced by the issuance of notice. It essentially argues prejudice because it believes the interlocutory appeal will terminate this case and it is a waste of time and money to continue with the case in the interim.

> That's a risk, however, inherent in any litigation. The district courts are routinely called upon to issue rulings on motions that involve questions of law that could result in the setting aside of a judgment if reversed on appeal. The fact that the court of appeals may reverse this Court is not a sufficient reason to delay the litigation of this case under section 1292(b).

*Hopkins*, 2007 WL 9772306, at *6. Continued litigation of this case merely places Defendant in the same position it would be in without an interlocutory appeal. It has not shown that it would be irreparably injured without a stay. If either side is prejudiced by the stay, Plaintiffs have the better argument that they would suffer greater harm by a stay. Whether such harm rises to the level of substantial injury is unclear. But Defendant "is willing to continue to toll the statute of limitations for any putative collective action plaintiffs during the pendency of any additional stay the Court would impose." ECF No. 147 at 12–13. This willingness eliminates some, but not all, potential prejudice to Plaintiffs.

Defendant argues that the public interests support a stay. It premises the argument on maintaining "judicial neutrality" as it relates to issuing notice to putative collective action members and avoidance of "stirring up litigation," as mentioned in *Swales*. The Court is not swayed by these arguments for the reasons already stated. Plaintiffs, on the other hand, argue that allowing the case to proceed promotes the public interest in prompt resolution of civil cases. Given the substantial delays and stays to date, the Court might find that the public interests lie with denying another

stay. The public interests otherwise appear neutral as to staying this case pending interlocutory appeal.

With prejudice and public interests perhaps slightly favoring Plaintiffs' position, the balance of the four factors depends on the strength of Defendant's showing that it is likely to succeed on the merits. As this is one of the two most critical factors, this factor could be the tipping point for granting or denying a stay. If *Venable* is interpreted as Defendant interprets it, then Defendant's appeal has a stronger likelihood of success. Prejudice to Defendant, furthermore, is greater the more likely it is that Defendant will succeed on the merits, albeit still not reaching a level of irreparable injury. At this point, it is difficult for the Court to say that Defendant has made a strong showing that it will likely succeed on its appeal. The Court sees the potential in Defendant's argument while also seeing a path fully supported by *Gentry II*. If *Venable* were the only intervening Fifth Circuit case, the likelihood of success would be increased. But *Gentry II* also arrived on the scene, and it arrived before *Venable*. While there is possible success on the merits, the balance of factors does not tilt in favor of a stay. Of course, the Fifth Circuit may view the prospects for success on appeal more favorably to Defendant and such a difference could tilt the balance in favor of staying this case. Moreover, § 1292(b) specifically recognizes that a stay may be entered by the Fifth Circuit. That might be the better avenue under these circumstances.

The Court also finds the following matters relevant to whether to stay this action entirely pending the interlocutory appeal. Plaintiffs filed this case more than four years ago. They are about to embark on sending notice for this collective action. The Magistrate Judge has already informed the parties that the Court will "wait until after the close of the opt-in period to enter a scheduling order" to control the remainder of this case. *See* ECF No. 152 at 1. Defendant has a June 9, 2025 deadline to disclose contact information for putative collective action members. *See id*. at 2. The only other current deadline concerning Defendant is one set for October 6, 2025, where the parties

jointly need to file proposed scheduling recommendations, including deadlines for experts, discovery, dispositive motions, and mediation. *See id*. at 3. Further, as recognized in *Hopkins*:

> While a reversal of this Court's [denial of summary judgment] would eliminate the vast bulk of the litigation in this case, a stay would operate to delay the termination of this litigation if the Court's order is affirmed. An interlocutory appeal will take some time to complete, and while that appeal is pending, the parties could continue to prepare and litigate this case in light of the Court's order. Should the court of appeals affirm this Court, valuable time would not have been wasted while awaiting a decision from that court. Although it would seem that resources would have been wasted should the court of appeals reverse, as mentioned above, that's a risk inherent in all litigation and not a reason to stay this case.

2007 WL 9772306, at *7. This Court also recognizes that potential conflict between *Venable* and *Gentry II* may necessitate en banc review to fully address and clarify the interpretation of the relevant regulations.

At this point, the Court sees no reason why the parties cannot continue to litigate this case at least through the end of September 2025. Defendant should already have the list of putative collective action members and their contact information. Providing such information to Plaintiffs for the issuance of notice does not constitute irreparable injury. Plaintiffs bear the cost of notice and oppose the current requested stay even though there may be some possibility of reversal on interlocutory appeal. The Court is open to revisiting the issue of a stay should the parties jointly agree that a stay is warranted. Defendant is of course able to seek a stay directly through the court of appeals. If the Fifth Circuit issues a stay, then there will be no need to revisit the matter. And if the Fifth Circuit denies a requested stay, such denial would be pertinent to any attempt to revisit the matter in this Court.

**F. Conclusion**

For these reasons, the Court **GRANTS** the Motion to Certify an Interlocutory Appeal (ECF No. 146) but **DENIES** the Motion to Stay (ECF No. 147) without prejudice to Defendant filing a similar motion with the Fifth Circuit or later in this case. The Magistrate Judge's recent order (ECF

No. 152) setting various deadlines starting with the June 9, 2025 deadline for disclosure of information of putative collective action members continues to control this case unless modified by further order of the Court.

As previously stated, the Court certifies both orders (ECF Nos. 101 and 144) for interlocutory appeal. As phrased by Defendant, the pertinent question is

> whether, under the applicable federal regulations, a pay practice that is comprised of a salary that meets the minimum compensation and frequency requirements of 29 C.F.R. § 541.602(a), that does not vary based on the quantity or quality of work, and in addition to which the employee receives additional compensation in the form of a bonus that accrues when he/she worked at a customer's location and was charged to a customer (in other words, revenue generating), satisfies the white collar salary exemption test pursuant to 29 C.F.R. §§ 541.602(a) and 604(a) or whether that practice must satisfy the reasonable relationship test of 29 C.F.R. § 541.604(b).

ECF No. 146 at 11. Restated, Defendant states: "The legal question is whether or not the reasonable relationship test applies to a compensation practice that includes a true salary plus additional compensation." *Id*. As already discussed, however, these characterizations ignore potentially important elements discussed at length in *Gentry II*. The Court, therefore, views the following interrelated legal questions as proper for review on interlocutory appeal:

> (1) Does an employer pay a true salary if the salary does not constitute a true weekly rate, defined by *Gentry II* as a rate that compensates employees for all work performed that week?

> (2) Does compensation qualify as additional compensation within the meaning of 29 C.F.R. § 561.604(a) when it is for work within the normal workweek?

> (3) If the compensation identified in question 2 does not qualify as additional compensation, does 29 C.F.R. § 561.604(b) control the salary basis issue in this case?

> (4) Is § 604(b) only applicable to employees paid solely on an hourly, daily, or shift basis? In other words, is § 604(b) limited only to circumstances when all earnings of an employee are computed on an hourly, daily, or shift basis? If so, how does that fit with the "weekly-rate-only reading of § 602(a) espoused in *Helix*?

> (5) Does 29 C.F.R. § 561.602(a) alone control the salary basis issue in this case?

> (5) Because there is no overlap between § 602(a) and § 604(b), as held in *Helix*, does § 604(b) provide the regulatory path for determining salary basis when a hybrid pay structure combines a weekly salary with pay calculated on a day rate for

work within the normal workweek?

(6) Assuming that the compensation plan in this case is the same or substantially like the one in *Venable*, then how does *Venable* fit with *Gentry II*'s focus on the employer paying a true weekly rate, as defined above.

(7) Does *Venable* or *Gentry II* govern this case?

(8) Did this Court err in denying reconsideration?

(9) Did this Court err in denying summary judgment?

(10) Were Plaintiffs paid on a salary basis in this case?

(11) Is the distinction between *Venable* and *Gentry II* crystalized in the fact that the salary component in *Gentry II* was exactly equal to eight hours of pay followed by hourly pay for all additional hours? If that distinction is adequate to distinguish *Gentry II*, is its analysis of beyond and within a normal workweek immaterial to this case?

(12) Why would *Gentry II*'s focus on employers paying a true weekly rate not apply in this case?

(13) Does an employer fail § 604(a) when additional monetary compensation is for work in the normal workweek; thus, requiring consideration of § 604(b) and its reasonable relationship test?

(14) Is the dispositive question in this case (a) whether Defendant paid Plaintiffs "on a weekly, or less frequent basis," thus making 29 C.F.R. §§ 561.602(a) and 541.604(a) controlling or (b) whether Defendant paid them on an hourly, daily, or shift basis, thus making 29 C.F.R. § 541.604(b) controlling?

(15) As a matter of law, does it matter that the hybrid pay structure in this case consists of an undisputed salary component along with a second component that may or may not relate to the Plaintiffs' base compensation?

As already mentioned, listing these potentially pertinent legal questions does not constrain the Fifth Circuit should it accept the interlocutory appeal. The Court lists them to provide various matters that may need additional clarification on appeal.

      **IT IS SO ORDERED this 2nd day of June 2025.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**